MARK DAVID McPHERSON (307951)
*mmcpherson@goodwinlaw.com*
**GOODWIN PROCTER LLP**
The New York Times Building
620 Eighth Avenue
New York, New York 10018
Tel.: +1 212 813 8800

Attorneys for Defendant Elsevier Inc.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

KIMSA NGUYEN and DAVID GARCIA, on behalf of themselves, all others similarly situated, and the general public,

Plaintiffs,

v.

ELSEVIER INC.,

Defendant.

Case No. 5:25-cv-00825-NC

**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Date: May 14, 2025
Time: 11:00 a.m.
Courtroom: 5 – 4th Floor
Judge Hon. Nathanael M. Cousins

Complaint filed: January 24, 2025

## NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT

**PLEASE TAKE NOTICE** that on May 14, 2025, at 11:00 a.m., or at such later date and time as the Court may order, before the Honorable Nathaneal M. Cousins, United States Magistrate Judge, in the United States District Court for the Northern District of California, Courtroom 5, located on the 4th Floor of the San Jose Courthouse, 280 South 1st Street, San Jose, CA 95113, Defendant Elsevier Inc. will, and hereby does, move to dismiss each and every cause of action in Plaintiffs Kimsa Nguyen and David Garcia's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

This Motion is based upon this Notice of Motion and Motion, the supporting Memorandum of Points and Authorities, the Declaration of Mark David McPherson in support of Defendant's Motion to Dismiss the Complaint and exhibits attached thereto, the Request for Judicial Notice, all papers from this case on file with the Court, all other matters of which the Court may take judicial notice, and such other arguments and materials as may be presented before the Motion is taken under submission.

Dated: March 28, 2025

Respectfully submitted,

*/s/ Mark David McPherson*

MARK DAVID McPHERSON
*mmcpherson@goodwinlaw.com*
**GOODWIN PROCTER LLP**

Attorneys for Defendant Elsevier Inc.

**TABLE OF CONTENTS**

I. INTRODUCTION .......... 1
II. BACKGROUND .......... 2
III. ARGUMENT .......... 7
A. Elsevier Does Not Disclose "Personally Identifiable Information" In Violation Of The VPPA. .......... 8
B. Elsevier Is Not A Video Tape Service Provider Under The VPPA .......... 13
C. Leave to Amend Would Be Futile .......... 15
IV. CONCLUSION .......... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**


*Bittner v. United States*,
598 U.S. 85 (2023) ........ 13

*Cantu v. Tapestry, Inc.*,
697 F. Supp. 3d 989 (S.D. Cal. 2023) ........ 14

*Cantu v. Tractor Supply Co.*,
No. 2:23-cv-3027-HDV-JC, 2024 WL 1601257 (C.D. Cal. Mar. 21, 2024) ........ 14

*Cervantes v. Countrywide Home Loans, Inc.*,
656 F.3d 1034 (9th Cir. 2011) ........ 15

*Collins v. Pearson Educ., Inc.*,
721 F. Supp. 3d 274 (S.D.N.Y. 2024) ........ 11

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) ........ 7, 8

*In re Finjan Holdings, Inc. Secs. Litig.*,
58 F.4th 1048 (9th Cir. 2023) ........ 7

*Flora v. United States*,
357 U.S. 63 (1958) ........ 12

*Foster v. United States*,
303 U.S. 118 (1938) ........ 12

*Ghanaat v. Numerade Labs, Inc.*,
689 F. Supp. 3d 714 (N.D. Cal. 2023) ........ 10, 11

*Harris v. Pub. Broad. Serv.*,
662 F. Supp. 3d 1327 (N.D. Ga. 2023) ........ 11

*In re Hulu Privacy Litig.*,
86 F. Supp. 3d 1090 (N.D. Cal. 2015) ........ 8

*Jackson v. Fandom, Inc.*,
No. 22-cv-04423-JST, 2023 WL 4670285 (N.D. Cal. July 20, 2023) ........ 11

*Leocal v. Ashcroft*,
543 U.S. 1 (2004) ........ 13

*Liparota v. United States*,
471 U.S. 419 (1985) ............................................................ 13

*Markels v. AARP*,
689 F. Supp. 3d 722 (N.D. Cal. 2023) ............................................................ 14, 15

*Martin v. Meredith Corp.*,
657 F. Supp. 3d 277 (S.D.N.Y. 2023)............................................................ 1, 9, 10

*Mollett v. Netflix, Inc.*,
795 F.3d 1062 (9th Cir. 2015)............................................................ 1, 7, 12

*In re Nickelodeon Consumer Privacy Litig.*,
827 F.3d 262 (3d Cir. 2016)............................................................ 8

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001)............................................................ 7

*United States v. Am. Trucking Ass'ns*,
310 U.S. 534 (1940) ............................................................ 12

*United States v. Harrell*,
530 F.3d 1051 (9th Cir. 2008)............................................................ 13

*United States v. Thompson/Center Arms Co.*,
504 U.S. 505 (1992) ............................................................ 13

*In re Vizio, Inc.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017)............................................................ 14

*Whitman v. United States*,
574 U.S. 1003 (2014)............................................................ 13

*Yershov v. Gannett Satellite Info. Network, Inc.*,
820 F.3d 482 (1st Cir. 2016) ............................................................ 8

*Yoon v. Meta Platforms, Inc.*,
No. 24-cv-02612-NC, 2024 WL 5264041 (N.D. Cal. Dec. 30, 2024)............................ 10, 11

**Statutes**

18 U.S.C. § 2710 ............................................................ *passim*

**Other Authorities**

Class Action Complaint, *Ghanaat v. Numerade Labs, Inc.*, No. 4:23-cv-00833-YGR (Feb. 24, 2023), Dkt. 1 ........ 10, 11

Fed. R. Civ. P. 12(b)(6) ........ 7, 8

S. Rep. 100-599 (1988) ........ 1, 12

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Plaintiffs' sole claim for relief—a claim under the federal Video Privacy Protection Act—seeks to expand the scope of that statute far past its text or purpose. Concerned with the "publication of then-Supreme Court nominee Robert Bork's video rental history" without his consent, Congress enacted the VPPA to "preserve personal privacy with respect to the rental, purchase or delivery of video tapes or similar audio visual materials." *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015) (quoting S. Rep. 100-599, at 1 (1988), *reprinted in* 1988 U.S.C.C.A.N. 4342-1). The statute prohibits the disclosure of "personally identifiable information," defined to "include[] information which identifies a person as having *requested or obtained specific video materials or services* from a video tape service provider." 18 U.S.C. § 2710(a)(3) & (b) (emphasis added).

Here, Plaintiffs cannot allege any such disclosure. Plaintiffs' claim, unlike the wave of VPPA cases that have recently been brought and that have survived dismissal at the pleading stage, does not involve disclosure of their video-watching habits on a website. Instead, Plaintiffs can allege—at most—that Defendant Elsevier, Inc. maintains a website, Osmosis.org, that discloses to a third-party chat provider merely the URL of a page a website user is viewing. That page could include a video, or it could not. Even where it does include a video, the page may include text, images, flash cards, quizzes, a written transcript of the video, or other content beyond the video on the page. Merely disclosing the URL, therefore, is simply not a disclosure of "specific video materials or services" that a user "requested or obtained," in violation of the VPPA. *Martin v. Meredith Corp.*, 657 F. Supp. 3d 277, 285 (S.D.N.Y. 2023) ("Simply sending a URL of a . . . webpage which may or may not include a video does not show that a person requested or obtained specific video materials or services.")

That alone puts an end to Plaintiffs' Complaint.

But beyond this basic failure, Plaintiffs' Complaint fails for the additional reason that Elsevier does not qualify as a "video tape service provider" to which the VPPA's prohibitions

apply. While there is video content on Osmosis.org's website, the Complaint does not allege either that the prevalence of video content on the site is sufficient to make Osmosis.org such a provider. And that's to say nothing of Elsevier (the named defendant), a company whose operations extend well beyond maintaining Osmosis.org. Under any of the tests courts use to determine whether a company is a "video tape service provider" under the VPPA, therefore, Elsevier does not qualify.

For either of these reasons, the Complaint should be dismissed with prejudice.

## II. BACKGROUND[1]

Elsevier is a global scientific publisher and data analytics company that provides products and services relating to healthcare, science, and technology. (Dkt. 1 ¶ 1). One of Elsevier's numerous product offerings is Osmosis.org, a web-based educational platform that provides resources and study tools for medical, nursing, and health students and professionals. (Dkt. 1 ¶¶ 1, 11.)

Among the many tools and resources Osmosis offers are video-based educational materials and other "visually-rich educational content." (Dkt. 1 ¶¶ 1, 11–12.) But these video materials are a fraction of what Osmosis offers its customers. Osmosis provides users with access to "a personal workspace that [users] can fill with course documents, questions, and flashcards" and use to "invite classmates to collaborate"; "coaching support"; and "analysis and information about [a user's] learning (including adaptive and remediation) and usage." McPherson Decl. Ex. A (https://www.elsevier.com/legal/privacy-policy (last visited Mar. 28, 2025)).

The Osmosis platform uses Intercom, an AI customer support chat bot programmed to improve customer experiences with online businesses, for customer engagement and support. (Dkt. 1 ¶¶ 16–17.) In order to allow Intercom to understand and address customer needs, Elsevier discloses limited information concerning Osmosis user traffic to Intercom based on cookies and scripts from the Osmosis website. (Dkt. 1 ¶¶ 18–19.) This information can include (if a user is logged in) a user's name, email address, and the URL of a webpage the user visited. (*Id.*) Elsevier

[1] The facts provided in this Background are based upon the Complaint as well as documents that are incorporated into the Complaint by reference or otherwise appropriate for judicial notice.

explains in its Cookie Notice, incorporated into its Privacy Policy (which the Complaint quotes), that it uses cookies to help users navigate and interact with their services:

> We use cookies and similar technologies to: [a]ssist you in efficiently and safely navigating and experiencing our services; [e]nable you to register, login, provide feedback and otherwise interact with our services; [s]tore and honor your preferences and settings; [m]easure and analyze usage and performance data; and [a]ssist us with promotional and marketing efforts (including interest-based advertising).

McPherson Decl. Ex. B (https://www.elsevier.com/legal/cookienotice (last visited Mar. 28, 2025)).

Plaintiffs Kimsa Nguyen and David Garcia allege that they registered for Osmosis and then viewed videos on Osmosis. (Dkt. 1 ¶¶ 24–25.) The Complaint offers little else about Plaintiffs or their experience with Osmosis, such as why they registered for Osmosis, whether they purchased one of the many subscription plans Osmosis offers, when and what videos they supposedly viewed on the site, or whether they were logged in to their accounts when they viewed videos on the site. Nor does the Complaint identify any disclosures by Elsevier of Plaintiffs' information to Intercom.

The most Plaintiffs offer is "a screenshot showing the transmission of this information . . . from Osmosis to Intercom" concerning a user named "Horacio Nasep," not either of Plaintiffs:

**Request**

Pretty Raw Hex

```
POST /messenger/web/ping HTTP/2
Host: api-iam.intercom.io
Content-Length: 1032
Sec-Ch-Ua: "Not)A;Brand";v="99", "Google Chrome";v="127", "Chromium";v="127"
Content-Type: application/x-www-form-urlencoded
Sec-Ch-Ua-Mobile: ?0
User-Agent: Mozilla/5.0 (Macintosh; Intel Mac OS X 10_15_7) AppleWebKit/537.36 (KHTML, like Gecko) Chrome/127.0.0.0 Safari/537.36
Sec-Ch-Ua-Platform: "macOS"
Accept: */*
Origin: https://www.osmosis.org
Sec-Fetch-Site: cross-site
Sec-Fetch-Mode: cors
Sec-Fetch-Dest: empty
Accept-Encoding: gzip, deflate, br
Accept-Language: en-US,en;q=0.9
Priority: u=1, i

app_id=ifnb0qxb&v=3&g=cc413db06b58197b8c86c52ba6b5658ef1e42924&s=31dcf387-7cd4-48e5-9902-b4e02edadca2&r=
https%3A%2F%2Fwww.osmosis.org%2Flibrary%2Fmd%2Ffoundational-sciences%2Fanatomy&platform=web&installation_type=js-snippet&Idempotency-Key=
d5175abcc06658ea&internal=%7B%7D&is_intersection_booted=false&page_title=
Anatomical%20terminology%3A%20Video%2C%20Anatomy%20%26%20Definition%20%7C%20Osmosis&user_active_company_id=undefined&user_data=
%7B%22email%22%3A%22horacionasep%40gmail.com%22%2C%22user_id%22%3A4647251%2C%22anonymous_id%22%3A%22a30141e1-55cc-4c93-8d4e-384feb724cba%22%2C%
22name%22%3A%22Horacio%20Nasep%22%7D&source=apiBoot&sampling=false&referer=
https%3A%2F%2Fwww.osmosis.org%2Flearn%2FAnatomical_terminology%3Ffrom%3D%2Fmd%2Ffoundational-sciences%2Fanatomy%2Fintroduction-to-anatomy&
anonymous_session=
Z0tzUEU0TXRlOFB2QVVXczZTU1ZSNUVCT283all5S0NOcjB5aDQ5WjFId1l6Q1lOMjFnVS9heGZFM1dsdDlTRC0tWnNRV3UyUE81bUg2TTZxVDFndXpnZz09--dd2b83d825a7a96a54bfb
3562fae8b49539c339b&device_identifier=90a5d9a2-a5c5-4ebc-93e7-9586aa5bd89f
```

(Dkt. 1 ¶ 19.) Plaintiffs marked up the screenshot by applying the black boxes shown above. (*Id.*) While the markup appears to identify a name and email address in the screenshot, it only partially identifies the URL information transmitted by circling a small portion of a web address that reads "Anatomical_terminology." (*Id.*) Defendant has highlighted above in yellow the full URL that includes "Anatomical_terminology": https://www.osmosis.org/learn/Anatomical_terminology. (*Id.*)

That URL maps to an Osmosis webpage that contains images and textual information, in addition to video content:






Transcript

Watch video only ▶
**Content Reviewers**
Antonella Melani, MD, Andrew Horne, MSc, BSc (Hons), David Clay, MSc, BSc

**Contributors**
Lahav Constantini, Jake Ryan, Samantha McBundy, MFA, CMI, Kaia Chessen, MScBMC

When someone talks to us, we're only able to understand them if we know their language. Well... the same thing goes for anatomy!

To study anatomy and communicate among peers, we have to use specialized terminology that helps us describe the structures of the human body, where exactly they're located, and their relationship to one another.

If I tell you to look at the right-most finger of your hand - which one will it be? Your pinkie? Your thumb? It will depend on the position of your hand and whether you're looking at the back or the palm. This is why all anatomical descriptions are expressed in relation to one consistent position to eliminate any ambiguity.

Anatomical position is the position that is globally adopted for anatomical and medical descriptions of the human body. Now, let's describe the position the body is in when we refer to anatomical position.

When a person is in the anatomical position, they are standing straight with their legs close together, their feet parallel to one another, toes directed forward, their arms are down at their sides with the palms of their hands facing forward, and they are keeping their head up and gazing straight forward. All descriptions of the body refer to the position shown here.

Now, if we're looking at someone in anatomical position, there are four imaginary planes that intersect the body to help us with anatomical descriptions.

Want to see more? Log in or sign up to access the full transcript and additional features.

Create a free account    Log in

Sources

**"Clinically Oriented Anatomy"** Lippincott Williams & Wilkins (2014)

McPherson Decl. Ex. C (https://www.osmosis.org/learn/Anatomical_terminology (last visited Mar. 28, 2025)).

Defendant has also highlighted in green a second URL that appears in Plaintiffs' screenshot, but Plaintiffs effectively ignore: https://www.osmosis.org/library/md/foundational-sciences/anatomy. *Supra* at 3; (Dkt. 1 ¶ 19). That URL maps to an Osmosis webpage that contains no video content:




McPherson Decl. Ex. D (https://www.osmosis.org/library/md/foundational-sciences/anatomy (last visited Mar. 28, 2025)).[2]

Plaintiffs' Complaint thus boils down to the allegations that: they subscribed to Osmosis; Osmosis discloses to Intercom, a chat provider, the URL pages users view; and one URL allegedly disclosed includes a video (along with images and textual information), but does not indicate whether Plaintiffs (or whoever went to the URL) viewed or attempted to view the video in the URL. Based on these sparse allegations, Plaintiffs seek to hold Elsevier liable on a class-wide basis for statutory damages under the Video Privacy Protection Act. They seek to represent

[2] The webpage screenshot provided in this Motion depicts only a portion of the full webpage, which looks substantially similar to the screenshot and can be viewed at Exhibit D to the McPherson Declaration.

a class "of all persons in the United States who, at any time during the two years preceding the date of the filing of this Complaint to the time a class is notified[,] . . . registered with Osmosis and watched at least one video on Osmosis." (Dkt. 1 ¶ 28.)

## III. ARGUMENT

On a motion to dismiss, while courts must "accept as true all factual allegations in the . . . complaint, and . . . construe them in the light most favorable to . . . the non-moving party," *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 981 (9th Cir. 2017), courts need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences," *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Additionally, courts are not bound to "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Id.* "When a general conclusion in a complaint contradicts specific facts retold in a document attached to the complaint, incorporated by reference in the complaint, or subject to judicial notice, those specific facts are controlling." *In re Finjan Holdings, Inc. Secs. Litig.*, 58 F.4th 1048, 1052 n.1 (9th Cir. 2023).

Dismissal of a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) is proper where, as here, "the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Ballinger v. City of Oakland*, 24 F.4th 1287, 1292 (9th Cir. 2022) (quotation marks omitted).

To state a claim for violation of the Video Privacy Protection Act ("VPPA"), Plaintiffs must plausibly allege that:

> (1) [Elsevier] is a 'video tape service provider,' (2) [Elsevier] disclosed 'personally identifiable information [as defined under the VPPA] concerning any customer' to 'any person,' (3) the disclosure was made knowingly, and (4) the disclosure was not authorized by [18 U.S.C.] section 2710(b)(2).

*Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1066 (9th Cir. 2015); *see also* 18 U.S.C. § 2710(b)(1).

Plaintiffs cannot establish a VPPA claim here for at least two reasons: (1) Elsevier does not disclose personally identifiable information "which identifies a person as having requested or obtained specific video materials or services," 18 U.S.C. § 2710(a)(3), as the statute requires; and

(2) Elsevier is not a video tape service provider under the statute. Accordingly, the Complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

### A. Elsevier Does Not Disclose "Personally Identifiable Information" In Violation Of The VPPA.

Plaintiffs do not, and cannot, plausibly allege that the information disclosed by Elsevier to Intercom constitutes "personally identifiable information." The VPPA defines "personally identifiable information" ("PII") as "includ[ing] information which identifies a person as having *requested or obtained specific video materials or services* from a video tape service provider." 18 U.S.C. § 2710(a)(3) & (b) (emphasis added).

Interpreting that definition, courts within and outside the Ninth Circuit require a plaintiff to establish that a defendant disclosed information concerning an individual's engagement with video content to succeed on a VPPA claim. *See, e.g.*, *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017) ("[W]e hold that personally identifiable information [under the VPPA] means only that information that would readily permit an ordinary person to identify a specific individual's *video-watching behavior*" (emphasis added) (quotation marks omitted)); *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 285 (3d Cir. 2016) ("The [VPPA] protects personally identifiable information that identifies a specific person and ties that person to *particular videos that the person watched*" (emphasis added) (quotation marks omitted)); *Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482, 486 (1st Cir. 2016) (finding disclosure of PII adequately alleged where complaint claimed that defendant "disclosed information reasonably and foreseeably likely to reveal which USA Today *videos [plaintiff] has obtained*" (emphasis added)); *In re Hulu Privacy Litig.*, 86 F. Supp. 3d 1090, 1095 (N.D. Cal. 2015) ("For there to be an actionable VPPA violation, the video provider must have knowingly disclosed: 1) a consumer's identity; 2) the identity of 'specific video materials'; and 3) the *fact that the person identified 'requested or obtained' that material*" (emphasis added)).

Plaintiffs cannot show this here. Nowhere does the Complaint allege that Elsevier transmits information concerning specific video content that an Osmosis user "requested or obtained." At most, the Complaint contains only the vague and conclusory allegation that Elsevier

sends information concerning users' "video-watching habits." (Dkt. 1 ¶ 20.) But the Complaint reveals there is no basis for that conclusion. The only basis Plaintiffs offer for the allegation that Elsevier discloses "video-watching habits" by sharing "the title of the video" that a user watched is the screenshot provided in paragraph 19. (Dkt. 1 ¶¶ 19–20 ("Below is a screenshot showing the transmission of *this information*" (emphasis added)).)

But the screenshot simply does not show that Elsevier discloses "video-watching habits." The screenshot shows, at most, that Osmosis shares with Intercom the URLs of webpages a user visited. This includes URLs of webpages that contain no video content at all. *See supra* at 6. This can also include URLs of webpages on which there is a video along with other content, some of which, like transcripts of the video, could obviate any desire a user had to watch a video. *See supra* at 4–5. Thus, rather than informing Intercom about video content that a user "requested or obtained," in the parlance of the VPPA, Osmosis discloses at most URLs that may contain images, written content, and/or video content. *See id.*

In addition to a video, the webpage that Plaintiffs partially identify, https://www.osmosis.org/learn/Anatomical_terminology, includes paragraphs of script, medical diagrams, a note taking function, and a bibliography. *Id.* Thus, a user visiting that webpage *may* view the video, but may also review the script, images, or the linked and cited sources, and/or take notes, without ever interacting with the video. A user may also close out of the webpage shortly after clicking on it, without interacting with content on the page at all. Plaintiffs do not allege that the screenshot identifies which content the user interacted with at the disclosed URL. (Dkt. 1 ¶ 20.) Indeed, it does not.

Thus, the entirety of what Plaintiff can allege here—that Elsevier discloses a user's visit to webpages that may contain video and various non-video content—is not a VPPA violation. As the Southern District of New York recently explained, disclosing a URL, even one that might identify a video, is not the same as disclosing a video that a user "requests or obtains":

> Simply sending a URL of a . . . webpage which may or may not include a video does not show that a person requested or obtained specific video materials or services. And even for webpages including a video, sending the URL does not identify a person as having requested or obtained the video on that page since the person may instead have merely

reviewed an article on the page or opened the page and done nothing more.

*Martin v. Meredith Corp.*, 657 F. Supp. 3d 277, 285 (S.D.N.Y. 2023). In *Martin*, the court found that plaintiff's allegations that a news and media website's disclosure to Facebook of the name of a webpage viewed by a visitor together with the visitor's Facebook ID was insufficient to establish a VPPA violation because the alleged disclosures did not show specific video materials that a visitor requested or obtained:

> Simply disclosing the name of a webpage and an associated Facebook ID leaves off essential information for a VPPA claim, including at least: (1) whether the webpage contains a video; (2) if so, the name of the 'specific video materials' on the page; (3) whether there are multiple videos on the page and, if so, which 'specific video materials' were requested or obtained by the website visitor; and (4) whether the website visitor 'requested or obtained' any videos at all, or instead merely read an article on the webpage. Indeed, from the information disclosed to Facebook . . . it would not even be clear if the person associated with the Facebook ID is a consumer of video media.

*Id.* at 284.

Plaintiffs' Complaint must meet the same fate as the complaint in *Martin*. Elsevier's purported disclosure "leaves off" all of the "essential information for a VPPA claim" that the *Martin* Court identified. Plaintiffs do not allege how the screenshot discloses whether the URL provided contains any video, the name of any video(s) on the page, whether the page contains more than one video, and whether the identified user actually watched the video at all.

While Judge Rogers declined to follow *Martin* in *Ghanaat v. Numerade Labs, Inc.*, 689 F. Supp. 3d 714, 720–21 (N.D. Cal. 2023), that case does not shield Plaintiffs' Complaint from dismissal for at least two reasons.

First, the allegations in the *Ghanaat* complaint were far different than Plaintiffs' allegations here. The *Ghanaat* plaintiffs challenged the disclosure of URL information to Meta through a tool called the "Meta Pixel." *See* Class Action Complaint at ¶¶ 2, 17–29, *Ghanaat v. Numerade Labs, Inc.*, No. 4:23-cv-00833-YGR (Feb. 24, 2023), Dkt. 1 ("*Ghanaat* Compl."). As plaintiffs in *Ghanaat* alleged, and as this Court has recognized, the Pixel is known to track "any website 'buttons' [users] click." *Id.* ¶ 20; *see also Yoon v. Meta Platforms, Inc.*, No. 24-cv-02612-NC, 2024 WL 5264041, at *1 (N.D. Cal. Dec. 30, 2024) (Cousins, J.) ("Through this technology,

Meta intercepts each page a user visits, what buttons they click, and specific information they input into the website, along with a user's PII . . . allowing it to match its users with the data."); *id.* at *2 ("The Pixel and other business tools operate all the time and work the same way for everyone who visits a website with the tools installed."). Thus, as alleged, the Meta Pixel disclosed whether plaintiffs in *Ghanaat* clicked on—and accordingly, "request[ed] or obtain[ed]," *Ghanaat* Compl. ¶¶ 24, 26–27, 29—videos in URLs provided to Meta. Courts have relied on precisely this feature of the Pixel—its capacity to track and transmit to Meta button clicks on a video page—to find that a complaint adequately pleads a VPPA claim. *See, e.g.*, *Collins v. Pearson Educ., Inc.*, 721 F. Supp. 3d 274, 279, 288 (S.D.N.Y. 2024) (finding complaint adequately alleged disclosure of specific video material requested or obtained through Pixel where plaintiff alleged Pixel tracked user button clicks and "when a user clicks on and requests a video . . . whether a video was requested[,] . . . the specific video name that the digital subscriber requested, the URL," and other information is disclosed).[3]

Unlike in *Ghanaat*, Plaintiffs here do not allege that Intercom's cookies and scripts operate in any way like the Meta Pixel. Plaintiffs do not allege that Intercom tracks an Osmosis user's button clicks such that it can identify whether an Osmosis user requested or obtained video content, nor do Plaintiffs assert any allegations from which it can be inferred that Intercom has any ability to track user click activity on any website. (*See generally* Dkt. 1.)

Second, even if there were no material difference between the *Ghanaat* complaint and the Complaint here, Judge Rogers decided *Ghanaat* without the benefit of any briefing in that case concerning why the VPPA cannot be construed broadly to prohibit the mere disclosure of a URL.

---

[3] *See also Harris v. Pub. Broad. Serv.*, 662 F. Supp. 3d 1327, 1335 (N.D. Ga. 2023) (finding allegations that using Pixel, "once the user clicks on and watches the video in the article, Pbs.org sends the content name of the video the digital subscriber watched, the URL, and the digital subscriber's [Facebook ID]" sufficient to establish defendant transmitted information concerning videos requested or obtained); *Jackson v. Fandom, Inc.*, No. 22-cv-04423-JST, 2023 WL 4670285, at *5 (N.D. Cal. July 20, 2023) (finding complaint plausibly alleged disclosure of plaintiff's video viewing history to Meta where plaintiff alleged that Pixel "logs which pages are visited, buttons are clicked, and, . . . which videos a user requested and viewed . . . ." (quotation marks omitted)); *cf. Yoon*, 2024 WL 5264041, at *6 (denying motion to dismiss California Invasion of Privacy Act claim in part based on plaintiffs' allegations that Meta Pixel button clicks "disclose[] [a] video's title, which identifies the specific videos . . . that the user view[ed]" (quotation marks omitted)).

The VPPA's text, its legislative history, and canons of statutory interpretation require that the VPPA be construed narrowly to penalize only the disclosure of information that reveals video content that an individual requested or obtained.

To start, the plain text of the VPPA defines PII as information that "*identifies a person as having requested or obtained specific video materials or services* from a video tape service provider." 18 U.S.C. § 2710(a)(3) & (b). The statute nowhere precludes the disclosure of information that an individual accessed a space in which video was available. Judicial expansion of the statute to encompass such a disclosure is improper. *See, e.g., Flora v. United States,* 357 U.S. 63, 65 (1958) ("In matters of statutory construction the duty of th[e] Court is to give effect to the intent of Congress, and in doing so [the] first reference is of course to the literal meaning of words employed."); *United States v. Am. Trucking Ass'ns*, 310 U.S. 534, 543 (1940) ("There is . . . no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes.").

This statutory text conforms to its purpose. *See Foster v. United States,* 303 U.S. 118, 120 (1938) ("Courts should construe laws in harmony with the legislative intent and seek to carry out legislative purpose."). In introducing the VPPA, Congress explained that the statute's definition of "PII" was carefully drafted to fit the statute's intent. Congress enacted the VPPA "in response to the *Washington City Paper's* publication of then-Supreme Court nominee Robert Bork's video rental history" without his consent for the purpose of thereafter "preserv[ing] personal privacy with respect to the rental, purchase or delivery of video tapes or similar audio visual materials." *Mollett*, 795 F.3d at 1065 (quoting S. Rep. 100-599, at 1 (1988), *reprinted in* 1988 U.S.C.C.A.N. 4342-1). To that end, Congress included the words "video materials or services" within the VPPA's PII definition to identify and limit the scope of unlawful activity under the VPPA to privacy violations pertaining to such "video materials or services":

> The definition of personally identifiable information includes the term 'video' to make clear that simply because a business is engaged in the sale or rental of video materials or services does not mean that all of its products or services are within the scope of the bill. For example, a department store that sells video tapes would be required to extend privacy protection to only those transactions involving the purchase of video tapes and not other

products.

S. Rep. 100-599, at 12. The Senate Report on the VPPA emphasizes that the VPPA "does not restrict the disclosure of information other than personally identifiable information." *Id.*

While both the statutory language and Congress's intent as to the VPPA's scope are clear, to whatever extent the scope of unlawful disclosure under the VPPA could be perceived as ambiguous, the rule of lenity—which serves to promote principles of due process and "ensure[] that criminal statutes will provide fair warning concerning conduct rendered illegal," *Liparota v. United States*, 471 U.S. 419, 427 (1985)—"requires interpreters to resolve ambiguity in criminal laws in favor of defendants," *Whitman v. United States*, 574 U.S. 1003, 1005 (2014).[4] This "favors a narrow construction of ambiguous terms," *United States v. Harrell*, 530 F.3d 1051, 1058 n.3 (9th Cir. 2008), and as applied here, requires strict adherence to the statute's instruction that the VPPA is violated only where information is disclosed that demonstrates a person "requested or obtained specific video materials or services." Judicial expansion of this scope, including allowing plaintiffs to run roughshod over defendants merely by claiming that a defendant shared the address of a webpage that a plaintiff visited, would run afoul of this rule. *See Bittner v. United States*, 598 U.S. 85, 102 (2023) ("[T]he rule exists in part to protect the Due Process Clause's promise that a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed." (quotation marks omitted)).

### B. Elsevier Is Not A Video Tape Service Provider Under The VPPA

The Complaint should also be dismissed because Elsevier is not a "video tape service provider."

The VPPA defines "video tape service provider" as any person "engaged in the business . . . of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual

---

[4] Because the rule of lenity applies to interpretations of criminal statutes in civil settings, the rule applies here. *See, e.g.*, *Leocal v. Ashcroft*, 543 U.S. 1, 11 n.8 (2004) ("Because we must interpret [a criminal] statute consistently, whether we encounter its application in a criminal or noncriminal context, the rule of lenity applies"); *United States v. Thompson/Center Arms Co.*, 504 U.S. 505, 517–18 & n.10 (1992) (plurality opinion) (applying rule of lenity to tax statute with criminal applications in civil setting).

materials." 18 U.S.C. § 2710(a)(4). Courts in this Circuit have found that "to be engaged in the business of delivering video content, the defendant's product must not only be substantially involved in the conveyance of video content to consumers but also significantly tailored to serve that purpose." *In re Vizio, Inc.*, 238 F. Supp. 3d 1204, 1221 (C.D. Cal. 2017); *see also Cantu v. Tapestry, Inc.*, 697 F. Supp. 3d 989, 993 (S.D. Cal. 2023) ("to be 'engaged in the business' of audiovisual services such that a defendant's activities rise to the level of video tape service provider requires the plaintiff sufficiently plead the defendant's involvement 'connotes a particular field of endeavor' or a 'focus of the defendant's work'" (quotation marks omitted)). Moreover, "[c]ourts in the Ninth Circuit consistently recognize that delivering video content must be *central to the defendant's business or product*." *Cantu v. Tractor Supply Co.*, No. 2:23-cv-3027-HDV-JC, 2024 WL 1601257, at *3 (C.D. Cal. Mar. 21, 2024) (emphasis added). Peripheral involvement with video content conveyance is not enough. *See, e.g., Cantu v. Tapestry, Inc.*, 697 F. Supp. at 992–95 (in assessing "who is a video tape service provider," distinguishing between websites where the delivery of video content was "peripheral[] or passive[]" and where websites' "entire business model revolved around hosting videos and selling access to those videos."); *cf. Markels v. AARP*, 689 F. Supp. 3d 722, 728 (N.D. Cal. 2023) (in dismissing VPPA claim, noting that it is not "plausible that any company that creates its own video content, however ancillary to the company's purpose, is 'engaged in the business of' delivering audio visual content.").

Just as in those cases, Plaintiffs cannot establish that Elsevier is "engaged in the business" of video services. While the Complaint employs strategic pleading to highlight Osmosis's video content (to the near-exclusion of all other content on the Osmosis platform), the Complaint does not overcome the facts that Elsevier is more than just the Osmosis website, and video is ancillary even to Osmosis's website.

As the Complaint acknowledges, Elsevier—the sole Defendant here—is not Osmosis. Rather, Elsevier "is a global provider of scientific, technical, and medical information products and services." (Dkt. 1 ¶ 1.) While Elsevier owns Osmosis, Plaintiffs do not offer any allegation establishing that Osmosis is in any way central to Elsevier's business. Nor do Plaintiffs allege any

fact concerning the relationship between video content and Elsevier's business.

And even if the Court considers video content in relation to Osmosis alone, the Complaint falls short. Even among their allegations that Osmosis has an "extensive" video library (Dkt. 1 ¶¶ 12–13), Plaintiffs acknowledge that Osmosis is a broader educational platform that offers various learning resources and study tools (Dkt. 1 ¶¶ 1, 11). Plaintiffs also direct the Court's attention to Elsevier's Privacy Policy (Dkt. 1 ¶ 21), which identifies a number of features Osmosis offers that are not video content, including coaching support, learning analytics, and study workspaces for creating personal content or collaborating with classmates. *Supra* at 1; McPherson Decl. Ex. A (https://www.elsevier.com/legal/privacy-policy (last visited Mar. 28, 2025)). Plaintiffs do not allege any facts demonstrating that video content is a substantial part, or even a focus, of Osmosis's business.

In short, "none of [P]laintiffs' allegations indicate that providing video content is a substantial or significant purpose of" Elsevier or even Osmosis. *Markels*, 689 F. Supp. 3d at 728.

### C. Leave to Amend Would Be Futile

The Complaint should be dismissed with prejudice because amendment would be futile. *See Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011) ("[A] district court may dismiss without leave where a plaintiff's proposed amendments would fail to cure the pleading deficiencies and amendment would be futile."). Plaintiffs cannot cure their pleadings to demonstrate that Elsevier discloses information to Intercom that "identifies a person as having requested or obtained specific video materials or services" because the screenshot Plaintiffs provided explicitly shows that this is not what happens. Nor can Plaintiffs allege that Elsevier is a video tape service provider. For these reasons, Elsevier's information disclosures cannot, and do not, violate the VPPA.

## IV. CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court dismiss the Complaint in its entirety, with prejudice.

Dated: March 28, 2025

Respectfully submitted,

By: */s/ Mark David McPherson*

MARK DAVID McPHERSON
*mmcpherson@goodwinlaw.com*
**GOODWIN PROCTER LLP**
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Tel: +1 212 813 8800

Attorneys for Defendant Elsevier Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Northern District of California by using the CM/ECF system on March 28, 2025. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I certify under penalty of perjury that the foregoing is true and correct. Executed on March 28, 2025.

*/s/ Mark David McPherson*
MARK DAVID McPHERSON