**FITZGERALD MONROE FLYNN PC**
JACK FITZGERALD (SBN 257370)
*jfitzgerald@fmfpc.com*
MELANIE R. MONROE (SBN 275423)
*mmonroe@fmfpc.com*
TREVOR FLYNN (SBN 253362)
*tflynn@fmfpc.com*
PETER GRAZUL (SBN 342735)
*pgrazul@fmfpc.com*
ALLISON FERRARO (SBN 351455)
*aferraro@fmfpc.com*
2341 Jefferson Street, Suite 200
San Diego, California 92110
Phone: (619) 215-1471
Fax: (619) 331-2943
***Counsel for Plaintiffs***

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

KIMSA NGUYEN and DAVID GARCIA on behalf of themselves, those similarly situated, and the general public,

Plaintiffs,

v.

ELSEVIER INC.,

Defendant.

Case No. 5:25-cv-00825-NC

**PLAINTIFF'S OPPOSITION TO ELSEVIER'S MOTION TO DISMISS THE COMPLAINT (DKT. NO. 15)**

| | |
|---|---|
| Judge: | Hon. Nathaniel M. Cousins |
| Date: | May 14, 2025, 11:00 a.m. |
| Courtroom: | 5, 4th Floor |
| Complaint Filed: | January 24, 2025 |

**TABLE OF CONTENTS**


TABLE OF AUTHORITIES ..... ii

INTRODUCTION ..... 1

ISSUES TO BE DECIDED ..... 1

FACTS ..... 1

LEGAL STANDARD ..... 2

ARGUMENT ..... 2

I. ELSEVIER DISCLOSED PLAINTIFFS' PII IN VIOLATION OF THE VPPA ..... 2

II. PLAINTIFFS PLAUSIBLY ALLEGE ELSEVIER IS A VIDEO TAPE SERVICE PROVIDER ..... 6

CONCLUSION ..... 9

## TABLE OF AUTHORITIES

**Cases**

*Ambrose v. Bos. Globe Media Partners LLC*,
2022 WL 4329373 (D. Mass. Sept. 19, 2022) .......... 8

*Berryman v. Reading International, Inc.*,
--- F. Supp. 3d ---, 2025 WL 315403 (S.D.N.Y. Jan. 25, 2025) .......... 6

*Braun v. Phila. Inquirer, LLC*,
2023 WL 7544160 (E.D. Penn. Nov. 13, 2023) .......... 4

*Cantu v. Tapestry Inc.*,
697 F. Supp. 3d 989 (S.D. Cal. 2023) .......... 7

*Cantu v. Tractor Supply Co.*,
2024 WL 1601257 (C.D. Cal. Mar. 21, 2024) .......... 8

*Carroll v. Gen. Mills, Inc.*,
2023 WL 4361093 (C.D. Cal. June 26, 2024) .......... 7

*Daymon Worldwide Inc. v. S.C. Johnson & Son Inc.*,
2007 WL 9776405 (W.D. Wash. Jan. 25, 2007) .......... 8

*Edwards v. MUBI, Inc.*,
--- F. Supp. 3d ----, 2025 WL 985130 (N.D. Cal. March 31, 2025) .......... 3, 4

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) .......... 2

*Fed. Trade Comm'n v. Amazon.com, Inc.*,
735 F. Supp. 3d 1297 (W.D. Wash. 2024) .......... 5

*Feldman v. Star Tribune Media Co. LLC*,
659 F. Supp. 3d 1006 (D. Minn. 2023) .......... 2

*Ghanaat v. Numerade Labs, Inc.*,
689 F. Supp. 3d 714 (N.D. Cal. 2023) .......... 2, 3, 4

*Harris v. Pub. Broad Serv.*,
659 F. Supp. 3d 1006 (N.D. Ga. Mar. 20, 2023) .......... 4

*In re Facebook Consumer Priv. User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) .......... 8

*In re Vizio, Inc.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) .......... 7

*Knievel v. ESPN*,
393 F.3d 1068 (9th Cir. 2005) ....................2

*Lee v. Plex, Inc.*,
--- F. Supp. 3d ---, 2025 WL 948118 (N.D. Cal. March 28, 2025) ....................2, 4

*Leocal v. Ashcroft*,
543 U.S. 1 (2004)....................5

*Markels v. AARP*,
689 F. Supp. 3d 722 (N.D. Cal. 2023)....................8

*Martin v. Meredith Corp.*,
657 F. Supp. 3d 277 (S.D.N.Y. 2023)....................4

*Mollett v. Netflix, Inc.*,
795 F.3d 1062 (9th Cir. 2015) ....................5

*Salazar v. Nat'l Basketball Ass'n*,
118 F.4th 533 (2nd Circ. 2024)....................6

*Sellers v. Bleacher Report, Inc.*,
2023 WL 4850180 (N.D. Cal. July 28, 2023)....................5, 7

*United States v. Banks*,
514 F.3d 959 (9th Cir. 2008) ....................6

*United States v. Millis*,
621 F.3d 914 (9th Cir. 2010) ....................5

*United States v. Wyatt*,
408 F.3d 1257 (9th Cir. 2005) ....................6

**Statutes**

18 U.S.C. § 2710....................1, 2

18 U.S.C. § 2710(a)(4)....................1, 6

**Other Authorities**

S. Rep. 100-599 (1988)....................5

## INTRODUCTION

Contrary to its assertion, Plaintiffs' claims fall squarely within the purview of the Video Protection Privacy Act because they allege that, each time they watch a video on Osmosis.org, Elsevier Inc. ("Elsevier"), without their consent, discloses their personally identifiable information ("PII") to a third party, Intercom, including their name, email address, and the title of the video they watched, meeting all elements of the statute. Similarly, Elsevier and its Osmosis platform fall squarely within the statutory definition of a video tape service provider. Accordingly, Elsevier Inc.'s Motion to Dismiss, Dkt. No. 15 ("Mot."), should be denied.

## ISSUES TO BE DECIDED

1. Whether Plaintiffs state a claim under the Video Protection Privacy Act, 18 U.S.C. § 2710 ("VPPA"), where they allege each time they watch a video on Osmosis, Elsevier transmits to a third party their name, email address, and the title of the video they watched.

2. Whether Plaintiffs plausibly allege Elsevier is a video tape service provider pursuant to 18 U.S.C. § 2710(a)(4) because, by virtue of its owning and operating Osmosis, it is engaged in interstate commerce in the business of the rental, sale, or delivery of prerecorded audiovisual materials, namely Osmosis's library of more than 2,000 pre-recorded health- and medical-related videos.

## FACTS

Elsevier "owns and operates Osmosis.org ('Osmosis'), a web-based platform that provides video-based learning resources and study tools for medical, nursing, and health professionals." Dkt. No. 1, Complaint ("Compl.") ¶ 1. Osmosis uses Intercom, an "AI-based customer messaging platform," as "part of its customer engagement and support strategy . . . ." *Id.* ¶¶ 16-17. Plaintiffs Kimsa Nguyen and David Garcia each "registered for" and "viewed videos on Osmosis." *Id.* ¶¶ 24-25. By virtue of cookies installed on Osmosis, "each time" they "viewed a video, Elsevier disclosed to Intercom, in the same transmission" their "full name, email address, and the title of the video [they] viewed." *Id.*; *see also id.* at ¶¶ 18-19 (alleging the general practice and providing a screenshot of an example of the transmission of this type of information from Osmosis to Intercom).

## LEGAL STANDARD

Dismissal under Federal Rule of Civil Procedure 12(b)(6) 'is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory.'" *Hart v. TWC Prod. & Tech. LLC*, 526 F. Supp. 3d 592, 598 (N.D. Cal. 2021) (quoting *Mendiondo v. Centinela Hosp. Med. Ctr.,* 521 F.3d 1097, 1104 (9th Cir. 2008) (internal citation omitted)). "A complaint need not contain detailed factual allegations, but facts pleaded by a plaintiff must be 'enough to raise a right to relief above the speculative level.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks and citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "In determining whether a plaintiff has met this standard, the Court must 'accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable' to the plaintiff." *Hart*, 526 F. Supp. 3d at 598 (quoting *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005)).

## ARGUMENT

### I. ELSEVIER DISCLOSED PLAINTIFFS' PII IN VIOLATION OF THE VPPA

The VPPA prohibits the knowing disclosure of "personally identifiable information" by a "video tape service provider." 18 U.S.C. § 2710. "'[P]ersonally identifiable information'" is "that information that would 'readily permit an ordinary person to identify a specific individual's video-watching behavior.'" *Lee v. Plex, Inc.*, --- F. Supp. 3d ---, ---, 2025 WL 948118, at *10 (N.D. Cal. March 28, 2025) (quoting *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017) (internal quotations omitted). "[E]lectronic disclosures of a person's video-viewing history, even if not explicit, can violate the VPPA." *Ghanaat v. Numerade Labs, Inc.*, 689 F. Supp. 3d 714, 721 (N.D. Cal. 2023) (citing *Feldman v. Star Tribune Media Co. LLC*, 659 F. Supp. 3d 1006, 1021-22 (D. Minn. 2023) (collecting cases))). Plaintiffs allege each time they watched a video on Osmosis, Elsevier sent their name, email address, and the title of the video to Intercom. Compl. ¶¶ 18-19, 24-25. This occurred because the title of each video on Osmosis is integrated into the URL where it resides. *See* Mot. at 3-5 (demonstrating the video titled, "Anatomical terminology" resides at

https://www.osmosis.org/learn/Anatomical_terminology, and that this URL is transmitted to Intercom when someone watches the video).

Elsevier argues that because the transmission of the video's title by way of the URL does not *necessarily* mean someone viewed the video—since "a user visiting that webpage *may* view the video, but may also review [other content] without ever interacting with the video"—Plaintiffs have not supported their allegation that "Elsevier discloses 'video-watching habits'" with Intercom. Mot. at 9 (quoting Compl. ¶ 20). That does not, however, contradict Plaintiffs' allegations that *when they viewed a video*, that viewing, along with their name and email address, was sent to Intercom in violation of the VPPA; and Plaintiffs do not allege they used Osmosis for any purpose other than viewing videos. *See* Compl. ¶¶ 24-25. But that is not even necessary, because a defendant "need not disclose if the plaintiff watched the video once obtained in order to state a claim and have an injury." *Ghanaat*, 689 F. Supp. 3d at 720.

In effect, Elsevier asserts that when it disclosed to Intercom subscribers' names, email addresses, and URLs visited, the disclosure only *sometimes* violated the VPPA, and therefore Elsevier should be shielded from liability for *ever* having violated the VPPA. Similarly, it argues Plaintiffs' claim fails because it also discloses to Intercom webpages subscribers visit that may not contain videos. *See* Mot. at 5-6, 9. Thus, Elsevier seeks an early win by turning Plaintiffs' allegations on their head and suggesting Plaintiffs need to allege the VPPA is violated *every time* Elsevier transmits some information to Intercom. That is wrong. Plaintiffs need only to plausibly allege that, when they watch videos on Osmosis, Elsevier discloses that to Intercom in violation of the VPPA, which they have done.[1]

That every disclosure of information from Elsevier to Intercom may not violate the VPPA, and that Elsevier may send *additional* information to Intercom is irrelevant. *See Edwards v. MUBI, Inc.*, --- F. Supp. 3d ----, ----, 2025 WL 985130, at *3 (N.D. Cal. March 31, 2025) (denying motion to dismiss where defendant argued third party tracker "only discloses the URLs of the webpages that Plaintiffs visited, and that the URLs do not identify which videos they watched"); *cf. Ghanaat*, 689 F. Supp. 3d at 721 & n.9 (Declining to

[1] Because the Class is limited to persons who "registered with Osmosis and watched at least one video on Osmosis," and statutory damages under the VPPA are $2,500 per person, not occurrence, *see* Compl. ¶¶ 28, 42, that Elsevier transmits to Intercom information that may in some sense be overinclusive vis-à-vis VPPA claims, that should not in any way affect the ability to identify and properly compensate Class Members (*i.e.*, likely through Elsevier's own records, or at least through self-identification).

"address defendant's argument that the pages of its site that have videos also have non-video content and that disclosure of the URL does not disclose whether a subscriber viewed video or non-video content, as this argument is based on factual allegations from outside the complaint," and holding that "[w]hether a URL sufficiently identifies a video is ultimately a factual question that should not be resolved on motion to dismiss." (citing *Harris v. Pub. Broad Serv.*, 659 F. Supp. 3d 1006, 1016-18 (N.D. Ga. Mar. 20, 2023)).

Elsevier cites the decision in *Martin v. Meredith Corp.*, 657 F. Supp. 3d 277 (S.D.N.Y. 2023), but as Elsevier notes, courts in this district have declined to follow *Martin*. Mot. at 10 (citing *Ghanaat*, 689 F. Supp. 3d at 720-21); *see also Edwards* 2025 WL 985130, at *4 n.4 (Finding defendant's reliance on *Martin* "misplaced" because there, "the court found that the plaintiff did not state a VPPA claim because the version of the Meta Pixel used by the defendants *omitted the names of videos watched* on website People.com," and "'essential' information was omitted" from the complaint, "including whether the webpages in question contained videos." (emphasis added; internal citation omitted)).

The Court should reject Elsevier's attempt to distinguish *Ghanaat* as based on the supposedly special properties of the Meta Pixel cookie at issue there. *See* Mot. at 10-12. In fact, the *Ghanaat* court held that a "URL is adequate to constitute PII" where "it contains the name of the video and readily enables the average person to view the video," and further held that "[t]he defendant need not disclose if the plaintiff watched the video once obtained in order to state a claim." 689 F. Supp. 3d at 720. Contrary to Elsevier's suggestion, Mot. at 11, nowhere does *Ghanaat* rely on the Meta Pixel's ability to identify "button clicks," nor on a video's having actually been played or watched, as reasoning for advancing VPPA claims. *Cf. Edwards,* 2025 WL 985130, at *3-4 (rejecting argument that plaintiff's failure to show they "click[ed] the 'play' button" should defeat plaintiff's allegation they "watched videos," and denying motion to dismiss); *see also id.*, at *4 ("The title of every film . . . is reflected in the URL of the page. . . . And the PageView invariably discloses the URL of the webpage, which contains the video title." (underlining omitted)); *Lee*, 2025 WL 948118, at *1 (allegations that defendant "sends Meta 'the name of the video' that the user watched or requested along with 'the user's unique, identifying Facebook ID' and email address" stated a VPPA claim (record citation omitted)); *Braun v. Phila. Inquirer, LLC*, 2023 WL 7544160, at *1 (E.D. Penn. Nov. 13, 2023) (denying motion to dismiss and finding VPPA claim sufficiently alleged when URLs disclosed "titles to specific videos that Plaintiffs requested or viewed").

The Court should also reject Elsevier's policy arguments. *See* Mot. at 12-13. Osmosis is Elsevier's website, whose primary purpose is to deliver videos to users. Plaintiffs and other Class Members registered for and used Osmosis to watch those videos. Without their consent, Elsevier sent to Intercom their private viewing behaviors, along with information sufficient to personally identify them, for its own profit reasons. *See* Compl. ¶ 20. The VPPA's purpose is to allow "consumers to maintain control over personal information divulged and generated in exchange for receiving services from video tape service providers." *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015) (citation and internal quotation marks omitted). "The Act reflects the central principle of the Privacy Act of 1974: that information collected for one purpose may not be used for a different purpose without the individual's consent." *Id.* Here, Plaintiffs plausibly allege their PII was collected, shared, and used for "a different purpose" without their consent, as required by the statute.

Elsevier nevertheless asserts Plaintiffs' claims stretch the VPPA beyond its legislative intent by seeking "broadly to prohibit the mere disclosure of a URL." Mot. at 11. Again, this turns Plaintiffs' claims on their head, as they claim that Elsevier violates the VPPA *only when they view a video*. Plaintiff is not asking the Court to find Elsevier liable for "mere[ly] disclos[ing] . . . a URL." *See id.* The department store metaphor in the Senate Report Elsevier cites actually proves Plaintiffs' point. *See id.* at 12-13 (citing S. Rep. 100-599, at 12 (1988). Per the Report, the department store is liable under the VPPA if it provides a third party with a receipt that includes a customer's video rental details—even if the receipt also mentions a shirt. The store would not be liable, however, if the receipt *only* listed the shirt and excluded the video rental information. All Elsevier really argues is that it discloses to Intercom both information protected under the VPPA and information not protected.

Aware its actions at least sometimes violate the VPPA, Elsevier asks the Court to apply a "rule of lenity" to narrow the scope of the VPPA. *See* Mot at 13. But "[t]he rule of lenity applies to statutes that have both criminal and civil applications," and "the VPPA has no criminal applications and is not punitive in nature." *Sellers v. Bleacher Report, Inc.*, 2023 WL 4850180, at *6 n.2 (N.D. Cal. July 28, 2023) (citing *Leocal v. Ashcroft*, 543 U.S. 1, 11 n.8 (2004)). Accordingly, it does not apply here. *Leocal*, 543 U.S. at 11 n.8; *see also Fed. Trade Comm'n v. Amazon.com, Inc.*, 735 F. Supp. 3d 1297, 1332 (W.D. Wash. 2024) ("Because the Ninth Circuit has stated that the rule of lenity only applies to criminal statutes, the Court declines to apply it here." (citing *United States v. Millis*, 621 F.3d 914, 916-17 (9th Cir. 2010) ("[T]he rule

of lenity 'requires courts to limit the reach of criminal statutes to the clear import of their text and construe any ambiguity against the government.'" (internal citations omitted)).

Even if the rule did apply to a civil statute, it "applies only when the statutory language contains 'grievous ambiguity or uncertainty and 'when, after seizing everything from which aid can be derived, [the court] can make no more than a guess as to what Congress intended.'" *United States v. Banks*, 514 F.3d 959, 968 (9th Cir. 2008) (quoting *United States v. Wyatt*, 408 F.3d 1257, 1262 (9th Cir. 2005) (internal quotations omitted)). Here, Elsevier concedes "the statutory language and Congress's intent as to the VPPA's scope are clear," Mot. at 13, so the Court should also decline to apply the rule of lenity on that basis.

## II. PLAINTIFFS PLAUSIBLY ALLEGE ELSEVIER IS A VIDEO TAPE SERVICE PROVIDER

Elsevier asserts "Plaintiffs cannot establish that [it] is 'engaged in the business' of video services," because the "Complaint does not overcome the facts that Elsevier is more than just the Osmosis website, and video is ancillary even to Osmosis's website." Mot. at 14. In particular, Elsevier leans on Plaintiffs' allegation that it "is a global provider of scientific, technical, and medical information products and services," and argues Plaintiffs do not allege "Osmosis is in any way central to Elsevier's business." *Id.* (citing Compl. ¶ 1). That posits the wrong standard.

"The definition of 'video tape servicer provider' is broad, encompassing '*any* person[ ] *engaged in the business* . . . of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." *Salazar v. Nat'l Basketball Ass'n*, 118 F.4th 533, 548 (2nd Circ. 2024) (quoting 18 U.S.C. § 2710(a)(4), and adding emphasis). "That definition is not limited to entities that deal *exclusively* in audiovisual content; rather, audiovisual content need only be *part* of the provider's book of business." *Id.* "Thus, by its plain terms, the statute applies equally to a business dealing primarily in audiovisual materials (think Blockbuster) and one dealing in primarily *non*-audiovisual materials (think a general store that rents out a few movies)." *Id.* ("Congress cast a wide net . . . to ensure that businesses dealing in audiovisual goods or services satisfy the definition even if they *also* deal in non-audiovisual goods or services."); *accord Berryman v. Reading International, Inc.*, --- F. Supp. 3d ---, ---, 2025 WL 315403, at *3 (S.D.N.Y. Jan. 25, 2025) ("[A]n entity may qualify as a video provider under the statute even where the entity . . . merely 'dabble[s] in' such content," so that the defendant's "delivery of audiovisual materials on its website, even if only a 'peripheral' feature of the site, subjects it to the VPPA." (quoting *Salazar*, 118 F. 4th at 548-49)).

Elsevier's reliance on the decision in *Cantu v. Tapestry Inc.*, 697 F. Supp. 3d 989 (S.D. Cal. 2023), is misplaced. *See* Mot. at 14. The *Cantu* court held that a defendant "creating prerecorded videos *for the purpose of marketing its products* does not suffice to plausibly allege [it] is a video tape service provider," noting "none of the facts alleged . . . suggest that [its] business is 'centered, tailored, or focused around providing and delivering audiovisual content.'" 697 F. Supp. 3d at 993-94 (quoting *Carroll v. Gen. Mills, Inc.*, 2023 WL 4361093, at *4 (C.D. Cal. June 26, 2024)). Further, "[t]he plain text of the statute . . . unmistakenly indicates that congress intended to cover more than just the local video rental store," and "a person need not be in the business of either renting or selling video content for the statute to apply." *In re Vizio, Inc.*, 238 F. Supp. 3d 1204, 1221 (C.D. Cal. 2017) (Plaintiffs plausibly alleged defendant was a video tape service provider because it "enters into agreements with . . . content providers to enable consumers to access their programming on [defendant's product].").

Here, Plaintiffs allege Elsevier "owns and operates Osmosis.org . . . a web-based platform that provides *video-based* learning resources and study tools for . . . professionals." Compl. ¶ 1 (emphasis added). Osmosis "seeks to make complex medical and scientific concepts easier to understand through engaging, visually-rich educational content." *Id.* ¶ 11. To this end, "Osmosis has an extensive library of over 2,000 pre-recorded short, animated videos that explain medical conditions, physiology, pathology, pharmacology, and other healthcare-related topics." *Id.* ¶ 12. "To access Osmosis' video library—even on a free trial basis—an individual must register . . . ." *Id.* ¶ 13. "By registering . . . subscribers get access to video content that is unavailable to unregistered site visitors." *Id.* ¶ 14. "Osmosis subscribers also have the option to register for a paid (or 'premium') Osmosis Prime membership plan, to gain access to additional pre-recorded video content." *Id.* ¶ 15. Thus, even if, as Elsevier claims relying on materials outside the pleadings, there are "a number of features Osmosis offers that are not video content," Elsevier is wrong that Plaintiffs have not alleged that the "sale" or "delivery" of audiovisual material is not "a substantial part, or . . . focus, of Osmosis's business." Mot. at 15.[2] *See Sellers*, 2023 WL 4850180, at *6 (rejecting assertion defendant was

[2] Elsevier asks the Court to take judicial notice over the supposed fact that Osmosis offers "coaching support, learning analytics, and study workspaces for creating personal content or collaborating with classmates." *See id.* It derives this supposed fact from Osmosis's supposed privacy policy, attached to the McPherson Declaration as Exhibit A. Elsevier claims the Court can take judicial notice of the content of the supposed Privacy Policy, for the truth of the matter contained therein, under the incorporation-by-reference doctrine. *See* Dkt. No. 15-1, Elsevier Request for Judicial Notice ("RJN") at 2. To this end, Elsevier cites only two

not a video tape service provider when videos were among the content it provided to users, and holding this created a factual dispute not suitable for resolution on a motion to dismiss); *Ambrose v. Bos. Globe Media Partners LLC,* 2022 WL 4329373, at *2 (D. Mass. Sept. 19, 2022) (rejecting defendant news organization's contention it was not a video tape service provider because it offered other services to users); *In re Facebook Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 799 (N.D. Cal. 2019) (plaintiffs plausibly alleged Facebook.com was a video tape service provider because videos are among the content it serves to users).

Elsevier's reliance on the decision in *Markels v. AARP*, 689 F. Supp. 3d 722 (N.D. Cal. 2023), is similarly misplaced. *See* Mot at 14. The Court in *Markels* held that "none of plaintiffs' allegations indicate that providing video content is a substantial or significant purpose of AARP." 689 F. Supp. 3d at 728. Elsevier similarly invokes *Cantu v. Tractor Supply Co.*, 2024 WL 1601257 (C.D. Cal. Mar. 21, 2024) ["*Tractor Supply*"], for the proposition that it is not a video tape service provider, but the video at issue there was an "inspirational story of Defendant's employees who recovered from cancer," which was "used for marketing purposes." *See* Mot. at 14 (citing *Tractor Supply*, 2024 WL 1601257, at *4). The *Tractor Supply* court ultimately held the VPPA claim was unsupported because "Plaintiff does not allege that Defendant's business model consists of selling or monetizing the videos," and "nowhere [in the Complaint]" was it "suggest[ed] that these videos are the actual goods on offer[.]" *Id.*, at *4. Thus, the case is simply not on point.

If the Court nevertheless finds Elsevier's status as a video tape service provider inadequately pleaded, Plaintiffs could amend to include interviews with Osmosis's founders demonstrating that video content is central to Osmosis's creation, purpose, and success, and plead its video-providing business in better detail.

---

allegations in the Complaint, those set forth in paragraphs 21 and 26. Neither supports the incorporation by reference doctrine to take judicial notice of McPherson Exhibit A. Paragraph 26 merely alleges that "Elsevier never gave Plaintiffs, in a form distinct and separate from any other form setting forth other legal or financial obligations (such as Elsevier's Terms of Service and Privacy Policy), notice of its disclosure of their personally identifiable information to Intercom." Thus, it does not in any respect incorporate the Privacy Policy into the Complaint's substantive allegations. And Paragraph 21 merely alleges some information Elsevier discloses, without attributing that disclosure to the Privacy Policy or anything else. These allegations simply do not support the incorporation by reference doctrine. *See Daymon Worldwide Inc. v. S.C. Johnson & Son Inc.*, 2007 WL 9776405, at *2 (W.D. Wash. Jan. 25, 2007) ("The incorporation by reference doctrine applies to documents . . . which are integral to a *plaintiff's complaint.*").

## CONCLUSION

The Court should deny Elsevier's motion, but if the Court is inclined to grant the motion in any respect, Plaintiff requests dismissal be without prejudice and with leave to amend.

Dated: April 11, 2025

Respectfully Submitted,

/s/ Jack Fitzgerald

**FITZGERALD MONROE FLYNN PC**
JACK FITZGERALD
*jfitzgerald@fmfpc.com*
MELANIE R. MONROE
*mmonroe@fmfpc.com*
TREVOR FLYNN
*tflynn@fmfpc.com*
PETER GRAZUL
*pgrazul@fmfpc.com*
ALLISON FERRARO
*aferraro@fmfpc.com*
2341 Jefferson Street, Suite 200
San Diego, California 92110
Phone: (619) 215-1471

***Counsel for Plaintiffs***