MARK DAVID McPHERSON (307951)
*mmcpherson@goodwinlaw.com*
**GOODWIN PROCTER LLP**
The New York Times Building
620 Eighth Avenue
New York, New York 10018
Tel.: +1 212 813 8800

Attorneys for Defendant Elsevier Inc.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

KIMSA NGUYEN and DAVID GARCIA, on behalf of themselves, all others similarly situated, and the general public,

Plaintiffs,

v.

ELSEVIER INC.,

Defendant.

Case No. 5:25-cv-00825-NC

**DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6)**

Date: May 14, 2025
Time: 11:00 a.m.
Courtroom: 5 – 4th Floor
Judge Hon. Nathanael M. Cousins

Complaint filed: January 24, 2025

# TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. ARGUMENT ..... 2

A. Elsevier Does Not Disclose "Personally Identifiable Information" In Violation Of The VPPA. ..... 2

1. The Most Plaintiffs Allege Is That Elsevier Discloses To Intercom URL Pages That A User Views. ..... 2

2. Mere Disclosure Of A URL Page Does Not Violate The VPPA. ..... 4

B. Elsevier Is Not A Video Tape Service Provider. ..... 6

III. CONCLUSION ..... 8

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Intel Corp. Inv. Policy Comm.*, 579 F. Supp. 3d 1133 (N.D. Cal. 2022) ........ 7

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........ 6

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ........ 6

*Braun v. Phila. Inquirer, LLC*, No. 22-cv-4185-JMY, 2023 WL 7544160 (E.D. Pa. Nov. 13, 2023) ........ 4, 5

*Cantu v. Tapestry, Inc.*, 697 F. Supp. 3d 989 (S.D. Cal. 2023) ........ 7

*Cantu v. Tractor Supply Co.*, No. 2:23-cv-3027-HDV-JC, 2024 WL 1601257 (C.D. Cal. Mar. 21, 2024) ........ 7

*Edwards v. MUBI, Inc.*, --- F. Supp. 3d ----, 2025 WL 985130 (N.D. Cal. March 31, 2025) ........ 4, 5

*Ghanaat v. Numerade Labs, Inc.*, 689 F. Supp. 3d 714 (N.D. Cal. 2023) ........ 4, 5

*Lee v. Plex, Inc.*, --- F. Supp. 3d ----, 2025 WL 948118 (N.D. Cal. March 28, 2025) ........ 2, 5

*Lee v. Springer Nature Am. Inc.*, No. 24-cv-4493 (LJL), 2025 WL 692152 (S.D.N.Y. Mar. 4, 2025) ........ 8

*Martin v. Meredith Corp.*, 657 F. Supp. 3d 277 (S.D.N.Y. 2023) ........ 4

*Salazar v. Nat'l Basketball Ass'n*, 118 F.4th 533 (2nd Cir. 2024) ........ 8

*Schneider v. California Dep't of Corrs.*, 151 F.3d 1194 (9th Cir. 1998) ........ 3

*Sprewell v. Golden State Warriors*, 266 F.3d 979 (9th Cir. 2001) ........ 3

*Swartz v. KPMG LLP*,
476 F.3d 756 (9th Cir. 2007) ........ 7

*In re Vizio, Inc.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) ........ 7

**Statutes**

18 U.S.C. § 2710 ........ *passim*

**Other Authorities**

Consolidated Class Action Amended Complaint, *Braun v. Phila. Inquirer, LLC*,
No. 2:22-cv-04185-JMY (E.D. Pa. Feb. 17, 2023), Dkt. 28 ........ 5

Class Action Complaint, *Ghanaat v. Numerade Labs, Inc.*,
No. 4:23-cv-00833-YGR (N.D. Cal. Feb. 24, 2023), Dkt. 1 ........ 5

Class Action Complaint, *Lee v. Plex, Inc.*,
No. 5:24-cv-02386 (N.D. Cal. Apr. 22, 2024), Dkt. 1 ........ 5

## I. INTRODUCTION

Plaintiffs' defense of their Complaint exaggerates both their allegations and the law. They contend the Complaint adequately states a VPPA claim by pointing to other cases where, they say, courts sustained VPPA claims based on allegations of mere disclosure of a URL page rather than a video that a user "requested or obtained." Aside from being an unwarranted expansion of the VPPA, those cases involved technology fundamentally different than the technology at issue here. Those cases all involved allegations concerning the Meta Pixel; Plaintiffs' Complaint here concerns a chat function provided by a third party, Intercom.

The difference cannot be overstated. In all the cases Plaintiffs rely upon, plaintiffs were able to plausibly allege that a company's use of the Meta Pixel could have resulted in the disclosure of specific videos that a consumer actually viewed or downloaded, in violation of the VPPA. The courts in those cases therefore declined to resolve a fact issue, at the pleading stage, about whether the Meta Pixel did, in fact, disclose as much. Here, in contrast, Plaintiffs cannot allege that it is possible, much less plausible, that Elsevier discloses to Intercom any specific video Plaintiffs actually downloaded or watched. The most they can allege is that Elsevier discloses to Intercom a URL page that contains far more information than the mere presence of a video, and there is no chance that the disclosure could ever include whether Plaintiffs downloaded or watched the video on the URL. There can be no VPPA violation under the bare pleading Plaintiffs offer here.

Plaintiffs also exaggerate their allegations and the law when it comes to whether Elsevier is a "video tape service provider," within the VPPA's reach. Plaintiffs' sole allegation connecting Elsevier to any video content is that it "owns and operates" *Osmosis*, a single service of the many that Elsevier offers. They then argue that they adequately allege Elsevier is a video tape service provider based on their allegations concerning video content on the *Osmosis* website. Yet the law offers no support for their position that allegations about one service offered by a multi-faceted company render that company a video tape service provider under the VPPA.

For either of these reasons—Plaintiffs cannot plausibly allege that the Osmosis website

discloses information about videos they "requested or obtained," and they cannot plausibly allege that Elsevier is a video tape service provider—the Court should dismiss the Complaint with prejudice.

## II. ARGUMENT

### A. Elsevier Does Not Disclose "Personally Identifiable Information" In Violation Of The VPPA.

#### 1. The Most Plaintiffs Allege Is That Elsevier Discloses To Intercom URL Pages That A User Views.

The VPPA only prohibits the disclosure of information that "identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3). Plaintiffs acknowledge this provision only forbids disclosure of "information that would 'readily permit an ordinary person to identify a specific individual's video-watching behavior.'"[1] (Dkt. 17 at 2 (quoting *Lee v. Plex, Inc.*, --- F. Supp. 3d ---, 2025 WL 9481118, at *10 (N.D. Cal. March 28, 2025).)

Plaintiffs' Complaint does not plausibly allege any such disclosure. Plaintiffs stake their entire VPPA claim on a screenshot of a purported Intercom transmission concerning Osmosis user "Horacio Nasep." Plaintiffs cite this screenshot, along with their assertions about its contents, to add up to their allegation that Elsevier discloses to Intercom their "name, email address, and the title of the video" they watched. (Dkt. 17 at 1–2.) There is no other basis for Plaintiffs' claim.

For a number of reasons, the screenshot on which Plaintiffs base their entire claim does not add up to a plausible allegation that Elsevier discloses to Intercom "information that would readily permit an ordinary person to identify" their "video-watching behavior."

First, Plaintiffs cannot even tie this screenshot to themselves. They fail to clarify who Horacio Nasep is, or explain how the screenshot has any apparent relation to a transmission of *their* information. (*Id.*) That alone disposes of the notion that Elsevier unlawfully disclosed

---

[1] Because Plaintiffs acknowledge that the plain text of the VPPA only forbids disclosure of a person's "video-watching behavior," Elsevier agrees there is no need to resort to the rule of lenity to interpret the VPPA. As discussed below, Plaintiffs simply do not plausibly allege that Elsevier discloses information to Intercom about their video-watching behavior.

information about Plaintiffs, undermining the basis of their only claim.

Second, in any event, the screenshot does not demonstrate any disclosure of a specific video "requested or obtained" by any user. (*See* Dkt. 15 at 3–6.) The screenshot's URL transmission is a web address for a webpage called "Anatomical terminology," which contains video and non-video content. (*See id.* at 4–5; Dkt. 15-5.)[2] Nothing about the URL, or the screenshot generally, indicates how the user interacted with that webpage, including whether the user "requested or obtained" the video. (*See* Dkt. 15 at 4–5, 9.) Plaintiffs do not argue otherwise. (*See* Dkt. 17 at 3 (acknowledging that the URL transmission "does not *necessarily* mean someone viewed the video").) And Plaintiffs allege no other facts that could demonstrate Elsevier discloses their video-watching behavior.

Plaintiffs ask the Court to assume that the URL transmission's reference to "Anatomical_terminology" denotes a video title, (Dkt. 17 at 2–3), but that assumption is unreasonable. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (courts are not "required to accept. . . unwarranted deductions of fact[] or unreasonable inferences" in adjudicating motion to dismiss). While Plaintiffs now assert that "the title of each video on Osmosis is integrated into the URL where it resides" (Dkt. 17 at 2), that assertion is nowhere in the Complaint. *See, e.g.*, *Schneider v. California Dep't of Corrs.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss."). And the URL transmission, including the placement of the "Anatomical_terminology" reference, aligns exactly with the web address a user would follow to visit the "Anatomical terminology" webpage and view any of its contents. (*See, e.g.*, Dkt. 15-5.) The only reasonable inference to be drawn is that the URL transmission identifies the address of the webpage to which the user navigated.

Thus, while Plaintiffs argue that they are "not asking the Court to find Elsevier liable for 'mere[ly] disclos[ing] . . . a URL'" (Dkt. 17 at 5), that is all that their allegations amount to.

---

[2] Plaintiffs do not dispute the accuracy of the URL capture provided at Dkt. 15-5; they rely on that URL page in their opposition. (*See* Dkt. 17 at 2–3.)

Allowing Plaintiffs to seek relief on this basis would depart from the plain text of the VPPA, which prohibits only the disclosure of "specific video materials or services" a consumer "requested or obtained." 18 U.S.C. § 2710(a)(3) & (b). Plaintiffs' expansive theory of VPPA liability would also drastically depart from the VPPA's limited purpose: to penalize disclosures of information concerning video material that a user requested or obtained. (*See* Dkt. 15 at 12–13.)

**2. Mere Disclosure Of A URL Page Does Not Violate The VPPA.**

No case Plaintiffs cite supports their expansive theory of VPPA liability. Relying on cases based on a company's use of the Meta Pixel to share URL transmissions with Meta, Plaintiffs argue that allegations that mere disclosure of a URL containing a video title suffice to state a VPPA claim. (*See* Dkt. 17 at 4.) Those cases have no application here for a number of reasons.

First, Plaintiffs fail to plausibly allege that Elsevier's URLs identify video titles. *See supra* at 3. All that the Complaint suggests is that Elsevier's URLs may or may not include video content. That is not sufficient to constitute a VPPA violation. *See, e.g.*, *Martin v. Meredith Corp.*, 657 F. Supp. 3d 277, 285 (S.D.N.Y. 2023) ("a URL of a . . . webpage which may or may not include a video does not show that a person requested or obtained specific video materials or services").

Second, none of the cases Plaintiffs cite compel departing from *Martin*'s holding that disclosure of "a URL of a . . . webpage which may or may not include a video" is not a VPPA violation. Plaintiffs read far too much into the cases that distinguished or did not follow *Martin*. Plaintiffs cite *Ghanaat v. Numerade Labs, Inc.*, 689 F. Supp. 3d 714, 720 (N.D. Cal. 2023), for example, arguing that "the *Ghanaat* court held that a 'URL is adequate to constitute PII' where 'it contains the name of the video and readily enables the average person to view the video.'" (Dkt. 17 at 4.) But that quote comes from a summary of the *Ghanaat* plaintiffs' argument, not the court's holding. In *Ghanaat*, the court held only that it could not resolve whether the URL that was allegedly disclosed sufficiently identified a video. 689 F. Supp. 3d at 721. *Edwards v. MUBI, Inc.*, --- F. Supp. 3d ----, 2025 WL 985130, at *4 (N.D. Cal. March 31, 2025), and *Braun v. Phila. Inquirer, LLC*, No. 22-cv-4185-JMY, 2023 WL 7544160, at *4 (E.D. Pa. Nov. 13, 2023), also

declined to rule on whether alleged disclosures of URLs constituted a VPPA violation, with *Braun* stating that "the question about whether URLs should be considered substantive content of a communication—as defined by the VPPA *in the context of Meta Pixel litigation*—would tend to be a question that would require a developed factual record beyond the mere pleading stage of litigation to adequately evaluate." 2023 WL 7544160, at *4 (emphasis added). And *Lee* did not rule on allegations concerning the disclosure of URLs at all. *See* 2025 WL 948118 at *10–11. Rather, the court rejected an argument that disclosure of a Facebook ID was insufficient to constitute PII for purposes of the VPPA. *Id.*

In other words, *Ghanaat*, *Edwards*, and *Braun* support—at most—the point that "whether the videos reflected in the URLs disclosed to Meta were available on [defendant's] website, and if so, whether Plaintiffs requested, obtained, or watched them" are factual issues that cannot be resolved on a motion to dismiss. *Edwards,* 2025 WL 985130, at *4.

This is a crucial distinction because Plaintiffs' case is fundamentally different than the Meta Pixel cases. Plaintiffs in those cases alleged that the Meta Pixel tracks user activity, including down to users' button clicks, such that it *could* specifically detect and transmit information about a user requesting or obtaining a video.[3] Because the Meta Pixel tracks user clicks, courts found it was plausible that Meta Pixel transmissions disclosing URLs as part of user

---

[3] *See Ghanaat*, 689 F. Supp. 3d at 717 (acknowledging allegations that the Meta Pixel "allows online businesses to track actions of customers on their websites," including "the pages visited, actions taken on those pages, [and] information users put into the website"); Class Action Complaint at ¶ 20, *Ghanaat v. Numerade Labs, Inc.*, No. 4:23-cv-00833-YGR (N.D. Cal. Feb. 24, 2023), Dkt. 1 ("Once a company like Numerade has installed the Meta Pixel on its website, the Meta Pixel tracks users as they navigate through the website and logs a variety of information, including pages visited, any website 'buttons' they click, the specific information entered in forms (including personal information), as well as 'optional values' set by the business website."); *Edwards*, 2025 WL 985130, at *4 (quoting allegations that the Meta Pixel "watches exactly what consumers choose to watch once they enter MUBI's library of movies"); Class Action Complaint at ¶¶ 31–32, *Lee v. Plex, Inc.*, No. 5:24-cv-02386 (N.D. Cal. Apr. 22, 2024), Dkt. 1 (alleging that the Meta Pixel "watches exactly what consumers request to watch once they enter Plex's library of movies . . . . For example, if a consumer views the film 'Reservoir Dogs' and loads the page including the video player, Plex discloses to Meta the URL of the page during an 'event'"); Consolidated Class Action Amended Complaint at ¶ 4, *Braun v. Phila. Inquirer, LLC*, No. 2:22-cv-04185-JMY (E.D. Pa. Feb. 17, 2023), Dkt. 28 ("The Meta Pixel . . . is a code Defendant installed on its website allowing Defendant to track 'conversions'—that is, when users take certain actions on its website, such as clicking an ad or viewing content—and to collect users' data.").

activities *do* identify video materials or services that a user requested or obtained.

This case is fundamentally different. Here, Plaintiffs do not, and cannot, allege that Intercom can decipher whether an Osmosis user requests or obtains a video, through tracking button clicks or otherwise. Plaintiffs simply cannot allege any facts from which the Court can infer that the URL information Elsevier discloses identifies video-watching behavior. Plaintiffs offer only the conclusory allegation, parroting the language of the VPPA, that "Elsevier knowingly disclosed to Intercom personally identifiable information concerning Plaintiffs and other Class Members, including their video content, full names, and email addresses." (Dkt. 1 ¶ 40; *see also* ¶¶ 18, 24-25 (similar).) Such "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

While Plaintiffs ask the Court to ignore "the supposedly special properties of the Meta Pixel cookie," (Dkt. 17 at 4), these differences cannot be disregarded. The differences in the technology expose the gulf between what plaintiffs are able to allege in the Meta Pixel cases compared to what Plaintiffs allege here. Plaintiffs here simply cannot do more than allege that Osmosis discloses to Intercom the URL a user is on, to enable the chat function to work. That is not a violation of the VPPA.

This exposes Plaintiffs' characterization of Elsevier's argument for dismissal as a simplistic and wishful reading of Elsevier's brief. They summarize Elsevier's motion as arguing that Elsevier "only *sometimes* violated the VPPA." (Dkt. 17 at 3, 5.) That's obviously not Elsevier's argument. The argument is that Elsevier's alleged disclosures to Intercom *never* violate the VPPA, because they do not "identif[y] a person as having requested or obtained specific video materials or services from a video tape service provider." (*See* Dkt. 15 at 8–9); *supra* at 2–3.

**B. Elsevier Is Not A Video Tape Service Provider.**

The Complaint also fails because Plaintiffs have not sued a video tape service provider.

Plaintiffs chose to assert a VPPA claim against Elsevier. Thus, to state their claim, Plaintiffs must plausibly allege that *Elsevier* is a video tape service provider, or that Elsevier is

"engaged in the business . . . of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4). Courts in the Ninth Circuit have found that this requires establishing that "delivering video content [is] central to the defendant's business or product[.]" *Cantu v. Tractor Supply Co.*, No. 2:23-cv-3027-HDV-JC, 2024 WL 1601257, at *3 (C.D. Cal. Mar. 21, 2024); *accord Cantu v. Tapestry, Inc.*, 697 F. Supp. 3d 989, 993 (S.D. Cal. 2023);[4] *In re Vizio, Inc.*, 238 F. Supp. 3d 1204, 1221 (C.D. Cal. 2017).

Plaintiffs do not allege as much. The Complaint's sole allegation connecting Elsevier to video content is that Elsevier "owns and operates Osmosis[] . . . a web-based platform that provides video-based learning resources and study tools[.]" (Dkt. 17 at 7 (quoting Dkt. 1 ¶ 1) (emphasis removed).) But the Complaint also recognizes that "Elsevier is a global provider of scientific, technical, and medical information products and services"; Osmosis is just one service of many that Elsevier offers. (Dkt. 1 ¶ 1; Dkt. 15-3 (identifying Osmosis as one of numerous Elsevier services).)[5]

Ignoring that Elsevier and Osmosis are not one and the same, Plaintiffs attempt to defend their pleading by directing the Court's attention to allegations concerning video content offered by *Osmosis*. (Dkt. 17 at 7.) These allegations show only that video content is a part of Osmosis's

[4] Plaintiffs cannot distinguish the *Cantu* cases based on the kind of video material offered by defendants in those cases. (*See* Dkt. 17 at 7–8.) The rule articulated in those cases—that video content delivery must be fundamental to a defendant's business for the VPPA to apply—did not derive from, or in any way hinge on, the video material offered in those cases. Rather, both courts concluded that this was the recognized rule in the Ninth Circuit, and used the rule to guide their assessments of the defendants' business models. *See Cantu v. Tractor Supply Co.*, 2024 WL 1601257, at *3–4; *Cantu v. Tapestry, Inc.*, 697 F. Supp. at 993–94.

[5] Plaintiffs' argument that the Court should not take judicial notice of Elsevier's Privacy Policy, which identifies non-video features of Osmosis omitted from the Complaint, is too cute by half. According to Plaintiffs, the Privacy Policy is not incorporated into their Complaint in part because even though the Complaint quotes from the policy directly, Plaintiffs do not attribute the quote "to the Privacy Policy or anything else." (Dkt. 17 at 8 n.2.) The law does not allow plaintiffs to selectively use documents to their advantage, but skirt judicial review of those documents by not expressly citing them. *See, e.g.*, *Anderson v. Intel Corp. Inv. Policy Comm.*, 579 F. Supp. 3d 1133, 1145 (N.D. Cal. 2022) ("The Court agrees with Defendants that Exhibits 1-15, 18, and 19 are properly incorporated by reference. Although Exhibits 1, 6, 9, 10, and 18 were not expressly cited in the FAC, all five exhibits are referenced, mentioned, or quoted."); *see also Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) ("[I]n order to prevent plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting . . . documents upon which their claims are based, a court may consider a writing referenced in a complaint but not explicitly incorporated therein" (cleaned up)).

broad offerings. The allegations thus fail to establish even that Osmosis is a video tape service provider. (*See* Dkt. 15 at 15.) But more importantly, these allegations do not demonstrate that video content delivery is central to *Elsevier's* business.

Plaintiffs never explain how allegations about Osmosis render Elsevier a video tape service provider. Plaintiffs point out that the Second Circuit has articulated a broader interpretation of "video tape service provider," including that "audiovisual content need only be *part* of the provider's book of business." (Dkt. 17 at 6 (quoting *Salazar v. Nat'l Basketball Ass'n*, 118 F.4th 533, 548 (2nd Cir. 2024).) But *Salazar* does not address the facts here, where Plaintiffs seek to establish that a global entity is a video tape service provider by alleging facts about just one of the company's many services. It therefore says nothing about the sufficiency of this Complaint. Plaintiffs also ignore the different and more limited interpretation of "video tape service provider" within this Circuit. *Supra* at 7. And even within the Second Circuit, courts have considered the definition of "video tape service provider" articulated by courts within the Ninth Circuit *alongside Salazar* to evaluate whether a defendant is a video tape service provider. *See Lee v. Springer Nature Am. Inc.*, No. 24-cv-4493 (LJL), 2025 WL 692152, at *7–8 (S.D.N.Y. Mar. 4, 2025) (considering *Salazar* while also following *In re Vizio Inc.*'s test that "for the defendant to be engaged in the business of delivering video content, the defendant's product must not only be substantially involved in the conveyance of video content to consumers but also significantly tailored to serve that purpose").

The Opposition also confirms that Plaintiffs cannot fix their deficient pleadings as to Elsevier. Plaintiffs propose only that if the Court "finds Elsevier's status as a video tape service provider inadequately pleaded, Plaintiffs could amend to include interviews with *Osmosis's* founders demonstrating that video content is central to *Osmosis*[.]" (Dkt. 17 at 8 (emphasis added).) Plaintiffs do not identify any facts available to them to buttress their allegations outside of information concerning Osmosis.

## III. CONCLUSION

For the foregoing reasons, Plaintiffs' Complaint should be dismissed with prejudice.

Dated: April 18, 2025

Respectfully submitted,

By: */s/ Mark David McPherson*

MARK DAVID McPHERSON
*mmcpherson@goodwinlaw.com*
**GOODWIN PROCTER LLP**
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Tel: +1 212 813 8800

Attorneys for Defendant Elsevier Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Northern District of California by using the CM/ECF system on April 18, 2025. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I certify under penalty of perjury that the foregoing is true and correct. Executed on April 18, 2025.

*/s/ Mark David McPherson*
MARK DAVID McPHERSON