UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIMSA NGUYEN, and David Garcia,<br><br>Plaintiffs,<br><br>v.<br><br>ELSEVIER INC.,<br><br>Defendant. | Case No. 25-cv-00825-NC<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS COMPLAINT**<br><br>Re: Dkt. No. 15, 17, 20 |

This putative class action against Defendant Elsevier, Inc. brought by Plaintiffs Kimsa Nguyen and David Garcia arises from Elsevier's allegedly knowing disclosure of Plaintiffs' sensitive video viewing data to a third-party services provider, Intercom, through tracking tools installed on Defendant's website Osmosis.org.  Plaintiffs bring a single claim under the Video Privacy Protection Act (VPPA), 18 U.S.C. § 2710.  Elsevier moves to dismiss this claim under Federal Rules of Civil Procedure 12(b)(6), arguing Plaintiffs fail to allege Elsevier is a "video tape services provider" and that Elsevier did not disclose consumers' "personally identifiable information" (PII) to other persons.  For the following reasons, Elsevier's motion to dismiss is DENIED.

**I.      BACKGROUND**

**A.      Factual Background**

Plaintiffs' Complaint alleges the following facts, which the Court takes as true for the purposes of this motion:

### 1. Osmosis is a Video-Centric Educational Website for Health-Related Topics

Osmosis is an educational platform founded in 2015 and purchased by Elsevier in 2021. ECF 1 ¶ 11. This platform's purpose is to provide high-quality learning resources primarily for medical students, healthcare professionals, and anyone interested in learning health-related topics in an easier to understand format through "engaging [and] visually-rich educational content." *Id.* Osmosis is host to an extensive collection of over 2,000 prerecorded animations that explain health-related topics ranging from medical conditions to pharmacology. ECF 1 ¶ 12. Access to Osmosis's video library through paid or free subscriptions requires an individual to register with Osmosis and provide their full name and email address to create an account. ECF 1 ¶ 13.

### 2. The Disclosure of Personally Identifiable Information

As part of Osmosis's customer engagement and support strategy, Elsevier uses the third-party, AI-based customer messaging company, Intercom, to help with customer service, engagement, feedback collection, onboarding and user education, through cookies and scripts that collect user data. ECF 1 ¶¶ 16–17. Plaintiffs allege whenever a subscriber watches a video on Osmosis, the website's cookies and scripts send single transmissions containing information such as 1) the title of the video watched, 2) the subscriber's full name, and 3) the subscriber's email address to Intercom without the user's consent. ECF 1 ¶ 20.

### 3. Plaintiffs' Experience with Osmosis

Plaintiffs Kimsa Nguyen and David Garcia registered for Osmosis by providing their full names and email addresses to Elsevier. ECF 1 ¶ 25. Elsevier never gave Plaintiffs notice of its disclosure of PII to Intercom, nor did they obtain Plaintiffs' informed, written consent to the disclosure of PII to Intercom. ECF 1 ¶¶ 26–27. When Plaintiffs viewed videos on Osmosis, Elsevier used cookies in Osmosis to disclose Plaintiffs' PII, including their full name, email address, and title of the video they viewed to Intercom. *Id.*; ECF 1 ¶ 18.

2

**B.   Procedural Background**

Plaintiffs filed a putative class action Complaint on behalf of themselves and all others who have been subscribers to Elsevier's Osmosis.org. ECF 1. Elsevier moved to dismiss Plaintiffs' Complaint under FRCP 12(b)(6). ECF 15. Elsevier also attached a Request for Judicial Notice under Federal Rule of Evidence 201 for Exhibits A, B, C, and D to its motion to dismiss.[1] *Id.* Plaintiffs opposed the motion to dismiss, and Elsevier submitted a reply in support of its motion. ECF 17; ECF 20. The parties have consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c). ECF 9; ECF 14.

## II.   LEGAL STANDARD

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When reviewing a 12(b)(6) motion, a court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the non-moving party." *Retail Prop. Trust v. United Bd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014). A court, however, need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* If a court grants a motion to dismiss, leave to amend should be granted unless the pleading could not possibly be cured by the allegation of other facts. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

---

[1] The Court orally granted Elsevier's RJN for Exhibits C & D to Elsevier's motion to dismiss and denied the RJN for Exhibits A & B upon the parties' stipulation at the motion hearing on May 21, 2025.

3

## III. DISCUSSION

In this motion to dismiss, Elsevier argues it is not a "video tape service provider" within the meaning of the VPPA, and Elsevier's use of cookies transmitting information to Intercom did not disclose PII. The Court disagrees with Elsevier's contentions and finds the Plaintiffs have sufficiently alleged their claim. ECF 15; ECF 17; ECF 20.

### A. Plaintiffs Plausibly Allege Elsevier is a Video Tape Service Provider

Elsevier contends it is not a "video tape service provider" within the meaning of the VPPA, but the Court disagrees. For a defendant to be a "video tape service provider" under the VPPA, they must be "engaged in the business . . . of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." *In re Facebook, Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 798 (N.D. Cal. 2019) (quoting 18 U.S.C. § 2710(a)(4)). To qualify the defendant as a "video tape service provider," their business or product "must not only be substantially involved in the conveyance of video content to consumers but also significantly tailored to serve that purpose." *In re Vizio, Inc.*, 238 F. Supp. 3d 1204, 1221 (C.D. Cal. 2017). In response to the Complaint, Elsevier claims they do not fall under regulation of the VPPA, as "Plaintiffs cannot establish that Elsevier is 'engaged in the business' of visual services," due to Osmosis being "just one service of many that Elsevier offers." ECF 20 at 7. But Plaintiffs allege Elsevier is a "video tape service provider," asserting Elsevier owns Osmosis and Osmosis's central business focus is delivering medical-related educational content through its vast library of over 2,000 prerecorded videos and supplementary materials such as video transcripts and exercises. ECF 15 at 7. Elsevier's ownership of Osmosis is not contested, as Elsevier states in its brief that Osmosis is "[o]ne of Elsevier's numerous *product* offerings." ECF 15 at 2 (emphasis added).

Courts in the Ninth Circuit have recognized that "*delivering video content must be central* to the defendant's business or *product*." *Cantu v. Tractor Supply Co.*, No. 23-cv-3027-HDV-JC, 2024 WL 1601257, at *3 (C.D. Cal. Mar. 24, 2024) (emphasis added). As Elsevier concedes its ownership of Osmosis, and states that Osmosis is "[o]ne of Elsevier's

4

1   numerous *product* offerings," the argument that Elsevier is "not in the business" of video

2   tape service provision is significantly weakened.  ECF 15 at 2 (emphasis added).

3   Furthermore, while Elsevier cites to cases such as *Cantu v. Tractor Supply Co.*, *Cantu v.*

4   *Tapestry, Inc.*, and *Carroll v. Gen. Mills, Inc.*, where VPPA regulations did not apply to

5   the defendants due to how peripheral the use of prerecorded videos was to the central focus

6   of their business or product, the Court perceives Elsevier's situation to be distinct from the

7   aforementioned cases.  *See Tractor Supply Co.*, 2024 WL 1601257, at *3; *Cantu v.*

8   *Tapestry, Inc.*, 697 F. Supp. 3d 989, 993–94 (S.D. Cal. 2023); *Carroll v. Gen. Mills, Inc.*,

9   No. 23-cv-1746-DSF, 2023 WL 4361093, at *3 (C.D. Cal. June 26, 2024).

10   Elsevier is distinguishable from the abovementioned defendants by virtue of the

11   intended purpose of their product, Osmosis.  While "a letter carrier who physically places a

12   package that . . . contain[s] a video tape into a consumer's mailbox" is clearly "delivering"

13   a video tape to a consumer, they would not be recognized as "engaging in the business" of

14   delivering video content "because [their] job responsibilities are in no way tailored to

15   delivering packages that contain videotapes as opposed to any other package."  *In re Vizio,*

16   *Inc.*, 238 F. Supp. 3d at 1221.  While the defendants in *Tractor Supply Co.*, *Tapestry, Inc.*,

17   and *Carroll* used their videos in a peripheral role—advertising their tractors, tapestry, and

18   food items respectively—based on the judicially noticed Exhibits C & D, Plaintiffs

19   plausibly allege Osmosis is *significantly tailored* to providing an interactive learning

20   website centered around its library of thousands of healthcare-related videos, video

21   transcripts, and interactive activities for subscribers to utilize.  *See Tractor Supply Co.*,

22   2024 WL 1601257l, at *3; *Tapestry, Inc.*, 697 F. Supp. 3d at 993; *Carroll*, 2023 WL

23   4361093, at *3; ECF 1 at 2; ECF 17 at 6–8.  As such, the central focus of this Elsevier

24   product can be plausibly inferred to act as a video-based learning platform that actively

25   delivers video content to subscribers, with *supplemental* non-video accompaniments to aid

26   users their learning process.  ECF 15 at 7.

27   Although it is possible to arrive at a different conclusion at summary judgment after

28   examination of evidence, under a FRCP 12(b)(6) motion to dismiss, the evidence and

1  allegations must be viewed in a light most favorable to the non-moving party. *See*
2  *Edwards v. MUBI, Inc.*, No. 24-cv-00638-EKL, 2025 WL 985130, at *2 (N.D. Cal. Mar.
3  31, 2025). Ultimately, it is plausible that Elsevier is engaged in the business of renting or
4  delivering prerecorded audio visual materials through their product, Osmosis, and the
5  product is significantly tailored to deliver such audio visual media along with *supplemental*
6  material to subscribers. *See In re Vizio, Inc.*, 238 F. Supp. 3d at 1221.

### B. Plaintiffs Plausibly Allege the Disclosure of PII to Intercom

Under the VPPA, to state a claim, "[t]he defendant must have knowingly disclosed 1) a consumer's identity; 2) the identity of 'specific video materials'; and 3) the fact that the person identified 'requested or obtained' that material." *In re Hulu Privacy Litig.*, 86 F. Supp. 3d 1090, 1095 (N.D. Cal. 2015) (citing 18 U.S.C. § 2710(a)(3)). PII is information that "readily permit[s] an ordinary person to identify a specific individual's video-watching behavior." *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017) (quoting *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 290 (3d Cir. 2016)).

While Elsevier argues the third element—a demonstration that the video materials were "requested or obtained"—requires Plaintiffs to demonstrate a disclosure of information regarding what they *watched* by citing to other circuits, the Court is persuaded by Ninth Circuit decisions that find "[t]he defendant need not disclose if the plaintiff watched the video once obtained in order to state a claim and have an injury." *Ghanaat v. Numerade Labs, Inc.*, 689 F. Supp. 3d 714, 720 (N.D. Cal. 2023). As the statute of the VPPA explicitly applies to disclosures of videos an individual has "requested or obtained," Plaintiffs have no need to demonstrate whether the disclosure reveals a user has watched the requested or obtained video to satisfy the third element of an actionable VPPA claim. *See id.* (citing to 18 U.S.C. § 2710(a)(3)).

The Court finds element one—whether a consumer's identity was disclosed by Elsevier—to be plausibly alleged by Plaintiffs. In *Ghanaat*, Judge Yvonne Gonzalez Rogers determined that personal information under VPPA includes but is not limited to "names or email addresses." *Ghanaat*, 689 F. Supp. 3d at 720. The Ninth Circuit

6

acknowledges that an "email address may very well readily enable an 'ordinary person' to identify an individual," and recognizes an individual's name as PII under the VPPA. *Eichenberger*, 876 F.3d at 986. To demonstrate Osmosis's transmission to Intercom meets this requirement, Plaintiffs present a screenshot of Osmosis's cookie to Intercom, where the name and email address of user "Horacio Nasep" are displayed in a bolded box containing the text, "name%22%3A%22Horacio%20Nasep%," and "horacionasep%40gmail.com%." ECF 1 at 4. Although Elsevier argues Plaintiffs fail to plausibly allege any disclosure of their PII through the screenshot of this Intercom transmission regarding this Osmosis user "Horacio Nasep," the Court understands Plaintiffs' screenshot to be illustrative of the alleged VPPA violation each Plaintiff allegedly experienced because of their usage of Osmosis.

While Elsevier further argues the screenshot is not demonstrative of "any disclosure of a specific video 'requested or obtained' by any user," Plaintiffs have sufficiently alleged this second element of a viable VPPA claim. ECF 20 at 3 (citing ECF 15 at 3–6). Plaintiffs allege "each time [they] viewed a video, Elsevier disclosed to Intercom in the same transmission [their] personally identifiable information, including at least [their] full name, email address, and the title of the video [they] viewed" in a readily identifiable format for the "ordinary person." ECF 1 ¶ 24. Elsevier counters Plaintiffs' allegation by asserting that Osmosis's cookies do not disclose readily identifiable video titles in the URLs found within the transmissions. ECF 15; ECF 20. As the Ninth Circuit requires PII to be information that "readily permit[s] an ordinary person to identify a specific individual's video-watching behavior," this lack of consensus raises a dispute of fact. *Eichenberger*, 876 F.3d at 985; ECF 1; ECF 15; ECF 17; ECF 20. Ultimately, the Court does not resolve disputes of fact in a motion to dismiss. *See Ghanaat*, 689 F. Supp. 3d at 721. As the Court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the non-moving party," the question of "[w]hether a URL sufficiently identifies a video is ultimately a factual question that should not be resolved on motion to dismiss." *Retail Prop. Trust*, 768 F.3d at 945; *Ghanaat*, 689 F. Supp. 3d at 721

(citing *Harris v. Pub. Broad. Serv.*, 662 F. Supp. 3d 1327, 1335 (N.D. Ga. 2023)).

The Court finds Plaintiffs have plausibly alleged Osmosis's disclosure of information to Intercom contains the identity of specific consumers and demonstrates these specific individuals requested or obtained videos from the website. The issue of whether specific audio visual materials were identified is factually disputed by both parties, making a resolution of this issue unsuitable in a motion to dismiss.

## IV.  CONCLUSION

For the abovementioned reasons, Elsevier's Rule 12(b)(6) motion to dismiss is **DENIED**. The Court requires Elsevier file its answer by June 23, 2025.

**IT IS SO ORDERED.**

Dated:  June 09, 2025

_____
NATHANAEL M. COUSINS
United States Magistrate Judge