MARK DAVID McPHERSON (307951)
*mmcpherson@goodwinlaw.com*
**GOODWIN PROCTER LLP**
The New York Times Building
620 Eighth Avenue
New York, New York 10018
Tel.: +1 212 813 8800

LAUREN LaVARE (353374)
*llavare@goodwinlaw.com*
**GOODWIN PROCTER LLP**
525 Market Street, Floor 32
San Francisco, California 94105
Tel. +1 415 733 6000
Fax: +1 415 677 9041

Attorneys for Defendant Elsevier Inc.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| KIMSA NGUYEN and DAVID GARCIA, on behalf of themselves, all others similarly situated, and the general public,<br><br>Plaintiffs,<br><br>v.<br><br>ELSEVIER INC.,<br><br>Defendant. | Case No. 5:25-cv-00825-NC<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: October 15, 2025<br>Time: 11:00 a.m.<br>Courtroom: 5 – 4th Floor<br>Judge Hon. Nathanael M. Cousins<br><br>Complaint filed: January 24, 2025<br><br>Amended Complaint filed: August 26, 2025 |

**NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT**

**PLEASE TAKE NOTICE** that on October 15, 2025, at 11:00 a.m., or at such later date and time as the Court may order, before the Honorable Nathaneal M. Cousins, United States Magistrate Judge, in the United States District Court for the Northern District of California, Courtroom 5, located on the 4th Floor of the San Jose Courthouse, 280 South 1st Street, San Jose, CA 95113, Defendant Elsevier Inc. will, and hereby does, move to dismiss Plaintiffs Kimsa Nguyen and David Garcia's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

This Motion is based upon this Notice of Motion and Motion, the supporting Memorandum of Points and Authorities, the Declaration of Mark David McPherson in support of Defendant's Motion to Dismiss the Amended Complaint and exhibits attached thereto, the Request for Judicial Notice, all papers from this case on file with the Court, all other matters of which the Court may take judicial notice, and such other arguments and materials as may be presented before the Motion is taken under submission.

Dated: September 9, 2025

Respectfully submitted,

*/s/ Mark David McPherson*

MARK DAVID McPHERSON
*mmcpherson@goodwinlaw.com*
**GOODWIN PROCTER LLP**

Attorneys for Defendant Elsevier Inc.

**TABLE OF CONTENTS**


I. INTRODUCTION ..... 1

II. BACKGROUND ..... 3

III. ARGUMENT ..... 7

A. Plaintiffs' Consent Bars Their VPPA Claim. ..... 8

1. Plaintiffs Consented to Elsevier's Privacy Policy ..... 9

2. The Privacy Policy—and Cookie Notice—Adequately Disclose the Practices Plaintiffs Challenge. ..... 14

3. Elsevier Gave Plaintiffs a Chance to Opt Out of the Practices They Challenge ..... 15

B. Plaintiffs Do Not Allege Disclosure of "Personally Identifiable Information" In Violation Of The VPPA. ..... 15

1. Plaintiff Nguyen Fails To Allege Purported Disclosures to Meta in Violation of the VPPA. ..... 16

2. Plaintiffs Fail to Plausibly Allege That Information About Either Plaintiff Was Shared with Intercom. ..... 17

C. Leave to Amend Would Be Futile ..... 19

IV. CONCLUSION ..... 19

## TABLE OF AUTHORITIES


Page(s)

**Federal Cases**

*A.S. v. SelectQuote Ins. Servs.*, 2024 WL 3881850 (S.D. Cal. Aug. 19, 2024)....18

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009).... 7, 18

*Ballinger v. City of Oakland*, 24 F.4th 1287 (9th Cir. 2022).... 7

*Cantu v. Tapestry, Inc.*, 697 F. Supp. 3d 989 (S.D. Cal. 2023).... 18

*Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034 (9th Cir. 2011).... 19

*Dohrmann v. Intuit, Inc.*, 823 F. App'x 482 (9th Cir. 2020).... 11

*Eichenberger v. ESPN, Inc.*, 876 F.3d 979 (9th Cir. 2017).... 7, 16

*In re Finjan Holdings, Inc. Secs. Litig.*, 58 F.4th 1048 (9th Cir. 2023).... 7

*Ghanaat v. Numerade Labs, Inc.*, 689 F. Supp. 3d 714 (N.D. Cal. 2023).... 2, 17

*Heerde v. LearfieldCommc'ns, LLC*, 2024 WL 3573874 (C.D. Cal. July 19, 2024).... 17

*Jackson v. Fandom, Inc.*, No. 2023 WL 4670285 (N.D. Cal. July 20, 2023).... 16

*Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005 (9th Cir. 2024).... 11

*Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047 (N.D. Cal. 2025)....*passim*

*Mitchener v. Talkspace Network LLC,* 2025 WL 1822801 (C.D. Cal. June 27, 2025).... 18

*Mollett v. Netflix, Inc.*, 795 F.3d 1062 (9th Cir. 2015).... 8

*Smith v. Facebook, Inc.*,
745 F. App'x 8 (9th Cir. 2018) .......... 11

*Smith v. Trinity Broad. of Texas, Inc.*,
2024 WL 4394557 (C.D. Cal. Sept. 27, 2024).......... 2, 17

*Solomon v. FlippsMedia, Inc.*,
2023 WL 6390055 (E.D.N.Y. Sept. 30, 2023).......... 17

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001).......... 7

**Federal Statutes**

18 U.S.C. § 2710 .......... *passim*

**Rules**

Fed. R. Civ. P. 12(b)(6).......... 7

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

In an effort to avoid discovery, Plaintiffs pleaded themselves out of their sole claim for relief, under the Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA"). The Court's June 9, 2025 Order denied Elsevier's first motion to dismiss in part because Plaintiffs included in the original Complaint a screenshot that the Court cited as support for "find[ing] element one" of their VPPA claim—"whether a consumer's identity was disclosed by Elsevier—to be plausibly alleged by Plaintiffs":

> "To demonstrate Osmosis's transmission to Intercom meets this requirement, Plaintiffs present a screenshot of Osmosis's cookie to Intercom, where the name and email address of user 'Horacio Nasep' are displayed in a bolded box containing the text, 'name%22%3A%22Horacio%20Nasep%,' and 'horacionasep%40gmail.com%.' ECF 1 at 4. Although Elsevier argues Plaintiffs fail to plausibly allege any disclosure of their PII through the screenshot of this Intercom transmission regarding this Osmosis user 'Horacio Nasep,' the Court understands Plaintiffs' screenshot to be illustrative of the alleged VPPA violation each Plaintiff allegedly experienced because of their usage of Osmosis."

(Dkt. 27 at 6–7.)

In discovery, Plaintiffs refused to produce information about the screenshot, despite Elsevier's requests. Plaintiffs also refused to respond to discovery concerning whether they interacted with the Intercom feature on Osmosis's website, as Elsevier explained they would have had to do for any information about them to be shared with Intercom. Their defense was to file an Amended Complaint that omits any reference to the screenshot. Instead, Plaintiffs now offer only the most conclusory allegation that Elsevier's Osmosis website shared information with Intercom, without any plausible basis for it. And to compensate for the absence of any basis for their conclusory allegations, Plaintiffs rest on their allegation that "Elsevier discloses (though not in compliance with the VPPA) that it collects 'Contact details, such as your name, email address, postal address, phone number and social media handle,' as well as 'Usage data, such as the features you used . . . and pages you visited,' and 'share[s] your personal information with,' among others 'service providers, including . . . IT service providers[.]'" (Dkt. 38 ¶¶ 19, 35.)

That allegation alone dooms Plaintiffs' VPPA claim, as it concedes that they consented to

any disclosure to Intercom (or to other third parties, such as Meta). While Plaintiffs allege that Elsevier's disclosure is "not in compliance with the VPPA" (*id.*), Judge Thompson recently decided they are simply wrong about that. *Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1059–60 (N.D. Cal. 2025). On nearly identical factual allegations, Judge Thompson granted a motion to dismiss a VPPA claim with prejudice where, as here, website users consented to a defendant's Privacy Policy and read the defendant's Cookie Notice that disclosed its information sharing practices and gave users the right to opt out of those sharing practices. Because Elsevier's Privacy Policy and Cookie Notices—to which Plaintiffs agreed via "written consent (including through an electronic means using the Internet)," 18 U.S.C.A. § 2710(b)(2)(B)—disclose its information sharing practices, and give Plaintiffs the right to opt out, the Policy and notices "satisfy all of the requirements of VPPA's consent provision" and "defeat[] their VPPA claim." *Lakes*, 777 F. Supp. 3d at 1059–60.

Even if consent did not dispose of their VPPA claim, moreover, Plaintiffs cannot even establish the basic elements of the claim. Again, the Amended Complaint retreats from the allegations Plaintiffs offered the Court to overcome Elsevier's previous motion, leaving the allegations about Elsevier's alleged disclosure to Intercom entirely conclusory. And while one Plaintiff adds allegations concerning Elsevier's alleged use of the Meta pixel to share information about her with Meta (Dkt. 38 ¶¶ 33–34), she omits critical allegations about her Facebook account, leaving those allegations insufficient to state a claim under the VPPA, even under the very VPPA cases Plaintiffs cited in opposition to Elsevier's earlier motion. A "complaint does not adequately allege that [disclosing a Facebook account] results in sharing of any personal information" without also alleging that Plaintiffs' "Facebook pages contain any personal information"—allegations the Court will not find in Plaintiffs' Amended Complaint. *Ghanaat v. Numerade Labs, Inc.*, 689 F. Supp. 3d 714, 720 (N.D. Cal. 2023); *see also Smith v. Trinity Broad. of Texas, Inc.*, 2024 WL 4394557, at *3 (C.D. Cal. Sept. 27, 2024) (granting motion to dismiss VPPA where plaintiff failed to establish "(1) her Facebook profile is publically accessible and (2) includes sufficient identifying information.").

Because Plaintiffs' Amended Complaint fails to establish the basis for their allegations that Elsevier shares information in violation of the VPPA, and concedes that even if it did, they

consented to any such sharing, their VPPA claim must be dismissed with prejudice.

## II. BACKGROUND[1]

In denying Elsevier's initial motion to dismiss, the Court held that Plaintiffs adequately alleged the elements of a VPPA claim: disclosure of "1) a consumer's identity; 2) the identity of 'specific video materials'; and 3) the fact that the person identified 'requested or obtained' that material." (Dkt. 27 at 6 (citing *In re Hulu Privacy Litig.*, 86 F. Supp. 3d 1090, 1095 (N.D. Cal. 2015) (citing 18 U.S.C. § 2710(a)(3)).) On the first element, disclosure of the consumer's identity, the Court pointed to the Complaint's screenshot purporting to show the transmission of information from Osmosis to Intercom concerning an individual not a party to this litigation, concluding that it plausibly demonstrated the transmission of personally identifiable information to Intercom. (Dkt. 27 at 6-7.)

Despite the significance of this screenshot to the Court's ruling, Plaintiffs refused to provide any information about it to Elsevier in discovery. Instead, they filed an Amended Complaint that abandons any reliance on that screenshot, and introduces additional allegations that Osmosis used the Meta pixel to share Plaintiffs' PII to Meta. (Dkt. 38 ¶ 26.) Plaintiffs thus allege only the bare conclusion that (a) "each time Ms. Nguyen viewed a video, Elsevier disclosed to Intercom, Meta and potentially other third parties, in the same transmission her personally identifiable information, including at least her full name, email address, and the title of the video she viewed"; and (b) "each time Mr. Garcia viewed a video, Elsevier disclosed to Intercom and potentially other third parties, in the same transmission his personally identifiable information, including at least his full name, email address, and the title of the video he watched." (Dkt. 38 ¶¶ 38-39.) (Plaintiff Garcia does not allege that he has a Facebook account, so only Plaintiff Nguyen adds allegations concerning disclosures to Meta.)

Despite this shift in theory and retreat from their previous allegations, Plaintiffs remain focused on Elsevier's alleged disclosure to Intercom (and now Meta) of videos to which they have access on Elsevier's Osmosis website. Among the many tools and resources Osmosis offers are

[1] The facts provided in this Background are based upon the Amended Complaint as well as documents that are incorporated into the Amended Complaint by reference or otherwise appropriate for judicial notice.

video-based educational materials and other "visually-rich educational content." (Dkt. 38 ¶ 10.) To access Osmosis videos, users must register for an Osmosis account. (Dkt. 38 ¶ 12). When individuals register for an Osmosis account, they agree to Elsevier's Terms and Conditions as well as its Privacy Policy. McPherson Decl. Exs. C, D. The registration page prominently includes links to Elsevier's Terms and Conditions and Privacy Policy, and provides that "By continuing you agree with our Terms and conditions and Privacy policy":




McPherson Decl. Ex. C (Osmosis 2022 Registration Page).




McPherson Decl. Ex. D (Osmosis 2023 Registration Page).

The Osmosis platform uses Intercom, an artificial intelligence customer support chatbot programmed to improve customer experiences with online businesses, for customer engagement and support. (Dkt. 38 ¶ 15–16.) In order to allow Intercom to understand and address customer needs, Elsevier discloses information concerning Osmosis user traffic to Intercom based on cookies and scripts from the Osmosis website. (*Id.* ¶ 17.) This information can include (if a user is logged in and interacting with Intercom) a user's name, email address, and the URL of a webpage the user visited. (*Id.*)

Likewise, Elsevier uses what is known as Tracking Cookies, like Meta Pixel, to help serve targeted ads to users. (*Id.* ¶ 27).

Elsevier discloses how it shares information with Intercom and Meta in its Privacy Policy and its Cookie Notice. Indeed, Plaintiffs acknowledge that "Elsevier discloses (though not in compliance with the VPPA) that it collects 'Contact details, such as your name, email address, postal address, phone number and social media handle,' as well as 'Usage data, such as the features you used . . . and pages you visited,' and 'share[s] your personal information with,' among others 'service providers, including . . . IT service providers[.]'" (Dkt. 38 ¶ 19.)

Elsevier likewise explains in its Cookie Notice, incorporated into its Privacy Policy, that it uses cookies to help users navigate and interact with their services:

> We use cookies and similar technologies to: [a]ssist you in efficiently and safely navigating and experiencing our services; [e]nable you to register, login, provide feedback and otherwise interact with our services; [s]tore and honor your preferences and settings; [m]easure and analyze usage and performance data; and [a]ssist us with promotional and marketing efforts (including interest-based advertising).

McPherson Decl. Exs. E (Osmosis 2022 Cookie Notice), F (Osmosis 2023 Cookie Notice). When users visit the Osmosis website, they are prompted by a cookie banner to review the Cookie notice and to either accept all cookies or modify which ones have access to their information. *Id.* Elsevier's Cookie Notice states that users can manage Elsevier's use of cookies in many ways: "You can manage the use of certain types of cookies by amending your cookies settings via the links in the cookie list on the site or in the cookie control tool made available on the site. You also may be able to block or delete cookies by selecting the appropriate settings on your browser privacy preferences menu. You can also manage many cookies used for online advertising via the consumer choice tools created under self-regulation programs in many countries, such as the US-based YourAdChoices …" (*Id.*)

Plaintiffs allege that they registered for Osmosis and then viewed videos on Osmosis. (Dkt. 38 ¶¶ 38–39.) The Amended Complaint offers little else about Plaintiffs or their experience with Osmosis, such as why they registered for Osmosis, whether they purchased one of the many subscription plans Osmosis offers, when and what videos they supposedly viewed on the site, if they limited Elsevier's cookie access, or whether they were logged in to their accounts when they viewed videos on the site. Nor does the Amended Complaint identify any disclosures by Elsevier

of Plaintiffs' information to Intercom or to Meta.

Plaintiffs' Amended Complaint thus boils down to allegations that: they subscribed to Osmosis; Osmosis discloses information to Intercom, a third-party chat provider, and Meta Pixel, an ad analytics tool, and both third parties allegedly receive URLs that may reflect which videos users access. Based on these sparse allegations, Plaintiffs seek to hold Elsevier liable on a class-wide basis for statutory damages under the Video Privacy Protection Act. They seek to represent a class "of all persons in the United States who, at any time during the two years preceding the date of the filing of this Complaint to the time a class is notified[,] . . . registered with Osmosis and watched at least one video on Osmosis." (Dkt. 38 ¶ 42.)

## III. ARGUMENT

To survive a motion to dismiss, a complaint must contain sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While courts must "accept as true all factual allegations in the operative. . . complaint," and "construe them in the light most favorable to . . . the non-moving party," *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 981 (9th Cir. 2017), courts need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences," *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Indeed, courts are not bound to "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Id.* "When a general conclusion in a complaint contradicts specific facts retold in a document attached to the complaint, incorporated by reference in the complaint, or subject to judicial notice, those specific facts are controlling." *In re Finjan Holdings, Inc. Secs. Litig.*, 58 F.4th 1048, 1052 n.1 (9th Cir. 2023).

Dismissal of a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) is proper where, as here, "the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Ballinger v. City of Oakland*, 24 F.4th 1287, 1292 (9th Cir. 2022) (quotation marks omitted).

To state a claim for violation of the VPPA, Plaintiffs must plausibly allege that:

(1) [Elsevier] is a 'video tape service provider,' (2) [Elsevier] disclosed 'personally

> identifiable information [as defined under the VPPA] concerning any customer' to 'any person,' (3) the disclosure was made knowingly, and (4) the disclosure was not authorized by [18 U.S.C.] section 2710(b)(2).

*Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1066 (9th Cir. 2015); *see also* 18 U.S.C. § 2710(b)(1).

Plaintiffs cannot establish a VPPA claim here for at least three reasons: (1) users registering for an Osmosis account provide express written consent in compliance with 18 U.S.C. § 2710(b)(2)(B)(i), to the alleged disclosures, (2) one Plaintiff's new allegations concerning Meta Pixel do not adequately allege disclosure of "personally identifiable information," even under the case law Plaintiffs relied upon in their previous briefing; and (3) Plaintiffs fail to plausibly allege any actual transmissions to Intercom.

### A. Plaintiffs' Consent Bars Their VPPA Claim.

The VPPA permits the disclosure of PII with the consumer's consent:

> "(2) A video tape service provider may disclose personally identifiable information concerning any consumer—
>
> (A)to the consumer;
>
> (B)to any person with the informed, written consent (including through an electronic means using the Internet) of the consumer that—
>
> (i)is in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer;
>
> (ii)at the election of the consumer—
>
> (I)is given at the time the disclosure is sought; or
>
> (II)is given in advance for a set period of time, not to exceed 2 years or until consent is withdrawn by the consumer, whichever is sooner; and
>
> (iii)the video tape service provider has provided an opportunity, in a clear and conspicuous manner, for the consumer to withdraw on a case-by-case basis or to withdraw from ongoing disclosures, at the consumer's election."

18 U.S.C. § 2710(b)(2).

As detailed below, Elsevier satisfies each of these requirements: it obtains (1) "informed, written consent (including through an electronic means using the Internet)" through its account

registration process; (2) "in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer"—the Privacy Policy is distinct from the Terms of Use; (3) "at the time disclosure is sought" or "given in advance for a set period of time not to exceed two years"; and (4) it provides the consumer with the ability to opt out from disclosures "in a clear and conspicuous manner." *Id.*

Construing these statutory requirements based on disclosures nearly identical to Elsevier's Judge Thompson recently dismissed a VPPA claim with prejudice. *Lakes*, 777 F. Supp. 3d at 1060. The Court should follow Judge Thompson's lead and dismiss Plaintiffs' claim for the same reason.

**1. Plaintiffs Consented to Elsevier's Privacy Policy.**

Plaintiffs allege that to "access Osmosis' video library—even on a free trial basis—an individual must register with Osmosis." (Dkt. 38 ¶ 12.) Plaintiffs also allege that both named plaintiffs registered for an Osmosis account. (Dkt. 38 ¶¶ 38–39.) Because users must agree to the Privacy Policy to register for an Osmosis account, Plaintiffs necessarily consented to the disclosure of their PII. This was true in 2022 and 2023 when Plaintiffs purportedly registered, and remains true today. *Id.*; McPherson Decl. Exs. C, D.

When Plaintiffs allegedly registered for Osmosis accounts in 2022 and 2023, they must have entered their names, emails, and created a password. *Id*. Directly below these input fields, the web page provides: "By signing up, you are agreeing to our Osmosis terms and privacy policy." *Id*. This notice is conspicuously displayed with blue hyperlinks that direct users to two separate and distinct webpages—one outlining the Terms of Service and the other detailing the Privacy Policy—ensuring that users have reasonable notice and consent separate from any other legal or financial obligation before registering, 18 U.S.C. § 2710(b)(2)(B):




McPherson Decl. Ex. C.




McPherson Decl. Ex. D. A user who does not accept the Privacy Policy does not have full access to Osmosis video content. (Dkt. 38 ¶ 13.)

Once Plaintiffs clicked "Let's go!"—as they must have to access Osmosis's video content

(Dkt. 38 ¶ 13)—they unambiguously manifested their intent to Elsevier's Terms of Use and the Privacy Policy. Courts uphold website agreements as valid and enforceable across a wide range of contexts where, as here, the user is required to affirmatively acknowledge the agreement before proceeding with use of the website. *Smith v. Facebook, Inc.*, 745 F. App'x 8 (9th Cir. 2018) (affirming dismissal of complaint based on consent since acceptance of Facebook's Terms and Policies "constitutes a valid contract."). Under Ninth Circuit law, users must have reasonable notice of a website "agreement's existence and contents." *Dohrmann v. Intuit, Inc.*, 823 F. App'x 482, 483 (9th Cir. 2020). Reasonable notice occurs when: "(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action . . . that unambiguously manifests . . . assent to those terms," such as clicking a button or checking a box. *Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1014 (9th Cir. 2024) (citation omitted). As demonstrated, Plaintiffs had such notice and manifested their intent to be bound by clicking "Let's Go."

Plaintiffs concede that Elsevier discloses what information it collects in the Privacy Policy. (Dkt. 38 ¶¶ 19, 35 (quoting privacy policy)). And they do not allege that they did not receive notice of the Terms of Use or the Privacy Policy. They cannot deny, then, that they manifested their intent to be bound by the Terms of Use and agreed to the Privacy Policy.

Instead, Plaintiffs offer only the conclusory allegation that they never received the Privacy Policy or Terms of Service in "a form separate from any other form setting forth other legal or financial obligations," to assert that the Privacy Policy does not conform to the VPPA. (Dkt. 38 ¶ 40.) That is not a factual allegation that the Court must accept; it is a legal argument about the requirements of the VPPA and it is wrong as a matter of law. Judge Thompson already disposed of this argument, explaining why a "Privacy Policy and Cookie Banner"—ones virtually identical to Elsevier's—"comply with the 'distinct and separate' requirement." *Lakes*, 777 F. Supp. 3d at 1059. As Judge Thompson recognized, Terms of Use set out the "legal or financial obligations of the consumer," 18 U.S.C. § 2710(b)(2)(B)(i); a Privacy Policy sets out what a company may and may not do with respect to consumer's data. *Id.*

Separately, Plaintiffs also consented to Elsevier's alleged use of cookies by not opting out of cookies despite Elsevier's Cookie Notice. When accessing the Osmosis website, users are immediately presented with a cookie banner that clearly informs them of the site's use of cookies:




McPherson Decl. Ex. G (Elsevier 2022 Homepage).




McPherson Decl. Ex. H (Osmosis 2022 Homepage).



McPherson Decl. Ex. I (Osmosis 2023 Homepage). The banner provides a direct link to Elsevier's Cookie notice, which explains what information is collected and how cookies are used. McPherson Decl. Exs. E, F. Users must either accept all cookies or actively manage their preferences through a settings interface that allows them to enable or disable specific categories of cookies. Access to Osmosis content is contingent on making a cookie selection, thereby providing users with both notice and control over how their PII is handled. This mechanism constitutes an additional layer of informed written consent. *Lakes*, 777 F. Supp. 3d at 1059.

**2. The Privacy Policy—and Cookie Notice—Adequately Disclose the Practices Plaintiffs Challenge.**

Plaintiffs cannot take issue with the scope of Elsevier's Privacy Policy. They acknowledge that Elsevier's Privacy Policy notifies them that Elsevier shares their information with third parties. The Privacy Policy outlines the type of PII that Elsevier collects, how it is collected, and how Elsevier uses and shares that information. (Dkt. 38 ¶ 19 (stating Elsevier discloses "that it collects 'Contact details, such as your name, email address, postal address, phone number and social media handle," as well as "Usage data, such as the features you used . . . and pages you visited,' and 'share[s] your personal information with,' among others 'service providers, including . . . IT service providers[.]'")).

In no uncertain terms, the Privacy Policy states that it collects "Data that you provide to [Elsevier] as part of interacting with the Service…[and] features you use[] . . . and pages you visited [and]. . . the course models . . . you view." McPherson Decl. Exs. A (Osmosis 2022 Privacy Policy), B (Osmosis 2023 Privacy Policy). It further states that Elsevier "collect[s] this data through our servers and the use of cookies and other technologies." *Id*. Elsevier also informs users that the information collected will be used to "[d]eliver targeted advertisement" and to "[p]rovide technical, product and other support and help to keep the Service working, safe and secure; and/or [r]espond to your requests, inquiries, comments or concerns." *Id.*

The Privacy Policy also directs users to the Elsevier cookie notice, which all users also receive when they go to the Osmosis webpage. The Cookie notice "supplements [Elsevier's] privacy policy and provides information about how [it uses] cookies and similar technologies." McPherson Decl.

Exs. E, F. The Cookie notice fully discloses the use of "Functionality cookies" which may be set by "third party providers whose services [Elsevier] have added to [its] pages;" "Targeting cookies" which "may be set through our site by our advertising partners" and "used by those companies to build a profile of your interests and show you relevant adverts on other sites;" and "Social media cookies" which are "capable of tracking your browser across other sites and building up profile interests." *Id*.

**3. Elsevier Gave Plaintiffs a Chance to Opt Out of the Practices They Challenge.**

Elsevier advises its users that they "can control cookies through [their] browser's settings and other tools." *Id*. Indeed, the Cookie Notice gives Plaintiffs three options for doing so: "You can manage the use of certain types of cookies by amending your cookies settings via the links in the cookie list on the site or in the cookie control tool made available on the site. You also may be able to block or delete cookies by selecting the appropriate settings on your browser privacy preferences menu. You can also manage many cookies used for online advertising via the consumer choice tools created under self-regulation programs in many countries, such as the US-based YourAdChoices …" (*Id.*) Elsevier thus provides the requisite "opportunity, in a clear and conspicuous manner, for the [subscriber] to withdraw on a case-by-case basis or to withdraw from ongoing disclosures." 18 U.S.C. § 2710(b)(2)(B)(iii).

In short, Elsevier's Privacy Policy, together with the incorporated Cookie Notice, expressly disclose the categories of PII that Elsevier collects and shares and give Plaintiffs every chance to opt out, putting this case on all fours with *Lakes*. Just as Judge Thompson found that plaintiff there could not state a VPPA claim because the defendant obtained the requisite consent to share information about the plaintiff, Plaintiffs here have no claim because Elsevier obtained the requisite consent to the very information sharing practices Plaintiffs challenge.

**B. Plaintiffs Do Not Allege Disclosure of "Personally Identifiable Information" In Violation Of The VPPA.**

Plaintiffs' gambit—relying on Elsevier's Privacy Policy to allege that Osmosis discloses their personal information in violation of the VPPA (Dkt. 38 ¶ 19)—does not even help them state

a claim in the first place. Even with that allegation, Plaintiffs cannot establish that any PII about them was disclosed in violation of the VPPA. The Ninth Circuit has adopted an 'ordinary person' standard to determine what constitutes PII under the VPPA: "[P]ersonally identifiable information" means only that information that would "readily permit an ordinary person to identify a specific individual's video-watching behavior." *Eichenberger*, 876 F.3d at 985 (quoting *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 267 (3d Cir. 2016)); *see also Jackson v. Fandom, Inc.*, No. 2023 WL 4670285, at *4 (N.D. Cal. July 20, 2023). Plaintiffs fail to allege that any of the purported data sharing meets this standard because they (1) do not plead any facts showing that the Meta pixel transmitted information qualifying as PII and (2) rely solely on conclusory assertions that such PII was transmitted.

**1. Plaintiff Nguyen Fails To Allege Purported Disclosures to Meta in Violation of the VPPA.**

One of the Plaintiffs' new allegations concerning the Meta pixel do not suffice to state a VPPA claim. Plaintiff Nguyen does not allege that Elsevier disclosed her unencrypted Facebook ID, or transmitted any data that was then linked to her Facebook profile. (Dkt. 38 ¶¶ 23–37.) Instead, Nguyen relies on generalized, abstract statements about Meta and how PII *could* be accessible by disclosures not alleged here. (Dkt. 38 ¶ 27 ("Meta can refine and expand the user profile")); (Dkt. 38 ¶ 28 ("if a user is logged into their Facebook or Instagram account when they visit the Osmosis website, Meta receives third-party cookies allowing Meta to link the data collected by the Pixel to the specific Facebook or Instagram user.")); (Dkt. 38 ¶ 29 ("Meta can also link PII to individual users by identifying information collected.")) But Plaintiff never alleges that Meta received any information that it then linked to her specific Facebook ID. (Dkt. 38 ¶¶ 38–39.)

At best, Plaintiff alleges that she was logged into her Meta account "on the same browser" during "at least some" of the times she accessed Osmosis. (*Id.* ¶ 38.) This allegation is not enough, even under the cases Plaintiffs cited in their previous brief to support their claim. The allegation fails to establish that any transmission of data occurred under any circumstances that would link Plaintiff Nguyen's Meta account to specific Osmosis video viewing activity. This distinction is critical based on Plaintiffs' own description of the way cookies are transmitted through the Meta

Pixel: "Meta *can* refine and expand the user profile" (*id.* ¶ 27 (emphasis added)) and "can also link PII to individual users by identifying information collected through the Pixel… to match users to their Facebook or Instagram accounts" (*id.* ¶ 29.) But Plaintiff never alleges this actually occurred.

Even if Plaintiff could allege that her unencrypted Facebook ID were linked to her Osmosis viewing habits, that too would be insufficient to demonstrate that her PII was disclosed. A "complaint does not adequately allege that [disclosing a Facebook account] results in sharing of any personal information" without also alleging that Plaintiffs' "Facebook pages contain any personal information." *Ghanaat v. Numerade Labs, Inc.*, 689 F. Supp. 3d 714, 720 (N.D. Cal. 2023); *see also Smith v. Trinity Broad. of Texas, Inc*., 2024 WL 4394557, at *3 (C.D. Cal. Sept. 27, 2024) (granting motion to dismiss VPPA where plaintiff failed to establish "(1) her Facebook profile is publicly accessible and (2) includes sufficient identifying information."); *Heerde v. LearfieldCommc'ns, LLC*, 2024 WL 3573874, at *4(C.D. Cal. July 19, 2024) (dismissing VPPA claim for failure to allege Facebook pages contained viewable PII to identify plaintiffs); *Solomon v. FlippsMedia, Inc.*, 2023 WL 6390055, at *3 (E.D.N.Y. Sept. 30, 2023)("Plaintiff needed to allege that her public Facebook profile page contained identifying information about her in order to state a plausible claim."). No such allegations are included in the Amended Complaint. (Dkt. 38. ¶¶ 27–36).

**2. Plaintiffs Fail to Plausibly Allege That Information About Either Plaintiff Was Shared with Intercom.**

In its Order denying Elsevier's prior motion to dismiss (Dkt. 27. at 7), the Court found that Plaintiffs met the governing pleading standard based in part on a screen shot purportedly showing the transmission of video information of Osmosis users to Intercom. The Court stated that because "Plaintiffs present[ed] a screenshot of Osmosis's cookie to Intercom, where the name and email address of user 'Horacio Nasep' [was] displayed in a bolded box containing the text, "name%22%3A%22Horacio%20Nasep%," and "horacionasep%40gmail.com%" it was "illustrative of the alleged VPPA violation each Plaintiff allegedly experienced because of their usage of Osmosis." (*Id.*)

Yet the Amended Complaint retreats from Plaintiffs' prior pleading. Rather than provide

Elsevier basic details about their screenshot—how it was created, when it was taken, or whether the user was even watching a video—Plaintiffs have removed it entirely and now rely solely on conclusory allegations and statutory recitations that fall short of Rule 8's pleading requirements. Now, the Amended Complaint rests on statements with no content at all, such as "each time Ms. Nguyen viewed a video, Elsevier disclosed to Intercom, Meta and potentially other third parties, in the same transmission her personally identifiable information, including at least her full name, email address, and the title of the video she viewed." (Dkt. 38 ¶¶ 38–39). These "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (2009).

Nowhere does the Amended Complaint contain any factual allegations making that conclusion plausible. Aside from that bare statement, nowhere in the Amended Complaint do Plaintiffs support the allegation that Elsevier transmits information concerning specific video content that *they* "requested or obtained." *Mitchener v. Talkspace Network LLC,* 2025 WL 1822801, at *8 (C.D. Cal. June 27, 2025) (dismissing California Trap and Trace claim where "conclusory allegation [did] not identify what personal information of Plaintiff's, if any, was captured by the TikTok Cookie."). At best, the Amended Complaint now contains only the vague and conclusory allegation that Elsevier sends information concerning users' "video-watching habits." (Dkt. 38 ¶¶ 18, 34.); *Cantu v. Tapestry, Inc.*, 697 F. Supp. 3d 989, 995 (S.D. Cal. 2023) (dismissing VPPA claim where complaint only contained conclusory allegations that defendant was a video service provider). But the FAC reveals there is no basis for that conclusion. In fact, the only basis Plaintiffs previously offered is now removed. *Compare* Dkt. 1 ¶¶ 19–20 *with* Dkt. 38 ¶ 17; *A.S. v. SelectQuote Ins. Servs.*, 2024 WL 3881850, at *8 (S.D. Cal. Aug. 19, 2024) (dismissing CIPA claim where plaintiff's "conclusory allegation that Defendant assists and allows 'several third parties,' including LeadID and Facebook, to 'intercept' Plaintiffs' sensitive personal information is unsupported by sufficient factual allegations.").

Having stripped their pleading of the only factual matter that previously made their claim plausible, Plaintiffs can no longer satisfy the requisite pleading standard.

### C. Leave to Amend Would Be Futile

The Complaint should be dismissed with prejudice because amendment would be futile. *See Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011) ("[A] district court may dismiss without leave where a plaintiff's proposed amendments would fail to cure the pleading deficiencies and amendment would be futile."). Plaintiffs cannot amend their pleadings to plausibly allege that they registered for an Osmosis account without agreeing to the Privacy Policy, that Osmosis transmitted video titles to Meta in a manner that linked those titles to their Facebook profiles containing personally identifiable information, or that Osmosis disclosed any PII to Intercom. For these reasons, Elsevier's alleged disclosures cannot, and do not, violate the VPPA.

## IV. CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court dismiss the Complaint in its entirety, with prejudice.

Dated: September 9, 2025

Respectfully submitted,

By: */s/ Mark David McPherson*

MARK DAVID McPHERSON
*mmcpherson@goodwinlaw.com*
**GOODWIN PROCTER LLP**
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Tel: +1 212 813 8800

LAUREN LaVARE
*llavare@goodwinlaw.com*
**GOODWIN PROCTER LLP**
525 Market Street, Floor 32
San Francisco, California 94105
Tel. +1 415 733 6000
Fax: +1 415 677 9041

Attorneys for Defendant Elsevier Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Northern District of California by using the CM/ECF system on September 9, 2025. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I certify under penalty of perjury that the foregoing is true and correct. Executed on September 9, 2025.

*/s/ Mark David McPherson*
MARK DAVID McPHERSON