**FITZGERALD MONROE FLYNN PC**
JACK FITZGERALD (SBN 257370)
*jfitzgerald@fmfpc.com*
MELANIE R. MONROE (SBN 275423)
*mmonroe@fmfpc.com*
TREVOR FLYNN (SBN 253362)
*tflynn@fmfpc.com*
ALLISON FERRARO (SBN 351455)
*aferraro@fmfpc.com*
2341 Jefferson Street, Suite 200
San Diego, California 92110
Phone: (619) 215-1471
***Counsel for Plaintiffs***

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| KIMSA NGUYEN and DAVID GARCIA on behalf of themselves, those similarly situated, and the general public,<br><br>Plaintiffs,<br><br>v.<br><br>ELSEVIER INC.,<br><br>Defendant. | Case No. 5:25-cv-00825-NC<br><br>**PLAINTIFFS' OPPOSITION TO ELSEVIER INC.'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT (DKT. NO. 40)**<br><br>Judge: Hon. Nathaniel M. Cousins<br>Date: October 15, 2025, 11:00 a.m.<br>Courtroom: 5, 4th Floor<br>Complaint Filed: January 24, 2025 |

**TABLE OF CONTENTS**


TABLE OF AUTHORITIES ..... ii

INTRODUCTION ..... 1

ISSUES TO BE DECIDED ..... 2

FACTS ..... 2

LEGAL STANDARD ..... 3

ARGUMENT ..... 4

I. THE COURT SHOULD REJECT ELSEVIER'S CONSENT DEFENSE ..... 4

A. Elsevier's Consent Defense is Procedurally Barred Under Rule 12(g)(2) ..... 4

B. Elsevier's Consent Defense Improperly Invokes Facts Extraneous to the FAC and Not Subject to Judicial Notice for Their Truth ..... 6

C. The Osmosis Registration Page that Elsevier Depicts Establishes a *Lack of Consent* by Plaintiffs—and the Class ..... 11

D. The Extraneous Materials Elsevier Invokes Do Not Resolve the Fact-Intensive Inquiry of Whether it Obtained VPPA-Compliant Consent from Plaintiffs ..... 13

II. PLAINTIFFS PLAUSIBLY ALLEGE ELSEVIER'S DISCLOSURE OF THEIR PERSONALLY IDENTIFIABLE INFORMATION ..... 15

A. Plaintiffs Plausibly Allege Transmission of Personally Identifiable Information to Meta ..... 15

B. The Court Should Not Disturb Its Holding that Plaintiffs Plausibly Allege Transmission of Personally Identifiable Information to Intercom ..... 19

CONCLUSION ..... 20

# TABLE OF AUTHORITIES

**Cases**

*A.S. v. SelectQuote Ins. Servs.*, 2024 WL 3881850 (S.D. Cal. Aug. 19, 2024) .......... 20

*Ade v. Viki, Inc.*, 2024 WL 1880153 (N.D. Cal. 2024) .......... 15

*Am. Ass'n of Naturopathic Physicians v. Hayhurst*, 227 F.3d 1104 (9th Cir. 2000) .......... 4

*Appel v. Boston Nat'l Title Agency, LLC*, 2019 WL 3858888 (S.D. Cal. Aug. 15, 2019) .......... 1

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......... 4

*Balestrieri v. Sportsedtv, Inc.*, No. 25-cv-04046-SK, Dkt. No. 27 (N.D. Cal. Sept. 16, 2025) .......... 8, 10, 17

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......... 4

*Cappello v. Walmart Inc.*, 2019 WL 11687705 (N.D. Cal. Apr. 5, 2019) .......... 10, 12, 14, 15

*Collins v. Pearson Educ., Inc.*, 721 F. Supp. 3d 274 (S.D.N.Y. 2024) .......... 19

*Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992 (9th Cir. 2010) .......... 9

*Datel Holdings Ltd. v. Microsoft Corp.*, 712 F. Supp. 2d 974 (N.D. Cal. 2010) .......... 10, 11

*Eichenberger v. ESPN, Inc.*, 876 F.3d 979 (9th Cir. 2017) .......... 17

*Fan v. NBA Properties Inc.*, 2024 WL 1297643 (N.D. Cal. Mar. 26, 2024) .......... 15

*Feldman v. Star Trib. Media Co. LLC*, 659 F. Supp. 3d 1006 (D. Minn. 2023) .......... 13, 14, 15, 18

*Garcia v. Bandai Namco Entm't Am. Inc.*, 2025 WL 2451033 (C.D. Cal. Aug. 7, 2025) .......... 11, 15

*Ghanaat v. Numerade Labs, Inc.*,
689 F. Supp. 3d 714 (N.D. Cal. 2023) ............ 16, 17

*Goel v. Bunge, Ltd.*,
820 F.3d 554 (2d Cir. 2016)............ 8

*Haines v. Cengage Learning, Inc.*,
2025 WL 2336089 (S.D. Oh. May 5, 2025) ............ 19

*Heerde v. Learfield Commc'ns, LLC*,
741 F. Supp. 3d 849 (C.D. Cal. 2024) ............ 18

*Hesse v. Godiva Chocolatier, Inc.*,
463 F. Supp. 3d 453 (S.D.N.Y. 2020)) ............ 9

*Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*,
146 F.3d 66 (2d Cir. 1998)............ 10

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) ............ 7, 8, 10

*Knievel v. ESPN*,
393 F.3d 1068 (9th Cir. 2005) ............ 4

*Lakes v. Ubisoft, Inc.*,
777 F. Supp. 3d 1047 (N.D. Cal. 2025) ............ 12, 13

*Lateral Recovery, LLC v. Cap. Merch. Servs., LLC*,
632 F. Supp. 3d 402 (S.D.N.Y. 2022)............ 8

*Lee v. City of Los Angeles*,
250 F.3d 668 (9th Cir. 2001) ............ 7

*Lee v. Plex, Inc.*,
773 F. Supp. 3d 755 (N.D. Cal. 2025) ............ 18

*Lee v. Springer Nature Am., Inc.*,
769 F. Supp. 3d 234 (S.D.N.Y. Mar. 4, 2025)............ 8, 9, 10

*Leyse v. Bank of Am. Nat'l Ass'n*,
804 F.3d 316 (3d Cir. 2015)............ 4, 5, 6

*Manza v. Pesi*,
784 F. Supp. 3d 1110 (W.D. Wis. 2025) ............ 18

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
521 F.3d 1097 (9th Cir. 2008) ............ 4

*Mitchener v. Talkspace Network LLC*,
2025 WL 1822801 (C.D. Cal. June 27, 2025) ........ 20

*Nguyen v. Elsevier Inc.*,
2025 WL 1635679 (N.D. Cal. June 9, 2025) ........ passim

*Niantic, Inc. v. Global++*,
2020 WL 8620002 (N.D. Cal. Sept. 2, 2020) ........ 1

*Northstar Fin. Advisors Inc. v. Schwab Invs.*,
135 F. Supp. 3d 1059 (N.D. Cal. 2015) ........ 5

*Novak v. Torcon, Inc.*,
2025 WL 2111068 (E.D. Pa. July 28, 2025) ........ 5, 6

*Plotsker v. Envato Pty Ltd.*,
2025 WL 2481422 (C.D. Cal. Aug. 26, 2025) ........ 7, 8, 10, 11

*Sellers v. Bleacher Report, Inc.*,
2023 WL 4850180 (N.D. Cal. July 28, 2023) ........ 18

*Smith v. Flagstar Bank, FSB*,
2019 WL 631537 (N.D. Cal. Feb. 14, 2019) ........ 7

*Smith v. Trinity Broad. of Texas, Inc.*,
2024 WL 4394557 (C.D. Cal. Sept. 27, 2024) ........ 17

*Solomon v. Flipps Media, Inc.*,
2023 WL 6390055 (E.D.N.Y. Sept. 30, 2023) ........ 18

*Victualic Co. v. Tieman*,
499 F.3d 227 (3d Cir. 2007) ........ 10

*Yoon v. Meta Platforms, Inc.*,
2024 WL 5264041 (N.D. Cal. Dec. 30, 2024) ........ 1

**Rules**

Fed. R. Civ. P. 12 ........ 4

Fed. R. Civ. P. 12(b)(6) ........ 3

Fed. R. Civ. P. 12(c) ........ 5

Fed. R. Civ. P. 12(g)(2) ........ 4, 5

Fed. R. Civ. P. 12(h)(2) ..... 5

Fed. R. Civ. P. 12(h)(3) ..... 5

Fed. R. Evid. 201 ..... 7, 10

Fed. R. Evid. 201(f) ..... 7

**Statutes**

18 U.S.C. § 2710 ..... 1

18 U.S.C. § 2710(a)(3) ..... 12, 14, 16

18 U.S.C. § 2710(b)(1) ..... 13

18 U.S.C. § 2710(b)(2)(B) ..... 13, 15

18 U.S.C. § 2710(b)(2)(B)(i) ..... 11, 12, 14

18 U.S.C. § 2710(b)(2)(B)(ii) ..... 14, 15

18 U.S.C. § 2710(b)(2)(B)(iii) ..... 10, 14, 15

**Other Authorities**

Fed. R. Civ. P. 12, advisory committee note, 1966 Amendment, subdivision (h)

Wright & Miller, 5B Fed. Prac. & Proc. Civ. § 1357 (3d ed. & Apr. 2022 Update) ..... 13

Wright & Miller, 5C Fed. Prac. & Proc. Civ. § 1384 (3d ed. 2014) ..... 4

**INTRODUCTION**

The Court has already held Plaintiffs state a plausible claim for Elsevier's violation of the Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA"). *Nguyen v. Elsevier Inc.*, 2025 WL 1635679 (N.D. Cal. June 9, 2025) (Cousins, J.). Plaintiffs' First Amended Complaint ("FAC") advances the same allegations on which the Court based that holding, adding allegations of another way in which Elsevier violates the VPPA—through its use of the Meta Pixel. *See* Dkt. No. 38, FAC ¶¶ 23-37. Because Plaintiffs' VPPA claim will proceed regardless of whether these new allegations separately support it, Elsevier's motion is a waste of party and judicial resources, and is improper: a defendant "cannot bring a second motion to dismiss challenging a claim that is 'based on substantially the same allegations in the amended complaint and in the original complaint.'" *See Niantic, Inc. v. Global++*, 2020 WL 8620002, at *3 (N.D. Cal. Sept. 2, 2020) (quoting *Appel v. Boston Nat'l Title Agency, LLC*, 2019 WL 3858888, at *7 (S.D. Cal. Aug. 15, 2019)).

This is especially true because Elsevier's previous Rule 12 briefing argued for dismissal precisely because Plaintiffs' Complaint did *not* allege it uses Meta's Pixel. *See*, *e.g.*, Dkt. No. 15, Mot. to Dismiss Compl. ("First MTD") at 10 ("[T]he allegations in the *Ghanaat* complaint were far different than Plaintiffs' allegations here" because "[t]he *Ghanaat* plaintiffs challenged the disclosure of URL information to Meta through a tool called the 'Meta Pixel,'" which "this Court has recognized . . . is known to track 'any website buttons users click.'" (internal record citation, alteration and quotation marks omitted) (quoting *Yoon v. Meta Platforms, Inc.*, 2024 WL 5264041, at *1 (N.D. Cal. Dec. 30, 2024) (Cousins, J.))); *see also id.* at 11 ("Courts have relied on precisely this feature of the Pixel—its capacity to track and transmit to Meta button clicks on a video page—to find that a complaint adequately pleads a VPPA claim." (collecting cases)); Dkt. No. 20, Reply in Support of Mot. to Dismiss Compl. at 5 (calling it a "crucial distinction" rendering "Plaintiffs' case . . . fundamentally different" that plaintiffs in other "cases alleged that the Meta Pixel tracks user activity . . . such that it *could* specifically detect and transmit information about a user requesting or obtaining a video.").

Because the VPPA claim will proceed regardless, there is simply no need or reason for the Court to determine now whether allegations concerning Meta Pixel and possibly other tracking technologies on Osmosis support a VPPA claim. If necessary, the Court can address that during the class certification and summary judgment stages.

But if the Court considers Elsevier's Motion to Dismiss the FAC ("Mot.") on its substance, it should find the Motion deficient on several grounds. Elsevier focuses primarily on Plaintiffs' purported consent as grounds for arguing they fail to state a VPPA claim. But because this defense was available to Elsevier when it filed its previous Rule 12 motion, Elsevier is procedurally barred from asserting it now under Rule 12(g)(2). Even if Elsevier was not barred, its argument improperly invokes and relies on facts extraneous to the FAC, which the Court is not at liberty to consider. But even if the Court considered those extraneous facts, they do not support Elsevier's assertion that Plaintiffs consented in the manner required under the VPPA, which is a highly fact-intensive inquiry ill-suited for resolution now.

Elsevier's remaining arguments fare no better. Plaintiff Kimsa Nguyen plausibly alleges the disclosure of her personally identifiable information to Meta, and Plaintiffs' removal of an "illustration" of factual allegations that the Court found adequately plead a VPPA claim presents no grounds for the Court to revisit—much less reverse—its earlier decision.

The court should deny Elsevier's motion in its entirety.

## ISSUES TO BE DECIDED

1. Whether Elsevier's consent defense should be rejected now because it is procedurally barred by Rule 12(g)(2), and reliant on facts that are outside the Complaint, not subject to judicial notice for their truth, contradictory to the defense, and unable by themselves to resolve the complex inquiry.

2. Whether Plaintiffs plausibly allege Elsevier's transmission of personally identifiable information to Meta.

3. Whether Plaintiffs continue to plausibly allege Elsevier's transmission of personally identifiable information to Intercom.

## FACTS

Elsevier "owns and operates Osmosis.org ('Osmosis'), a web-based platform that provides video-based learning resources and study tools for medical, nursing, and health professionals." FAC ¶ 1. Osmosis uses Intercom, an "AI-based customer messaging platform," as "part of its customer engagement and support strategy . . . ." *Id.* ¶¶ 15-16. Osmosis also uses "Meta's Pixel (the 'Pixel')[,] . . . a snippet of code that Meta offers to website owners for free," which "tracks a user's activity in real-time," *id.* ¶ 24, to

"measure ad effectiveness, optimize campaigns, and build targeted audiences for future advertising and other marketing purposes that Elsevier would otherwise have to pay for," *id.* ¶ 34.

Plaintiffs Kimsa Nguyen and David Garcia each "registered for" and "viewed videos on Osmosis." *Id.* ¶¶ 38-39. "Through the use of Intercom's cookies and scripts installed on the Osmosis website, when free or premium subscribers watch video content on Osmosis, Elsevier discloses to Intercom, in a single transmission, *inter alia*, (a) the title of the video, (b) the subscriber's full name, and (c) the subscriber's email address." *Id.* ¶ 17. "Indeed, Elsevier discloses (though not in compliance with the VPPA) that it collects 'Contact details, such as your name, email address, postal address, phone number and social media handle,' as well as 'Usage data, such as the features you used . . . and pages you visited,' and 'share[s] your personal information with[,]' among others 'service providers, including . . . IT service providers[.]'" *Id.* ¶ 19. Thus, "each time" Plaintiffs "viewed a video, Elsevier disclosed to Intercom . . . in the same transmission" their "full name, email address, and the title of the video [they] viewed." *Id.* ¶¶ 38-39.

Moreover, "[a]s soon as a user takes any action on a webpage" embedded with the Pixel, "the Pixel's code embedded in the page re-directs the contents of the user's communication to Meta . . . ." *Id.* ¶ 24. By "being embedded on the Osmosis website, the Pixel tracks each user's activity . . . and sends that data to Meta, linking this information with users' personal identities." *Id.* ¶ 26. Moreover, "if a user is logged into their Facebook or Instagram account when they visit the Osmosis website, Meta receives third-party cookies allowing Meta to link the data collected by the Pixel to the specific Facebook or Instagram user." *Id.* ¶ 28. "Elsevier knew that by installing the Meta Pixel on Osmosis, it would send to Meta Osmosis subscribers' personally identifying information, including their video-watching habits." *Id.* ¶ 34. "During at least some of th[e] times" that "Ms. Nguyen viewed videos on Osmosis," she "was logged into her Meta account on the same browser she used to access Osmosis." *Id.* ¶ 38. Thus, "each time Ms. Nguyen viewed a video, Elsevier disclosed to . . . Meta . . . in the same transmission her personally identifiable information, including at least her full name, email address, and the title of the video she viewed." *Id.*

## **<u>LEGAL STANDARD</u>**

Dismissal under Federal Rule of Civil Procedure 12(b)(6) "is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Hart v. TWC Prod. & Tech. LLC*, 526 F. Supp. 3d 592, 598 (N.D. Cal. 2021) (quoting *Mendiondo v. Centinela Hosp. Med. Ctr.*,

521 F.3d 1097, 1104 (9th Cir. 2008) (internal citation omitted)). "A complaint need not contain detailed factual allegations, but facts pleaded by a plaintiff must be 'enough to raise a right to relief above the speculative level.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks and citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "In determining whether a plaintiff has met this standard, the Court must 'accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable' to the plaintiff." *Hart*, 526 F. Supp. 3d at 598 (quoting *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005)).

## ARGUMENT

### I. THE COURT SHOULD REJECT ELSEVIER'S CONSENT DEFENSE

#### A. Elsevier's Consent Defense is Procedurally Barred Under Rule 12(g)(2)

"Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under [Rule 12] must not make another motion under [Rule 12] raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2). "This 'consolidation rule' is intended 'to eliminate unnecessary delay at the pleading stage' by encouraging 'the presentation of an omnibus pre-answer motion in which the defendant advances every available Rule 12 defense' simultaneously rather than 'interposing these defenses and objections in piecemeal fashion.'" *Leyse v. Bank of Am. Nat'l Ass'n*, 804 F.3d 316, 320 (3d Cir. 2015) (quoting Wright & Miller, 5C Fed. Prac. & Proc. Civ. § 1384 (3d ed. 2014)); *accord Am. Ass'n of Naturopathic Physicians v. Hayhurst*, 227 F.3d 1104, 1107 (9th Cir. 2000), *as amended on denial of reh'g* (Nov. 1, 2000) ("The essence" of Rule 12(g) and Rule 12(h) "is that a party 'who by motion invites the court to pass upon a threshold defense should bring forward all the specified defenses . . . he then has and thus allow the court to do a reasonably complete job.'" (quoting Fed. R. Civ. P. 12, advisory committee note, 1966 Amendment, subdivision (h))).

Elsevier's first Motion to Dismiss was brought under Rule 12(b)(6). *See generally* First MTD. "Thus, unless one of the exceptions specified in Rule 12(g)(2) applies—*i.e.*, those established in Rule 12(h)(2) and (3)—[Elsevier]'s present Rule 12 motion to dismiss on [consent] grounds [i]s procedurally barred." *See*

*Leyse*, 804 F.3d at 320. Elsevier's Motion does not qualify for the Rule 12(h)(3) exception because it is not based on an asserted "[l]ack of [s]ubject-[m]atter [j]urisdiction." Fed. R. Civ. P. 12(h)(3). And it does not fall within the Rule 12(h)(2) exception, under which a successive motion to dismiss for "[f]ailure to state a claim . . . may be raised: (A) in any pleading allowed or ordered under Rule 7(a); (B) by a motion under Rule 12(c); or (C) at trial." Fed. R. Civ. P. 12(h)(2). Elsevier's Motion is neither a Rule 7(a) pleading, nor a motion raised at trial. And is it not a Rule 12(c) motion either, which may be filed only "[a]fter the pleadings are closed." Fed. R. Civ. P. 12(c). "[B]ecause no exception to Rule 12(g)(2) covers [Elsevier]'s successive motion, it [i]s improper to consider" it. *See Leyse*, 804 F.3d at 321; *accord Northstar Fin. Advisors Inc. v. Schwab Invs.*, 135 F. Supp. 3d 1059, 1068-69 (N.D. Cal. 2015) ("Defendants seek to assert 'a defense . . . that was available . . . but omitted from [an] earlier motion' to dismiss . . . . Defendants are foreclosed from doing so because of Rule 12(g)(2) and Rule 12(h)(2)" (quoting Fed. R. Civ. P. 12(g)(2))), *reversed in part on other grounds*, 904 F.3d 821 (9th Cir. 2018).

That Elsevier is responding to an amended complaint makes no difference. "[S]uccessive motions to dismiss should either re-raise arguments (because [an] amendment did not cure a purported defect) or focus on newly added aspects of an amended complaint (because those could not have been objected to earlier)." *Novak v. Torcon, Inc.*, 2025 WL 2111068, at *2 (E.D. Pa. July 28, 2025). That means "Rule 12(g)(2) permits a defendant to raise new arguments only if those arguments are in response to the new factual allegations in [an] amended complaint." *Id.*, at *3.

Here, Elsevier's Rule 12(b)(6) argument that Plaintiffs consented is based on allegations that were in the original Complaint. The defense was thus available to Elsevier when it filed its first Rule 12 motion. For example, Elsevier cites the FAC's allegations that "to 'access Osmosis' library—even on a free trial basis—an individual must register with Osmosis," and that "both named plaintiffs registered for an Osmosis account." Mot. at 9 (citing FAC ¶¶ 12, 38-39). Identical allegations appear in the Complaint. *See* Dkt. No. 1, Compl. ¶¶ 13, 24-25. Elsevier also claims the FAC "concedes" Plaintiffs' consent through their allegation that "Elsevier discloses (though not in compliance with the VPPA) that it collects [certain data] and 'share[s] your personal information with,' among others 'service providers, including . . . IT service providers,'" thereby "doom[ing] Plaintiffs' VPPA claim[.]" *See* Mot. at 1 (quoting FAC ¶¶ 19, 35). Again, the exact allegation appeared in the Complaint. Compl. ¶ 21.

Although Elsevier could have raised its consent defense earlier, it strategically chose to focus the Court's attention initially on just two arguments: that it does not disclose "personally identifiable information" as defined under the VPPA, and that it is not a video tape service provider. *See* MTD at 8-15. Elsevier does not even acknowledge its violation of Rule 12(g)(2), nor argue why its consent defense should be entertained now, when the parties are well into discovery. Given Elsevier's strategic election to forego its consent defense earlier, "it is 'improper' for [the] district [C]ourt to consider [Elsevier's] motion" in this regard now. *See Novak*, 2025 WL 2111068, at *2 (quoting *Leyse*, 804 F.3d at 321). Since Elsevier's argument "was omitted from the first motion," and "not based on any new allegations in the amended complaint. . . . this portion of the motion is barred by Rule 12(g)(2)." *Id.*, at *3.

**B. Elsevier's Consent Defense Improperly Invokes Facts Extraneous to the FAC and Not Subject to Judicial Notice for Their Truth**

Elsevier's consent defense is also improper because it relies upon the testimony of its counsel and other facts extraneous to the FAC. *See* Mot. at 4-5.

Elsevier asserts that "[w]hen individuals register for an Osmosis account, they agree to Elsevier's Terms and Conditions as well as its Privacy Policy." *Id.* at 4 (citation omitted). But rather than rely on allegations in the FAC for this purported fact, Elsevier leans on the testimony of its counsel, who avers that the screenshot on page 4 of the motion, replicated in Exhibit C to his declaration "is . . . Elsevier's webpage for Osmosis from 2022"; and that the screenshot on page 5 of the motion, replicated in Exhibit D to his declaration, "is . . . Elsevier's Registration webpage for Osmosis from 2023." Dkt. No. 40-2, Declaration of Mark McPherson ("McPherson Decl.") ¶¶ 5-6. Based only on the screenshots—which appear cut off in the brief and exhibits—Elsevier makes assertions about the webpage's functionality. Mot. at 4 ("The registration page prominently includes links to Elsevier's Terms and Conditions and Privacy Policy . . . ."); *id.* at 10 ("Plaintiffs" "must have" "clicked 'Let's go!'" "to access Osmosis's video content"). Functionality cannot be discerned from cut-off screen shots, and Elsevier's counsel admits the "[w]ebpages" attached to his declaration "d[id] not print to hard copy the exact same way that they appear on screen," but invites the Court to "visit the webpages" and evaluate "the appearance of, and content included on, each webpage" to resolve this pleading motion. *See* McPherson Decl. ¶ 3 n.1. The Court should not indulge Elsevier's invitation to conduct factual research extraneous to the FAC.

Elsevier also offers screenshots of cut-off webpages it says depict a cookie banner on Osmosis, but one is of a website Plaintiffs have never alleged they visited (www.elsevier.com). *See* Mot. at 12 (citing McPherson Decl. Ex. G). And another demonstrates there was no banner, just a footer at the bottom of a page requiring a great deal of scrolling to get there. *See id.* at 13 (citing McPherson Decl. Ex. H).

"Generally, district courts may not consider materials outside the pleadings when assessing the sufficiency of a complaint under FRCP 12(b)(6)." *Smith v. Flagstar Bank, FSB*, 2019 WL 631537, at *2 (N.D. Cal. Feb. 14, 2019) (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)). Elsevier nevertheless argues "the Court should consider" these incomplete screenshots "when ruling on Defendant's Motion to Dismiss Plaintiffs' Amended Complaint" because they are either subject to judicial notice under Federal Rule of Evidence 201, or properly considered under the "incorporation by reference" doctrine. *See* Dkt. No. 40-1, Request for Judicial Not. ("RJN") at 1; *see also id.* at 2-3. That is wrong.

Federal Rule of Evidence 201 allows a court to take judicial notice of "a *fact* that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201 (emphasis added). "Once a *fact* is judicially noticed, the court 'must instruct the jury to accept the noticed fact as conclusive.'" *Plotsker v. Envato Pty Ltd.*, 2025 WL 2481422, at *2 (C.D. Cal. Aug. 26, 2025) (emphasis added) (quoting Fed. R. Evid. 201(f)). Thus, taking judicial notice of facts is weighty. Elsevier's RJN muddies the issue because it seeks judicial notice of nine *documents*, rather than any *facts*. Accordingly, it is incumbent upon Plaintiffs and the Court to determine what *facts* Elsevier is relying on, extracted from the documents over which it seeks judicial notice, and to ask whether those *facts* are subject to judicial notice.

On a Rule 12 motion, the Court may also consider material not attached, but incorporated into a complaint. But "[a]lthough a court 'may assume an incorporated document's contents are true for purposes of a motion to dismiss . . . it is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint." *Id.*, at *3 (quoting *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1003 (9th Cir. 2018)).

"For a document to be incorporated into the complaint by reference, 'the complaint must make a clear, definite and substantial reference to the document.'" *Lee v. Springer Nature Am., Inc.*, 769 F. Supp.

3d 234, 246 (S.D.N.Y. Mar. 4, 2025) (quoting *Lateral Recovery, LLC v. Cap. Merch. Servs., LLC*, 632 F. Supp. 3d 402, 436 (S.D.N.Y. 2022)). "Merely mentioning a document in the complaint will not satisfy this standard; indeed, even offering 'limited quotation[s]' from the document is not enough." *Id.* at 247 (quoting *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016)). Instead, "[t]he contents of the document must 'appear to have been necessary to the short and plain statement of the claim showing that a plaintiff is entitled to relief.'" *Id.* (internal quotation marks and alteration omitted) (quoting *Lateral Recovery*, 632 F. Supp. 3d at 436); *see also Plotsker*, 2025 WL 2481422, at *3 (Under the incorporation by reference doctrine, "a defendant may seek to incorporate a document into the complaint if the plaintiff refers extensively to the document or the document forms the basis for the plaintiff's claim." (quoting *Khoja*, 899 F.3d at 1002)).

Elsevier claims the FAC "directly references, and relies upon" "copies of the registration webpage on Osmosis's website from 2022 and 2023," RJN at 2, but while Elsevier cites paragraphs 12-13, 36,[1] 38, and 42, *id.* at 2-3, at most, these paragraphs generally mention the need to register for Osmosis with a name and email address. The FAC does not quote, discuss, or provide a link to the Osmosis registration page. Nor does it incorporate Elsevier's Privacy Policy, and changes thereto over time. *See* RJN at 2-3; McPherson Decl. Exs. A-B. At most, paragraphs 19 and 35 quote less than 40 words of the 15-page policy, and paragraph 40 references it only peripherally. "These documents do not form the basis of Plaintiff[s'] complaint. Instead, they are only relevant to Defendant's consent defense." *See Balestrieri v. Sportsedtv, Inc.*, No. 25-cv-04046-SK, Dkt. No. 27, Order Denying Mot. To Dismiss & Mot. to Transfer, at 4 (N.D. Cal. Sept. 16, 2025) ["*Balestrieri* Order"][2] (Rejecting argument that "screenshots of Defendant's webpages" were subject to judicial notice under incorporation by reference doctrine where "Plaintiff does not refer to any of Defendant's webpages in his Complaint, does not mention Defendant's Terms and Conditions, and only mentions Defendant's Privacy Policy once," and explaining that "[t]he 'mere mention' of a document's existence, or the relevance of a document to a defense, are insufficient reasons to incorporate its contents by reference." (quoting *Khoja*, 899 F.3d at 1002)).

Elsevier argues its Cookie Notice and Website Cookie Banner, and changes thereto over time, are incorporated into the FAC—not by any allegation Plaintiffs make—but by virtue of being incorporated into

---

[1] Elsevier presumably meant to cite to paragraph 39.

[2] For the Court's convenience, a copy of the court's slip opinion in *Balestrieri* is submitted herewith.

the Privacy Policy supposedly incorporated into the FAC. *See* RJN at 4; McPherson Decl. Exs. E-I. While the Privacy Policies briefly mention "the cookie *notice* of the Service," Elsevier's claim that the "cookie *banner* [is] incorporated by reference into Elsevier's Privacy Policy," RJN at 4 (emphases added), is wrong. And Elsevier provides no authority that its *Inception*-like incorporation-by-incorporation-by-reference theory permits judicial notice. Query: Are facts in documents referenced in the Cookie Notice now subject to judicial notice under an incorporation-by-incorporation-by-incorporation-by-reference theory? A passing reference to another document in a document subject to judicial notice is simply too remote to support judicial notice of the other document, too.

Elsevier's reliance on *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992 (9th Cir. 2010), is misplaced. There, the Ninth Circuit took judicial notice of two documents: (i) "the prospectus for [an] . . . Annuity[]," which "[p]laintiffs quoted . . . in their Complaint," while also "provid[ing] the web address where the prospectus could be found online"; and (ii) "information posted on certain . . . web pages that Plaintiffs referenced in the Complaint and included in the record on appeal," which they "directly quoted . . . ." *Id.* at 998. Pursuant to Fed. R. Evid. 201, the Ninth Circuit also "t[ook] into consideration [a] list of approved 403(b) vendors displayed publicly on the respective websites of the . . . School Districts," since the information "was made publicly available by government entities . . . and neither party dispute[d] the authenticity of the web sites or the accuracy of the information displayed therein." *Id.* at 998-99 (citations omitted). Thus, the facts in *Daniels* bear no relation to those here.

Elsevier argues that even if the Privacy Policies and Cookie Notices are not incorporated into the Complaint, the Court should still take judicial notice of them under Federal Rule of Evidence 201, including changes thereto, "because they are publicly available documents, the contents of which Plaintiffs cannot dispute." RJN at 3. Elsevier further argues the Cookie Notice and Website Cookie Banner "may be considered as part of the context necessary to understand the Privacy Policy, disclosures made to Plaintiffs therein, and how users could configure their cookie settings." *Id.* at 4.

"Defendants may rely on judicially noticed documents to show that something was stated or that someone was put on notice, but 'cannot rely on them to prove the truth of their contents.'" *Lee*, 769 F. Supp. 3d at 247 (internal quotation marks omitted) (quoting *Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 462 (S.D.N.Y. 2020)). "Although the fact that a website contains certain text 'cannot reasonably be

questioned,' Fed. R. Evid. 201, assertions made on a website do not enjoy the same privilege and frequently may be disputed." *Id.* at 248 (citing *Victualic Co. v. Tieman*, 499 F.3d 227, 236 (3d Cir. 2007), *as amended* (Nov. 20, 2007) ("[P]rivate corporate websites, particularly when describing their own business, generally are not the sorts of 'sources whose accuracy cannot reasonably be questioned'" (quoting Fed. R. Evid. 201))); *see also Plotsker*, 2025 WL 2481422, at *3 ("Publicly available documents, including websites, are judicially noticeable 'for the fact that they exist' and not for the truth of the matter asserted therein." (quoting *Datel Holdings Ltd. v. Microsoft Corp.*, 712 F. Supp. 2d 974, 984 (N.D. Cal. 2010))).

Because "[f]acts stated on a website are not inherently more accurate than facts stated elsewhere[,] [a] defendant may not short-circuit the summary judgment process by introducing disputable facts on a Rule 12(b)(6) motion, simply because they are stated on a website." *Lee*, 769 F. Supp. 3d at 248 (citing *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998)); *see also Balestrieri* Order at 3 ("[I]t is not appropriate to take judicial notice of the contents of [a] website for their truth when those contents are in dispute." (citing *Khoja*, 899 F.3d at 999)); *cf. Cappello v. Walmart Inc.*, 2019 WL 11687705, at *3 (N.D. Cal. Apr. 5, 2019) (Declining to take judicial notice of Terms of Service and purchase confirmation page and noting that "[t]he simple act of posting something publicly on the Internet is insufficient assurance of an exhibit's accuracy.").

Here, Elsevier is not asking the Court to take judicial notice that certain text appears, but asking the Court to accept the truth of matters asserted therein. For example, Elsevier relies on the text of the Cookie Notice—that "You can manage the use of certain types of cookies"—to support its assertion that Elsevier *in fact* "provides the requisite 'opportunity . . . for the [subscriber] to withdraw on a case-by-case basis or withdraw from ongoing disclosures.'" Mot. at 15 (quoting 18 U.S.C. § 2710(b)(2)(B)(iii)). Likewise, based on the text of the Privacy Policies and Cookie Notices, Elsevier improperly asks the Court to accept as truth—in contradiction of the FAC—that Elsevier "give[s] Plaintiffs every chance to opt out," *id.*; *see also* FAC ¶¶ 21, 36, 41. "Defendant cannot use requests for judicial notice to present its 'own version of the facts at the pleadings stage.'" *Balestrieri* Order at 3-4 (quoting *Khoja*, 899 F.3d at 998-99) (warning against the overuse of extrinsic documents as the pleading stage).

In *Plotsker*, a district court took judicial notice of "screenshots of various webpages of Defendants' public-facing website," but was "clear" the court was "tak[ing] notice of these Exhibits for *the fact that they*

*existed on their respective dates of capture*," and was "not mak[ing] any findings, for instance, as to whether Plaintiffs accepted, or whether Defendants failed to adequately inform their customers of, the terms and policies of using Defendants' website," since "[t]hat is a fact subject to reasonable dispute, which should be determined by a jury." 2025 WL 2481422, at *3-4 (citing *Datel Holdings Ltd.*, 712 F. Supp. 2d at 984).

Similarly, in *Garcia v. Bandai Namco Entm't Am. Inc.*, the court "decline[d]" on a Rule 12 motion to use "exhibits depict[ing] screenshots from Defendant's websites and Privacy Policy" to "resolve factual disputes about how Plaintiff interacted with the website or whether valid consent was obtained." 2025 WL 2451033, at *3 (C.D. Cal. Aug. 7, 2025) (quotation marks and record citation omitted). The court explained that, based on the limited information the defendant provided, it "cannot verify that the Exhibits match what Plaintiff viewed when he allegedly browsed Defendant's websites . . . ." *Id.* As in *Garcia*, based on the allegations in the FAC, "[i]t is unclear exactly which webpages Plaintiff[s] encountered when [they] visited [Defendant's] website[] . . . or Plaintiff[s'] interactions with those webpages." *Id.*, at *9 (record citation omitted).

### C. The Osmosis Registration Page that Elsevier Depicts Establishes a *Lack of Consent* by Plaintiffs—and the Class

For a video tape service provider to enjoy the VPPA's consent safe harbor, it must demonstrate that the consumer's "informed, written consent" was given "in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer[.]" 18 U.S.C. § 2710(b)(2)(B)(i).

Elsevier "obtains [] 'informed, written consent . . .' through its account registration process[.]" Mot. at 8-9. "The registration page prominently includes links to Elsevier's Terms and Conditions and Privacy Policy, and provides that 'By continuing you agree with our Terms and conditions and Privacy policy[.]" *Id.* at 4 (misquoting McPherson Decl. Ex. C).[3] Therefore, "[o]nce Plaintiffs clicked 'Let's go!'—as they must have to access Osmosis's video content—they unambiguously manifested their intent [sic] to Elsevier's Terms of Use [sic] ***and*** the Privacy Policy." *Id.* at 10-11 (emphasis added).

Therein lies the problem for Elsevier. It claims its "Privacy Policy and Cookie Notices . . . disclose its information sharing practices . . . ." Mot. at 2. But a consumer's consent to the sharing of their "personally

[3] The page in fact says, "By signing up, you are agreeing to **Osmosis terms** and **privacy policy**." *See* McPherson Decl. Exs. C & D.

identifiable information" under 18 U.S.C. § 2710(a)(3) must be "in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer," *id.* § 2710(b)(2)(B)(i); and according to Elsevier, when consumers sign up, they *must* consent to *both* the Privacy Policy *and* "other . . . obligations" in the Terms simultaneously. That violates the single-form consent rule of § 2710(b)(2)(B)(i).

By Elsevier's own admission, then, neither Plaintiffs nor any other Class Member ever gave "informed, written consent" to just the Privacy Policy. *See* Mot. at 9 (noting the registration "page provides: 'By signing up, you are agreeing to our Osmosis terms and privacy policy,'" and noting the "hyperlinks . . . direct users to two separate and distinct webpages—one outlining the Terms of Service and the other detailing the Privacy Policy"). Elsevier's assertion that "the Privacy Policy is distinct from the Terms of Use," *id.*, may be true, but it is inconsequential. The VPPA requires that the *consumer's informed, written consent* be separate—not the video tape service provider's disclosure. Here, it was impossible for Plaintiffs or any other Class Member to consent to Elsevier's Terms of Service, while rejecting the Privacy Policy, or vice versa. This means consent is a dead issue.

In *Cappello*, the court rejected Walmart's consent defense, stating, "at no point does Walmart contend that it provided consumers with a consent form dedicated *solely* to informing consumers of Walmart's intent to share their personally identifiable information with Facebook." 2019 WL 11687705, at *2. The court explained that:

> the plain language of the VPPA . . . require[s] video tape service providers to (1) request consumers' consent to a privacy disclosure that addresses only the use of personally identifiable information connected with video purchases and no other privacy topic, and (2) obtain the act of consent separately from the consumer's agreement to the retailer's terms of use, general privacy policy, and the commercial terms of the purchase.

*Id.*; *see also id.*, at *2 n.2 ("If the statute requires a separate consent form, the act of consent by the consumer is necessarily separate from other acts of consent."). Elsevier's extraneous evidence, if accepted, demonstrates none of that has happened on Osmosis.

Elsevier's reliance on *Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047 (N.D. Cal. 2025), is misplaced. That case involved allegations a video game manufacturer violated various privacy laws, among them the VPPA, by using cookies on its website. *Id.* at 1051-52. The defendant asserted "that all of Plaintiffs' claims fail because" they "repeatedly consented to . . . the use of cookies and pixels on the Website." *Id.* at 1054. Unlike here, however, the "[d]efendant argue[d] that Plaintiffs consented to the use of cookies and pixels

that could share their activity on the Website *at least three times* during the process purchase." *Id.* (emphasis added). This is because they "were presented with a Cookie Banner when they first arrived at the Website"; "had to create an account prior to making any purchase," and "[d]uring account creation . . . had to check the box next to 'I accept Ubisoft's Terms of Use, Terms of Sale, and Privacy Policy'"; and "were again presented with the Privacy Policy during the Ubisoft Website store checkout process" "every time Plaintiffs made a purchase[.]" *Id.* (record citations omitted). In finding that the plaintiffs consented pursuant to the VPPA, the *Lakes* court focused on the Cookie Banner and in-store consents that occurred upon every purchase, but provided no analytical reasoning for why the account creation, in which a user had to consent to three different policies simultaneously, supported the consent defense. *See id.* at 1058-59.

### D. The Extraneous Materials Elsevier Invokes Do Not Resolve the Fact-Intensive Inquiry of Whether it Obtained VPPA-Compliant Consent from Plaintiffs

Though raised in a Rule 12 motion, whether Plaintiffs have "consented to the disclosure of [their] personally identifiable information in a way that meets § 2710(b)(2)(B)" is actually "an affirmative defense that [Elsevier] bears the burden to plead and prove." *See Feldman v. Star Trib. Media Co. LLC*, 659 F. Supp. 3d 1006, 1023 (D. Minn. 2023) (citations omitted). That is clear from the structure of the VPPA itself, under which a plaintiff need not "allege his consent's absence" to state a claim. *See id.*; *see also* 18 U.S.C. § 2710(b)(1) ("A video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider shall be liable to the aggrieved person . . . ."). Instead, a consent defense admits the video tape service provider "knowingly disclose[d] . . . personally identifiable information," and avoids liability by demonstrating it obtained the consumer's "informed, written consent" in compliance with the statute. *See* 18 U.S.C. § 2710(b)(2)(B).

"For an affirmative defense to justify a Rule 12(b)(6) dismissal of a complaint, 'the applicability of the defense has to be clearly indicated and must appear on the face of the pleading to be used as the basis for the motion.'" *Feldman*, 659 F. Supp. 3d at 1023 (quoting Wright & Miller, 5B Fed. Prac. & Proc. Civ. § 1357 (3d ed. & Apr. 2022 Update)). That is a far cry from the situation here.

Whether, pursuant to 18 U.S.C. § 2710(b)(2)(B), a consumer has consented to a video tape service provider "disclos[ing] personally identifiable information concerning [the] consumer" to "any person," *id.*, depends upon three factors: *first*, whether the consent was "informed," and then "in a form distinct and

separate from any form setting forth other legal or financial obligations of the consumer," *id.* § 2710(b)(2)(B)(i); *second*, whether "at the election of the consumer," the "informed, written consent" to sharing information "is given" either "at the time the disclosure is sought; or . . . in advance for a set period of time, not to exceed 2 years or until consent is withdrawn by the consumer, whichever is sooner," *id.* § 2710(b)(2)(B)(ii); and *third*, whether "the video tape service provider has provided an opportunity, in a clear and conspicuous manner, for the consumer to withdraw [the consent] on a case-by-case basis or to withdraw from ongoing disclosures, at the consumer's election," *id.* § 2710(b)(2)(B)(iii).

Here, "[a]ssuming the Privacy Policy may be considered appropriately at this stage, it does not show that the VPPA's consent safe harbor bars [Plaintiffs'] claim." *See Feldman*, 659 F. Supp. 3d at 1023. For example, "it is not obvious that the [Elsevier] Privacy Policy addresses a consumer's consent to disclosure of his or her video-viewing history," *see id.* Neither the language Elsevier points to from the Cookie Notice, Mot. at 6 (quoting McPherson Decl. Exs. E & F), nor the Privacy Policy, discloses that Elsevier collects or shares "information which identifies a person as having requested or obtained specific video materials or services," *see* 18 U.S.C. § 2710(a)(3); *cf. Cappello*, 2019 WL 11687705, at *2 (VPPA requires "a privacy disclosure that addresses only the use of personally identifiable information connected with video purchases and no other privacy topic").

The Privacy Policy also "appears to cover many legal obligations beyond consent to disclose personally identifiable information under the VPPA." *See Feldman*, 659 F. Supp. 3d at 1023. For example, the Privacy Policy addresses Osmosis subscribers' obligation to "customize and manage [their] communications preferences," explaining how registered users may "us[e] the 'opt in/out' or subscribe/unsubscribe mechanisms or other means provided," to do so. *See* McPherson Decl. Exs. A & B. The Privacy Policy also provides that it is "solely the responsibility of the user" to "[k]eep[]" their account "information up to date . . . ." *Id.* And it says a user has "the right under certain privacy and data protection laws . . . to request . . . [a]ccess to and correction and deletion of your personal information; [r]estriction of our processing of your personal information, or to object to our processing; and/or [p]ortability of your personal information." *Id.* To "exercise any of these rights," users must "contact [Elsevier] through the Elsevier Privacy Support Hub," where they "may [be] require[d] to verify [their] identity," so that Elsevier "will respond . . . consistent with applicable laws." *Id.* "California resident[s]," like Ms. Nguyen, "have

additional rights described" in a separately-linked "California privacy notice." *See id.*, Ex. B. So, "to the extent the Privacy Policy operates as a standalone consent form," Elsevier "cannot seriously contend that it does not impose obligations on the consumer, as it obligates the consumer to authorize each of the practices set forth therein as purchase terms." *See Cappello*, 2019 WL 11687705, at *3 n.3.

It is also not obvious the Privacy Policy or Cookie Notice allows the consumer to "elect[]" to give consent to the disclosure of their video-viewing behavior" either "at the time the disclosure [to a third party] is sought" or "in advance for a set period of time, not to exceed 2 years or until consent is withdrawn," *see id.* § 2710(b)(2)(B)(ii). And it is not obvious Elsevier has "provided an opportunity, in a clear and conspicuous manner, for the consumer to withdraw on a case-by-case basis or to withdraw from ongoing disclosures, at the consumer's election," either. *See id.* § 2710(b)(2)(B)(iii). The three sentences Elsevier quotes from the Cookie Notice, Mot. at 15, just speak generally to the consumer's ability to manage cookies, without giving any detail about the functionality, or whether Osmosis's cookie management tools *in fact* satisfy the complex strictures of § 2710(b)(2)(B).

Given the lack of clarity and complexity of these fact-intensive issues, "[t]he Court cannot at this stage determine whether Plaintiff[s] consented to Defendant's disclosures consistent with VPPA requirements." *See Garcia*, 2025 WL 2451033, at *9. It is "[b]etter to leave the consent/safe-harbor question to be addressed, if at all, on a sufficiently developed factual record and more thorough legal arguments." *See Feldman*, 659 F. Supp. 3d at 1023; *see also Ade v. Viki, Inc.*, 2024 WL 1880153, at *4 (N.D. Cal. 2024) ("The VPPA's consent requirements present factual issues regarding how the alleged consent form was presented to the consumer," so that "the issue of consent is not suitable for decision on a motion to dismiss"); *Fan v. NBA Properties Inc.*, 2024 WL 1297643, at *3 (N.D. Cal. Mar. 26, 2024) (finding it "premature to decide the question of consent" on a motion to dismiss VPPA claim).

## II. PLAINTIFFS PLAUSIBLY ALLEGE ELSEVIER'S DISCLOSURE OF THEIR PERSONALLY IDENTIFIABLE INFORMATION

### A. Plaintiffs Plausibly Allege Transmission of Personally Identifiable Information to Meta

Elsevier argues Plaintiffs do not allege the disclosure of personally identifiable information ("PII") to Meta because Ms. Nguyen "does not allege that Elsevier disclosed her unencrypted Facebook ID or transmitted any data that was then linked to her Facebook profile," or "that Meta received any information

that it then linked to her specific Facebook ID." Mot. at 16 (record citations omitted). While Elsevier acknowledges Ms. Nguyen "alleges that she was logged into her Meta account 'on the same browser' during 'at least some' of the times she accessed Osmosis," it argues this "is not enough" because it "fails to establish that any transmission of data occurred under any circumstances that would link Plaintiff Nguyen's Meta account to specific Osmosis video viewing activity." *Id.* (record citation omitted). Finally, Elsevier argues that "[e]ven if Plaintiff could allege that her unencrypted Facebook ID were linked to her Osmosis viewing habits, that too would be insufficient" without "also alleging [her] 'Facebook pages contain any personal information.'" *Id.* at 17 (quoting *Ghanaat v. Numerade Labs, Inc.*, 689 F. Supp. 3d 714, 720 (N.D. Cal. 2023)).

Under the VPPA, "the term 'personally identifiable information' includes information which identifies a person as having requested or obtained specific video materials or services . . . ." 18 U.S.C. § 2710(a)(3). Ms. Nguyen alleges that "[t]hrough the use of the Meta Pixel . . . when free or premium subscribers watch video content on Osmosis, Elsevier knowingly discloses to Meta, in a single transmission, *inter alia*, (a) the title of the video, (b) users' identifying information, (c) the times when a user started and stopped the video, and (d) the video URL." FAC ¶ 33. Consistent with this, she alleges "each time [she] viewed a video, Elsevier disclosed to Meta . . . at least her full name, email address, and the title of the video she viewed." *Id.* ¶ 38. "Elsevier knew that by installing the Meta Pixel on Osmosis, it would send to Meta Osmosis subscribers' personally identifiable information, including their video-watching habits." *Id.* ¶ 34.

These allegations are supported with additional allegations that Meta's Pixel "tracks a user's activity in real-time as the user navigates through a website," and "re-directs the contents of the user's communications to Meta" "[a]s soon as a user takes any action," *id.* ¶ 24, including, for example, logging into their account with their email, name, and password. *See*, *e.g.*, McPherson Decl. Exs. C-D. "[T]he Pixel tracks each user's activity on [Osmosis] and sends that data to Meta, *linking this information with users' personal identities*." FAC ¶ 26 (emphasis added). Moreover, the data Meta collects "is highly granular . . . often being associated with an individual user's Facebook or Instagram account." *Id.* ¶ 28. "[I]f a user is logged into their Facebook or Instagram account . . . Meta receives third-party cookies allowing Meta to link the data . . . to the specific Facebook or Instagram user." *Id.* Ms. Nguyen sometimes "was logged into her Meta account on the same browser she used to access Osmosis." *Id.* ¶ 38. Finally, using a feature called

"Automatic Advanced Matching, the Pixel scours the data it receives for recognizable fields, including name and email address, to match users to their Facebook or Instagram accounts." *Id.* ¶ 29.

The Court previously found similar allegations stated a claim for the transfer of PII to Intercom. *See Nguyen*, 2025 WL 1635679, at *4 (citing Compl. ¶ 24 (Plaintiffs alleging "each time [they] viewed a video, Elsevier disclosed to Intercom in the same transmission [their] personally identifiable information, including at least [their] full name, email address, and the title of the video [they] viewed'")). Moreover, "[t]he Ninth Circuit acknowledges that an 'email address may very well readily enable an "ordinary person" to identify an individual,' and recognizes an individual's name as PII under the VPPA." *Id.*, at *3 (quoting *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 986 (9th Cir. 2017)).

Elsevier's Motion relies on inapposite cases in which the *only* data transmitted to Meta, aside from a video's URL, was a user's alphanumeric Facebook ID ("FID"). Contrary to Elsevier's framing, the decision in *Ghanaat* does not set forth a pleading standard. *See* Mot. at 17 (Claiming "[a] 'complaint does not adequately allege that [disclosing a Facebook account] results in sharing of any personal information' without also alleging that Plaintiffs' 'Facebook pages contain any personal information.'" (quoting *Ghanaat*, 689 F. Supp. 3d at 720)). Instead, the *Ghanaat* court explained that "a FID can constitute PII where it leads to a Facebook page that discloses personal and identifying information about the consumer," but found "plaintiffs' allegations . . . inadequate because they do not allege their Facebook pages contain any personal information, such as their names and email addresses." *Id.*; *cf. Balestrieri* Order at 15-16 (The Second Circuit's decision in "*Solomon* is contrary to the weight of authority in this Circuit. 'Most, if not all, courts to address the question have found at the pleading stage that Facebook IDs are PII.'" (quoting *Ghanaat*, 689 F. Supp. 3d at 720))

Here, unlike in *Ghanaat* and similar cases on which Elsevier relies, Ms. Nguyen alleges her full name, email address, and video-viewing information are sent to Meta independently of her Meta identifiers. *Compare* FAC ¶ 38 *with Smith v. Trinity Broad. of Texas, Inc.*, 2024 WL 4394557, at *1-2 (C.D. Cal. Sept. 27, 2024) ("[Plaintiff]'s claim essentially hinges on the argument that a user's FID is also a PII" when "[t]he disclosed information includes" only "(1) the title of the video viewed; (2) its URL, and (3) the user's Facebook ID ('FID'), a string of numbers associated with a user's Facebook profile"); *Heerde v. Learfield Commc'ns, LLC*, 741 F. Supp. 3d 849, 857 (C.D. Cal. 2024) (dismissing VPPA claim where Plaintiffs

alleged only that the Pixel "disclosed . . . their [FIDs] and video-watching data"); *Solomon v. Flipps Media, Inc.*, 2023 WL 6390055, at *1, *3 (E.D.N.Y. Sept. 30, 2023) (Explaining "[p]laintiff alleges the Pixel Defendant installed sends to Facebook: (1) a subscriber's unique Facebook ID ('FID'); and (2) the titles and URLs for specific videos that the subscriber accessed on Defendant's website[,]" and finding "plaintiffs' allegations are inadequate because they do not allege their Facebook pages contain any personal information, *such as their names or email addresses*." (emphasis added) (citation omitted)).

In contrast to these cases, courts advance VPPA claims backed by allegations similar to Plaintiffs' here. *See Feldman*, 659 F. Supp. 3d at 1021 (denying motion to dismiss where complaint alleged plaintiff's "Facebook profile and his email address contain his name, making it feasible to identify [Plaintiff] by reference to this information." (record citations and quotations omitted)). Other courts have rejected the notion that Plaintiffs must plead with granularity the content of their Facebook pages.

In *Manza v. Pesi, Inc.*, for example, one court reasoned that a Facebook ID can be PII under the VPPA because, "otherwise, little if any information would be covered by the statute." 784 F. Supp. 3d 1110, 1118 (W.D. Wis. 2025) (citation omitted). "Even a name may be ambiguous because most names are not unique, so it follows that information may qualify as PII even if it must be combined with other information to identify the individual." *Id.* (denying motion to dismiss on issue of PII); *see also Lee v. Plex, Inc.*, 773 F. Supp. 3d 755, 773 (N.D. Cal. 2025) (rejecting Defendant's argument that "Plaintiff must also allege his Facebook profile is public and that it contains [PII]," and noting "most courts have not required plaintiffs asserting VPPA claims to plead such granular details."); *Sellers v. Bleacher Report, Inc.*, 2023 WL 4850180, at *4 (N.D. Cal. July 28, 2023) ("The [Facebook ID] is a unique identifier that is enough, on its own, to identify a person." (citation omitted)).

"Ultimately, the Court does not resolve disputes of fact in a motion to dismiss," and should decline to do so here, where "Plaintiffs have plausibly alleged Osmosis's disclosure of information to [Meta] contains the identity of specific consumers and demonstrates these specific individuals requested or obtained videos from the website." *See Nguyen*, 2025 WL 1635679, at *4 (citation omitted).

**B. The Court Should Not Disturb Its Holding that Plaintiffs Plausibly Allege Transmission of Personally Identifiable Information to Intercom**

Elsevier argues that by removing from the FAC a "screenshot" in the Complaint "showing the transmission of [certain] information . . . from Osmosis to Intercom," *see* Compl. ¶ 19, Plaintiffs have "stripped their pleading of the only factual matter that previously made their claim plausible[.]" Mot. at 18. As the Court's previous order made clear, however, that screenshot was "illustrative of the alleged VPPA violation" set out in the previous paragraph. *Nguyen*, 2025 WL 1635679, at *4.

The relevant and actionable *facts* Plaintiffs pleaded were that "[t]hrough the use of Intercom's cookies and scripts installed on the Osmosis website, when free or premium subscribers watch video content on Osmosis, Elsevier discloses to Intercom, in a single transmission, *inter alia*, (a) the title of the video, (b) the subscriber's full name, and (c) the subscriber's email address," Compl. ¶ 18, and that "'each time they viewed a video, Elsevier disclosed to Intercom . . . their personally identifiable information, including at least their full name, email address, and the title of the video [they] viewed,'" *Nguyen*, 2025 WL 1635679, at *4 (cleaned up) (quoting Compl. ¶ 24). Identical allegations appear in the operative pleading. FAC ¶¶ 17, 38-39, 55. As Elsevier points out, its admissions further bolster these allegations. *See* Mot. at 1 (citing FAC ¶¶ 19, 35 (alleging Elsevier admits it discloses PII to, for example, "IT service providers")).

Thus, contrary to Elsevier's assertion, the screenshot was not "the only factual matter that previously made [Plaintiffs'] claim plausible," *id.* at 18. And, contrary to Elsevier's assertion, Plaintiffs allege more than just "the vague and conclusory allegation that Elsevier sends information concerning users' 'video-watching habits,'" including alleging that "*they* 'requested or obtained'" videos. *Id. See Haines v. Cengage Learning, Inc.*, 2025 WL 2336089, at *8 (S.D. Oh. May 5, 2025) (rejecting similar argument); *Collins v. Pearson Educ., Inc.*, 721 F. Supp. 3d 274, 289 (S.D.N.Y. 2024) (same).

Elsevier characterizes the Court's previous order as holding that "because 'Plaintiffs present[ed] a screenshot . . .' it was 'illustrative of the alleged VPPA violation each Plaintiff allegedly experienced because of their usage of Osmosis.'" Mot. at 17 (quoting *Nguyen*, 2025 WL 1635679, at *4). That grammatical non-sequitur illustrates the gymnastics of Elsevier's implicit but incorrect claim that the Court's previous Order wholly *depended* on the screenshot. *See id.* at 1 (The "Amended Complaint . . .

omits any reference to the screen shot" so that "Plaintiffs now offer only the most conclusory allegation that Elsevier's Osmosis website shared information with Intercom . . . .").[4]

Elsevier's reliance on the decisions in *Mitchener v. Talkspace Network LLC*, 2025 WL 1822801 (C.D. Cal. June 27, 2025), and *A.S. v. SelectQuote Ins. Servs.*, 2024 WL 3881850 (S.D. Cal. Aug. 19, 2024), is misplaced. *See* Mot. at 18. Those cases involved claims and standards under California's Invasion of Privacy Act, which has no definition for PII, unlike the VPPA, a strict liability statute that defines it broadly. Contrary to Elsevier's suggestion, Plaintiffs here need not show "what personal information was captured" in a manner akin to CIPA, and have plausibly alleged their PII, *in context of the VPPA*, was disclosed. *See Nguyen*, 2025 WL 1635679, at *4 ("The Court finds . . . whether a consumer's identity was disclosed by Elsevier[ ]to be plausibly alleged by Plaintiffs."); FAC ¶¶ 38-39.

**<u>CONCLUSION</u>**

The Court should deny Elsevier's motion, but if the Court is inclined to grant the motion in any respect, Plaintiffs request dismissal be without prejudice and with leave to amend.

Dated: September 23, 2025

Respectfully Submitted,

<u>/s/ Jack Fitzgerald</u>

**FITZGERALD MONROE FLYNN PC**
JACK FITZGERALD
*jfitzgerald@fmfpc.com*
MELANIE R. MONROE
*mmonroe@fmfpc.com*
TREVOR FLYNN
*tflynn@fmfpc.com*
ALLISON FERRARO
*aferraro@fmfpc.com*
2341 Jefferson Street, Suite 200
San Diego, California 92110
Phone: (619) 215-1471

***Counsel for Plaintiffs***

[4] If that were the case, Plaintiffs could, of course, easily amend the FAC to reinsert the screenshot.