MARK DAVID McPHERSON (307951)
*mmcpherson@goodwinlaw.com*
**GOODWIN PROCTER LLP**
The New York Times Building
620 Eighth Avenue
New York, New York 10018
Tel.: +1 212 813 8800

LAUREN LaVARE (353374)
*llavare@goodwinlaw.com*
**GOODWIN PROCTER LLP**
525 Market Street, Floor 32
San Francisco, California 94105
Tel. +1 415 733 6000
Fax: +1 415 677 9041

Attorneys for Defendant Elsevier Inc.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

KIMSA NGUYEN and DAVID GARCIA, on behalf of themselves, all others similarly situated, and the general public,

Plaintiffs,

v.

ELSEVIER INC.,

Defendant.

Case No. 5:25-cv-00825-NC

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

Date: October 15, 2025
Time: 11:00 a.m.
Courtroom: 5 – 4th Floor
Judge Hon. Nathanael M. Cousins

Complaint filed: January 24, 2025

Amended Complaint filed: August 26, 2025

# TABLE OF CONTENTS

I. INTRODUCTION .......... 1
II. ARGUMENT .......... 2
A. The Court May Rule on the Merits of Elsevier's Motion Now. .......... 2
B. The Court May Take Judicial Notice of Elsevier's Registration Webpage, Privacy Policy and Cookie Notice. .......... 4
C. Plaintiffs Consented to the Conduct They Challenge. .......... 7
D. The Amended Complaint Fails to Plausibly Allege Elsevier Violated the VPPA. 10
1. Plaintiffs Do Not Allege PII Was Transmitted to Meta. .......... 10
2. Plaintiffs' Claims Against Elsevier Regarding Intercom Now Fail to Meet the Requisite Pleading Standard. .......... 12
III. CONCLUSION .......... 12

# TABLE OF AUTHORITIES

**Page(s)**


*AbCellera Biologics Inc. v. Bruker Cellular Analysis, Inc.*,
2024 WL 3074381 (N.D. Cal. June 20, 2024) ........ 2

*Allstate Ins. Co. v. Countrywide Fin. Corp.*,
824 F.Supp.2d 1164 (C.D. Cal. 2011)........ 2

*In re Apple iPhone Antitrust Litig.*,
846 F.3d 313 (9th Cir. 2017)........ 1, 2

*Balestrieri v. Sportsedtv, Inc.*,
No. 25-cv-04046-SK, Dkt. No. 27 (N.D. Cal. Sept. 16, 2025) ........ 6

*Cappello v. Walmart Inc.*,
2019 WL 11687705 (N.D. Cal. Apr. 5, 2019) ........ 6, 8, 9

*Collins v. Pearson Educ., Inc.*,
1:23-cv-02219, Dkt. 1 (S.D.N.Y. Mar. 15, 2023) ........ 12

*Collins v. Pearson Educ., Inc.*,
721 F. Supp. 3d 274 (S.D.N.Y. 2024)........ 12

*D'Angelo v. FCA US, LLC*,
726 F. Supp. 3d 1179 (S.D. Cal. 2024)........ 4

*Daniels v. United States*,
2017 WL 3478765 (S.D. Cal. Aug. 11, 2017) ........ 4

*Fan v. NBA Properties Inc.*,
2024 WL 1297643 (N.D. Cal. Mar. 26, 2024)........ 10

*Ghanaat v. Numerade Labs, Inc.*,
689 F. Supp. 3d 714 (N.D. Cal. 2023) ........ 10, 11

*Haines v. Cengage Learning, Inc.*,
2025 WL 2336089 (S.D. Ohio May 5, 2025) ........ 12

*Hughes v. Nat'l Football League*,
2025 WL 1720295 (2d Cir. June 20, 2025) ........ 11

*Knievel v. ESPN, Inc.*,
393 F.3d 1068 (9th Cir. 2005)........ 7

*Lakes v. Ubisoft, Inc.*,
777 F. Supp. 3d 1047 (N.D. Cal. 2025) ........ passim

*Lee v. Plex, Inc.*,
773 F. Supp. 3d 755 (N.D. Cal. 2025) .......... 11, 12

*Lee v. Springer Nature America, Inc.*,
769 F. Supp. 3d 234 (S.D.N.Y. 2025) .......... 6

*Loop AI Labs Inc v. Gatti*,
2015 WL 5158639 (N.D. Cal. Sept. 2, 2015) .......... 3

*Mattingly v. Jurek*,
2025 WL 1771454 (N.D. Cal. June 26, 2025) .......... 2

*Mohasco Corp. v. Silver*,
447 U.S. 807 (1980) .......... 9

*Nixon v. Pond5, Inc.*,
2025 WL 2030303 (S.D.N.Y. July 21, 2025) .......... 11

*Northstar Fin. Advisors Inc. v. Schwab Invs.*,
135 F. Supp. 3d 1059 (N.D. Cal. 2015) .......... 3

*Pastor Villareal Inc. v. Borderland Traders LLC*,
2020 WL 8514834 (C.D. Cal. Dec. 11, 2020) .......... 2, 3

*Plotsker v. Envato Pty Ltd.*,
2025 WL 2481422 (C.D. Cal. Aug. 26, 2025) .......... 4

*Rumble, Inc. v. Google LLC*,
2022 WL 3018062 (N.D. Cal. July 29, 2022) .......... 3

*In Re Samsung Galaxy Smartphone Mktg. & Sales Pracs. Litig.*,
2020 WL 7664461 (N.D. Cal. Dec. 24, 2020) .......... 6

*Scott v. Bluegreen Vacations Unlimited, Inc.*,
2020 WL 3296190 (E.D. Cal. June 18, 2020) .......... 4, 5

*Solomon v. Flipps Media, Inc.*,
136 F.4th 41 (2d Cir. 2025) .......... 11

*SVB Fin. Tr. v. Fed. Deposit Ins. Corp.*,
2025 WL 661599 (N.D. Cal. Feb. 27, 2025) .......... 2, 3

*TopDevz, LLC v. LinkedIn Corp.*,
2021 WL 6113003 (N.D. Cal. Dec. 27, 2021) .......... 2

*W. Digital Techs., Inc. v. Viasat, Inc.*,
2023 WL 7739816 (N.D. Cal. Nov. 15, 2023) .......... 2

**Federal Statutes**

18 U.S.C. § 2710(b)(2)(B) .......... 7, 8, 9

**Rules**

Fed. R. Civ. P. 1 .......... 2, 3

Fed. R. Civ. P. 12(b)(6) .......... 2, 3

Fed. R. Civ. P. 12(c) .......... 2, 4

Fed. R. Civ. P. 12(g) .......... 2, 3

Local Rule 7-5 .......... 5

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Plaintiffs are asking the Court to delay the inevitable. They first ask the Court not to even consider Elsevier's motion because Elsevier previously moved to dismiss their original Complaint. Their request ignores that Elsevier could make the same arguments in a motion for judgment on the pleadings, which Rule 12(c) and 12(h)(2)(B) authorize and which is not subject to Rule 12(g)'s limitation on successive motions to dismiss. They also do not mention the Ninth Circuit's most important guidance on this issue, *In re Apple iPhone Antitrust Litig.*, 846 F.3d 313, 318-20 (9th Cir. 2017), *aff'd sub nom. Apple Inc. v. Pepper*, 587 U.S. 273 (2019), in which the court affirmed a district court's "harmless" consideration of a second motion to dismiss, noting that rejecting the motion would create unnecessary and costly delays for "no apparent purpose": "Denying late-filed Rule 12(b)(6) motions and relegating defendants to the three procedural avenues specified in Rule 12(h)(2) can produce unnecessary and costly delays, contrary to the direction of Rule 1." *Id*. at 318.

On the merits of Elsevier's motion, Plaintiffs then ask the Court not to rule on whether they consented to the data practices they challenge, arguing that consent "is a highly fact-intensive inquiry ill-suited for resolution now." (ECF 43 at 2.) But Judge Thompson already disposed of that argument, as well, in a case with nearly identical factual allegations as Plaintiffs' here. In *Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1059–60 (N.D. Cal. 2025), *appeal pending*, Judge Thompson took judicial notice of a defendant's "Privacy Policy, … Cookies Settings, … Website Cookies Banner and related screens, as well as screens showing the account creation and purchase process," *id*. at 1053—just as Elsevier asks the Court to do here. And Judge Thompson rejected the same arguments Plaintiffs make concerning the VPPA's consent requirements. As in *Lakes*, Elsevier's Privacy Policy and Cookie Notices "satisfy all of the requirements of VPPA's consent provision" and "defeat[] their VPPA claim." *Id*. at 1059–60. Plaintiffs identify no meaningful difference between the factual allegations in *Lakes* and those here.

Plaintiffs also fail to establish the basic elements of their VPPA claim. Their allegations about Elsevier's alleged disclosure to Intercom remain entirely conclusory. The opposition brief offers nothing to buttress the Complaint's mere parroting of the statutory elements of the claim. In

the Supreme Court's now familiar words, such "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). And the one Plaintiff who challenges Elsevier's alleged use of the Meta pixel omits critical allegations about her Facebook account, leaving those allegations insufficient to state a claim under the VPPA. Plaintiffs' opposition brief does not offer any authority excusing the absence of such allegations.

Because Plaintiffs' Amended Complaint fails to establish the basis for their allegations that Elsevier shares information in violation of the VPPA, and concedes that even if it did, they consented to any such sharing, their VPPA claim must be dismissed with prejudice.

## II. ARGUMENT

### A. The Court May Rule on the Merits of Elsevier's Motion Now.

The Court may—and should—consider Elsevier's consent argument now. The Ninth Circuit permits successive Rule 12(b)(6) motions where, like here, it expedites the resolution of a case on its merits. *In re Apple iPhone Antitrust Litig*., 846 F.3d at 319. Following that precedent, courts routinely rule on arguments like Elsevier's, even in a second motion to dismiss. *See SVB Fin. Tr. v. Fed. Deposit Ins. Corp*., 2025 WL 661599, at *8 (N.D. Cal. Feb. 27, 2025); *AbCellera Biologics Inc. v. Bruker Cellular Analysis, Inc*., 2024 WL 3074381, at *3 (N.D. Cal. June 20, 2024); *W. Digital Techs., Inc. v. Viasat, Inc.*, 2023 WL 7739816, at *2 (N.D. Cal. Nov. 15, 2023); *TopDevz, LLC v. LinkedIn Corp*., 2021 WL 6113003, at *10 (N.D. Cal. Dec. 27, 2021).

Indeed, it would "be counterproductive to bar [Elsevier] from asserting these defenses now based on a hyper-technical reading of Rule 12(g)(2)." *Pastor Villareal Inc. v. Borderland Traders LLC*, 2020 WL 8514834, at *4 (C.D. Cal. Dec. 11, 2020). Absent a ruling on the merits, Elsevier will file its Answer with the same consent defense, will refile a motion for judgment on the pleadings under Rule 12(c), and the Court would have to apply the same standard on that motion as it would apply here. Such a procedural detour undermines the goal of judicial efficiency enshrined in Fed. R. Civ. P. 1, and underscores why the Ninth Circuit allows consideration of this motion. *Mattingly v. Jurek*, 2025 WL 1771454, at *3 (N.D. Cal. June 26, 2025); *Allstate Ins. Co. v. Countrywide Fin. Corp*., 824 F.Supp.2d 1164, 1175 (C.D. Cal. 2011) (delaying deciding a

successive motion to dismiss on its merits is counterproductive to the purpose of Rule 12(g) and Rule 1's efficiency mandate).

As this Court has recognized, successive Rule 12(b)(6) motions may be decided where the purpose is not to delay and it "would expedite disposition of the case on the merits." *SVB Fin. Tr.*, 2025 WL 661599, at *8. There is no delay in Elsevier's raising its consent defense, as it was included in Elsevier's Answer to the original Complaint. (Dkt. 28 at 6, ¶ 3 ("Plaintiffs consented to the alleged conduct through acceptance of Elsevier's Terms and Conditions, Privacy Policy, and/or Cookie Notice.").) Courts find, consistent with Rule 12(g)(2), that there is no delay in asserting the same defense in a subsequent motion to dismiss. *Pastor Villareal Inc.*, 2020 WL 8514834, at *4.

And Elsevier is entitled to respond to new allegations introduced in Plaintiffs' Amended Complaint, including that Meta can use its Pixel to "serve high-targeted advertisements based on a user's habits and preferences." (Dkt. 38 ¶ 27.) Elsevier's Privacy Policy and Cookie Notice directly address these new allegations. (*Id.* ¶¶ 23–38, 54, 58(e).) Accordingly, Elsevier "is permitted to tailor its arguments to the new allegations" in the Amended Complaint and "even assuming that some portion of [Elsevier's] motion constitutes a technical violation of Rule 12(g)," the Court can nevertheless "consider the motion in full." *Loop AI Labs Inc v. Gatti*, 2015 WL 5158639, at *1 n.1 (N.D. Cal. Sept. 2, 2015); *see also Rumble, Inc. v. Google LLC*, 2022 WL 3018062, at *3 n. 3 (N.D. Cal. July 29, 2022) (finding allegations in original complaint insufficient to place defendant on notice of additional theories in new allegations defendant sought to dismiss).

Plaintiffs offer no binding authority to the contrary. Plaintiffs instead cite out-of-circuit cases or cases within the Ninth Circuit predating the Ninth Circuit's guidance in *In re Apple iPhone Antitrust Litigation*, which allows consideration of successive motions to dismiss under the circumstances present here. (Dkt. 43 at 4–6.) Plaintiffs' reliance on *Northstar Fin. Advisors Inc. v. Schwab Invs.*, 135 F. Supp. 3d 1059 (N.D. Cal. 2015), is also distinguishable because defendants there sought to reassert defenses in a fourth motion to dismiss that they had previously abandoned. *Id.* at 1068–71 ("Defendants may not re-assert in a successive motion to dismiss arguments that Defendants abandoned in a prior motion to dismiss."). That is not the case here.

Even the case on which Plaintiffs heavily rely agrees. In *Leyse v. Bank of Am. Nat'l Ass'n*,

the Third Circuit found that consideration of successive motions was "harmless . . . [s]o long as the district court accepts all of the allegations in the complaint as true, the result is the same as if the defendant had filed an answer admitting these allegations and then filed a Rule 12(c) motion for judgment on the pleadings," and that "[r]equiring these additional steps would serve little purpose here." 804 F.3d 316, 321–22 (3d Cir. 2015). The same considerations warrant consideration of Elsevier's motion.

### B. The Court May Take Judicial Notice of Elsevier's Registration Webpage, Privacy Policy and Cookie Notice.

The Court may take judicial notice of Elsevier's Registration Webpage, Privacy Policy and Cookie Notice under two theories, neither of which Plaintiffs successfully refute.

First, the Court may take judicial notice of Elsevier's Privacy Policy and Cookie Notice under Federal Rule of Evidence 201 because they are publicly available documents, the contents of which Plaintiffs do not dispute. *See Lakes*, 777 F. Supp. at 1053 (taking judicial notice of publicly available webpages, including privacy policies, cookie settings, cookie banners, related user screens, and account registration pages). As in *Lakes*, Elsevier seeks to introduce additional portions of its publicly available website to provide the Court with a complete picture of the user's experience, including what the user consented to and the policies they were presented with. *See id.*; *D'Angelo v. FCA US, LLC*, 726 F. Supp. 3d 1179, 1190–91 (S.D. Cal. 2024) ("The existence of the privacy policies and webpages are judicially noticeable facts because they appear on publicly available websites and their authenticity cannot be reasonably questioned.").

As permitted, Elsevier seeks judicial notice of its Registration Webpage, Privacy Policy and Cookie Notice not for their truth, but rather for the fact of their existence and their legal effect. *Daniels v. United States*, 2017 WL 3478765, at *4 (S.D. Cal. Aug. 11, 2017) ("The Court may take judicial notice of the 'existence and legal effect' of contracts between the parties 'that provide the foundations for [a plaintiff's] claims.'"); *Plotsker v. Envato Pty Ltd.*, 2025 WL 2481422, at *3 (C.D. Cal. Aug. 26, 2025); *Scott v. Bluegreen Vacations Unlimited, Inc.*, 2020 WL 3296190, at *4 (E.D. Cal. June 18, 2020). For example, in *Lakes*, the court took judicial notice of "Ubisoft's Privacy Policy, Ubisoft's Cookies Settings, Ubisoft's Website Cookies Banner and related screens,

as well as screens showing the account creation and purchase process" in the context of consent in a VPPA case. 777 F. Supp. 3d at 1053–54. Here, as in *Lakes*, the legal effect of the webpage and policy is clear: Plaintiffs consented to the disclosures at issue. *Id.*

Plaintiffs' cited authority is inapposite. *Garcia v. Bandai Namco Entertainment Am. Inc.* declined judicial notice because the proponent failed to show the documents existed in that form during the relevant time period. 2025 WL 2451033, at *9 (C.D. Cal. Aug. 7, 2025) (citing *Lakes*). That concern is not present here, as Elsevier has provided documents that reflect the relevant time period in full. (Dkt. 40-1 at 1–2.)

Plaintiffs' unsupported assertion that the webpages are "cut-off" and their "functionality cannot be discerned" is no obstacle to judicial notice. (Dkt. 43 at 6–7.) Plaintiffs' assertion is both incorrect and irrelevant, as the substantive content is intact. Plaintiffs cite no authority suggesting that formatting limitations preclude judicial notice where the substance is not otherwise challenged. (*See id.*) Plaintiffs' challenge to the McPherson Declaration, likewise, does not prohibit judicial notice. The McPherson Declaration comports with the express requirements of Local Rule 7-5 that "[f]actual contentions made in support of or in opposition to any motion must be supported by an affidavit or declaration and by appropriate references to the record." (L.R. 7-5; *see* Dkt. 40-1 RJN.) The McPherson Declaration satisfies this requirement by confirming the existence of the referenced policies and webpages and providing the factual foundation for Elsevier's Request for Judicial Notice. (Dkt. 40-1.) Contrary to Plaintiffs' argument, there is nothing testimonial about the declaration.

Second, Elsevier's Registration Webpage, Privacy Policy, and Cookie Notice are also proper for judicial notice because they are incorporated by reference into the Amended Complaint. Plaintiffs allege that they were required to register for an Osmosis account to access video content, a fact they cite to support their claim that they are "subscribers" within the meaning of the VPPA. (Dkt. 38 ¶¶ 13, 38–39.) Plaintiffs also repeatedly quote Elsevier's Privacy Policy to establish what PII was shared, even as they allege that they never consented. (Dkt. 43 at 8; *see also* Dkt. 38 ¶¶ 12–13, 19, 35–39.) These allegations necessarily rely on the Privacy Policy to establish what data Plaintiffs believe was transmitted in violation of the VPPA. Without it, the Amended

Complaint lacks any factual basis for what data was transmitted. (*See* Dkt. 38 at ¶¶ 19-20, 35-36.) Plaintiffs cannot selectively invoke the Privacy Policy to support their claims while avoiding its full contents and the circumstances under which they agreed to it. "This selective pleading is precisely why the incorporation-by-reference doctrine exists." *In Re Samsung Galaxy Smartphone Mktg. & Sales Pracs. Litig.*, 2020 WL 7664461, at *4 (N.D. Cal. Dec. 24, 2020).

Moreover, "[e]ven where a document is not incorporated by reference, the court may nevertheless consider it where," like here, the complaint "relies heavily upon its terms and effect, which renders the document integral to the complaint." *Lee v. Springer Nature America, Inc.*, 769 F. Supp. 3d 234, 249 (S.D.N.Y. 2025) (taking judicial notice of landing page and the fact that it had a button saying "subscribe"). *Compare Lakes*, 777 F. Supp. 3d at 1054 *with Cappello v. Walmart Inc.,* 2019 WL 11687705, at *3 n.4 (N.D. Cal. Apr. 5, 2019) (finding the complaint's "single reference to the Terms regarding venue and personal jurisdiction" did not form the basis of plaintiffs' privacy claim).

Plaintiffs' arguments against incorporation by reference fail. The Registration Webpage, Privacy Policy, and Cookie Notice are not "'only relevant to Defendant's consent defense.'" (Dkt. 43 at 8 (quoting *Balestrieri v. Sportsedtv, Inc.*, No. 25-cv-04046-SK, Dkt. No. 27 (N.D. Cal. Sept. 16, 2025)).) As noted, Plaintiffs rely on the Registration Webpage and the Privacy Policy to support their allegations. (*See* Dkt. 38 at ¶¶ 13, 19-20, 35-36, 38-39.) Plaintiffs therefore cannot rely on *Balestrieri*. Unlike the plaintiffs in *Balestrieri*, Plaintiffs here explicitly reference the Osmosis registration webpage, allege that they could not view videos without registering, quote the Privacy Policy multiple times to establish what data was collected and transmitted, and allege that its disclosures are insufficient under the VPPA. (Dkt. 38 ¶¶ 12–13, 19, 35–39.) And unlike in *Balestrieri*, Elsevier does not seek to introduce its policies among other documents to contradict allegations about how the Meta Pixel functioned and what information was shared. *Id.* Instead, Elsevier asks the Court to take judicial notice of the fact that its policies were a part of registration and present at the specified locations—facts that courts routinely recognize as judicially noticeable. *See Lakes*, 777 F. Supp. 3d at 1053. Finally, precisely because the Cookie Notice and Website Cookie Banner are included within the Privacy Policy, the Court may take judicial notice of them.

The Court may consider those portions of the website as part of the necessary context to understand the Privacy Policy that Plaintiffs admit is referenced in the Amended Complaint and in turn references the Cookie Notice (Dkt. 43 at 9). *See Knievel v. ESPN, Inc.*, 393 F.3d 1068, 1076 (9th Cir. 2005) (considering pages that had not been referenced in the complaint on a motion to dismiss because "a computer user necessarily views web pages in the context of the links through which the user accessed those pages").

**C. Plaintiffs Consented to the Conduct They Challenge.**

Plaintiffs cannot escape the holding on nearly identical facts that granted a motion to dismiss a VPPA claim with prejudice based on consent. *Lakes*, 777 F. Supp. 3d at 1059–60. In *Lakes*, website users consented to a defendant's Privacy Policy and read the defendant's Cookie Notice, which disclosed its information sharing practices and gave users the right to opt out of those sharing practices. *Id.* The same is true here: Plaintiffs allege they registered for an Osmosis account, through which they necessarily had to agree to the Terms and Conditions and Privacy Policy, whereby they consented to the disclosure of their PII. (Dkt. 40 at 9.) In fact, Osmosis users consent at least twice: first, when presented with a cookie banner upon arriving at the website, and again during account creation, when they must agree to Elsevier's Terms and Conditions and Privacy Policy. *Lakes*, then, dictates the outcome here: Plaintiffs' claim must be dismissed as barred by their own consent.

Plaintiffs do not dispute that they agreed to the Privacy Policy. (Dkt. 43 at 11-12.) Nor do they dispute that the Privacy Policy through which they gave their consent is a "separate and distinct webpage[]" from the Terms and Conditions. (*Id.* at 12.) This is all the VPPA requires. 18 U.S.C. § 2710(b)(2)(B)(i) (requiring the disclosure be presented "in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer").

Plaintiffs' attempt to construct a higher standard of consent by requiring users to consent to the Privacy Policy through a separate checkbox lacks any support. Plaintiffs cite no authority requiring that consent to a privacy policy be obtained via a stand-alone checkbox. (Dkt. 43 at 12.) In fact, the court in *Lakes* found consent sufficient where users affirmatively accepted both terms of use and privacy policies via a single checkbox. *See Lakes*, 777 F. Supp. 3d at 1054 ("Plaintiffs had to check the box next to 'I accept Ubisoft's Terms of Use, Terms of Sale, and Privacy Policy,'

which hyperlinks to the policies mentioned on the Website."). Confronted with the similarities here, Plaintiffs could only try to distinguish *Lakes* on the basis that the users were presented with the privacy disclosure "at least three times." (Dkt. 43 at 13.) Yet the VPPA does not require presentation of a disclosure multiple times; it simply requires informed consent in a form separate from other legal and financial obligations. Plaintiffs cannot deny that they provided Elsevier with such consent.

Similarly, Plaintiffs' argument that the Privacy Policy contains "legal obligations beyond consent" conflates obligations and rights. (Dkt. 43 at 14.) Elsevier's Terms and Conditions set forth users' obligations, such as restrictions on how users may use content from Elsevier's Services and their agreement to provide accurate information when registering. (*See* Dkt. 40 at 4, 9.) The Privacy Policy, on the other hand, provides users with options and rights concerning their information. The Policy offers users a clear and conspicuous opportunity to withdraw consent on a case-by-case basis or from ongoing disclosures, just as the VPPA requires. *See* 18 U.S.C. § 2710(b)(2)(B)(iii). Plaintiffs argue that Elsevier's provision of that very right creates a legal obligation. (Dkt. 43 at 14-15.) But informing users of their rights does not impose obligations upon them. The Privacy Policy is therefore "distinct and separate from any form setting forth other legal or financial obligations of the consumer" and establishes consent under the VPPA. 18 U.S.C. § 2710(b)(2)(B)(i); *Lakes*, 777 F. Supp. 3d at 1054.

Plaintiffs also misinterpret *Cappello*, 2019 WL 11687705, at *2. In *Cappello*, plaintiffs were required to consent to the Privacy Policy as part of making a purchase on the Walmart website. *Id.* n.3. Because the Privacy Policy was tied to a financial transaction, the court found that consent "connected with *video purchases*" could not be bundled with another "privacy topic." *Id.* at 2 (emphasis added). That concern is not present here. Registering for an Osmosis account is free (Dkt. 38 ¶ 13 ("if the unregistered visitor wishes to continue watching the video, they will need to subscribe by creating a free Osmosis account")), and does not necessarily include watching any videos at all. (*See* Dkt. 15 at 15.)

*Cappello* thus does not stand for the proposition that consenting to a privacy policy is invalid consent under the VPPA unless such consent is separate from other privacy disclosures, as

Plaintiffs contend. Such a reading would directly contradict the plain language of the VPPA, which only requires that the disclosure be separate from "other *legal* or *financial* obligations of the consumer," not distinct from other privacy rights. 18 U.S.C. § 2710(b)(2)(B)(i). Even so, courts have recognized that consent under the VPPA is valid even when a subscriber consents to the privacy policy at the time they make a purchase, because making a purchase does not turn the provisions of an independent privacy policy into a financial obligation. *See e.g., Lakes*, 777 F. Supp. 3d at 1060. And finally, the issue in *Cappello*—that Walmart failed to provide a dedicated consent form disclosing its intent to share personally identifiable information with Facebook—is not present here. 2019 WL 11687705, at *2. Elsevier's Cookie Notice explicitly informs users that social media cookies set by a range of social media services are "capable of tracking [a user's] browser across other sites and building [a] profile." (Dkt. 40 at 15.)

Plaintiffs' remaining arguments seeking to avoid a decision on consent also fail. At bottom, Plaintiffs simultaneously advocate for an expansive interpretation of VPPA liability while narrowing the statute's consent requirements. (*See* Dkt. 43 at 13–15.) That cannot be so. If Plaintiffs contend that the mere sharing of a URL triggers VPPA liability, then their express agreement to Elsevier's Privacy Policy—which explicitly discloses the sharing of URLs (*see* Dkt. 40-03; 40-04 ("Usage data, such as the features you used, the settings you selected, URL click stream data, including date and time stamp and referring and exit pages, and pages you visited on the Service"))—is sufficient to establish consent under the statute. In other words, if the conduct alleged constitutes a violation, then the consent to that conduct is sufficient to satisfy the statute's consent requirement. *See Mohasco Corp. v. Silver*, 447 U.S. 807 (1980) (applying the presumption of consistent usage).

Contrary to Plaintiffs' assertions, then, their consent is a straightforward issue that can be decided based on the undisputed information available right now: Plaintiffs registered for Osmosis accounts and agreed to the Privacy Policy, which informed them how to opt out of data sharing. Plaintiffs do not dispute this. They were also presented with a cookie banner and Cookie Notice that disclosed what data was collected and allowed them to configure their settings. Plaintiffs do not dispute this. Having consented to both the Privacy Policy and Cookie Notice, no VPPA

violation occurred. *Lakes*, 777 F. Supp. 3d at 1060.

Plaintiffs' case law does not support a different conclusion. *Garcia*, 2025 WL 2451033, at *9 (court could not resolve factual disputes about consent where Defendant's screenshots failed to establish that the alleged Cookie Banner, account creation, and purchase webpages existed in their current form during the relevant time period); *Fan v. NBA Properties Inc.*, 2024 WL 1297643, at *3 n.4 (N.D. Cal. Mar. 26, 2024) (denying judicial notice of consent where there was a factual dispute on how often it appeared). Instead, as in *Lakes*, the Court should dismiss the Amended Complaint with prejudice because Plaintiffs consented to the disclosures they complain about. 777 F. Supp. 3d at 1060.

### D. The Amended Complaint Fails to Plausibly Allege Elsevier Violated the VPPA.

#### 1. Plaintiffs Do Not Allege PII Was Transmitted to Meta.

Plaintiffs' VPPA claim against Meta fails because the Amended Complaint does not plausibly allege that Meta received personally identifiable information for Plaintiff Nguyen. As courts have recognized, the VPPA's protections apply only where the receiving party can identify the specific consumer whose viewing behavior is disclosed. *See Ghanaat v. Numerade Labs, Inc.*, 689 F. Supp. 3d 714, 720 (N.D. Cal. 2023). Plaintiff Nguyen's theory of liability hinges on Meta's alleged ability to link the data purportedly transmitted via the Meta Pixel to a Facebook or Instagram account. (*See* Dkt. 38 ¶¶ 24–29.) Yet the Amended Complaint only alleges that Nguyen had a Meta account and was, on some occasions, logged in while using Osmosis. (*Id.* ¶ 38.) That allegation is insufficient to establish that Meta could identify Nguyen based on the data received. (Dkt. 40 at 16-17.)

Moreover, Plaintiffs do *not* allege—as they assert in their opposition brief—that Ngyuyen's "full name, email address, and video-viewing information are sent to Meta independently of her Meta identifiers." (Dkt. 43 at 17.) Plaintiffs merely allege that Ngyuyen "provid[ed] her full name and email address *to Elsevier*" at the time of registration, but nowhere allege that Elsevier transmitted *that* information *to Meta*. (Dkt. 38 ¶ 38.) Even if they had properly alleged such a transmission, claiming that Ngyuyen's email, name, and video title were sent to Meta doesn't meet VPPA pleading standards because, as courts have found, that is not how the technology functions.

(Dkt. 40 at 16, 17.) *Solomon v. Flipps Media, Inc.*, 136 F.4th 41, 45–46 (2d Cir. 2025) (describing how Meta's Pixel transmits cookies associated with a user's Facebook ID).

Plaintiffs' reliance on *Eichenberger v. ESPN, Inc.* is therefore inapplicable. *Eichenberger* simply adopts the "ordinary person" for determining what PII means under the VPPA. 876 F.3d 979, 985 (9th Cir. 2017). Applying the *Eichenberger* standard, an ordinary person cannot recognize the data transmitted via Meta Pixel. *Hughes v. Nat'l Football League*, 2025 WL 1720295, at *2 (2d Cir. June 20, 2025) (summary order); *Solomon*, 136 F.4th at 54 (2d Cir. 2025) (holding that disclosure of video-related information and Facebook IDs through the Meta pixel does not violate the VPPA because no ordinary person could recognize any video title disclosed through the pixel or no ordinary person could recognize a person's Facebook ID disclosed through the pixel); *Nixon v. Pond5, Inc*., 2025 WL 2030303, at *5 (S.D.N.Y. July 21, 2025) (granting motion to dismiss VPPA claim based on Pixel transmission "[s]ince an ordinary person would not plausibly be able to identify Plaintiffs' video-watching habits as a result of the Pixel transmissions").

Relying on *Eichenberger*, *Ghanaat* demonstrated what a plaintiff must plead to allege that the Meta Pixel plausibly transmitted video viewing habits to Meta in a form an ordinary person could discern. 689 F. Supp. 3d at 720 (collecting cases); (Dkt. 40 at 16-17). A direct link to a personally identifiable Facebook or Instagram account is what may result in a violation of the VPPA; otherwise, Plaintiff Nguyen's transmitted data would simply be associated with an undiscernible "shadow profile." (Dkt. 38 ¶ 31.)

Because Nguyen does not allege that her Facebook ID was transmitted to Meta, her cited authority is inapposite. *Manza v. Pesi, Inc.*, F. Supp. 3d 1110, 1118 (W.D. Wis. 2025) ("ID numbers uniquely associated with a specific customer qualify as PII under the VPPA"); *Feldman*, 659 F. Supp. 3d at 1021 (connecting Facebook ID to Facebook profile that contained plaintiff's name making it feasible to identify plaintiff). Plaintiff Nguyen must allege that her personally identifiable information was linked to her Facebook account in a way that Meta could discern who she was and what she viewed. *Lee v. Plex, Inc.*, 773 F. Supp. 3d 755, 773 (N.D. Cal. 2025) ("Plaintiff also alleges that his Facebook profile exists using his real name. Thus, any person who obtains Plaintiff's Facebook ID could locate his Facebook profile and, thereby, learn his name.") (internal

quotes omitted). Nguyen's failure to allege that her PII was linked to her Facebook account in a way that allowed Meta to identify her as the viewer of Osmosis content renders her VPPA claim against Meta insufficient as a matter of law.

#### 2. Plaintiffs' Claims Against Elsevier Regarding Intercom Now Fail to Meet the Requisite Pleading Standard.

Plaintiffs' strategic decision to remove the Intercom screenshot from their Amended Complaint proves fatal to their remaining allegations. Without the screenshot, Plaintiffs are left with only conclusory allegations that fail to meet the most basic pleading standard. (Dkt. 40 at 18.) *Iqbal*, 556 U.S. at 678 ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Plaintiffs' response is that they "need not show 'what personal information was captured'" to state a claim under the VPPA. (Dkt. 43 at 20.) This telling admission that they have not—and cannot—allege what information was transmitted to Intercom dooms Plaintiffs' Amended Complaint. Indeed, the cases Plaintiffs cite only underscore this point. In *Haines v. Cengage Learning, Inc.*, 2025 WL 2336089, at *2 (S.D. Ohio May 5, 2025), *report and recommendation adopted,* 2025 WL 2045644 (S.D. Ohio July 22, 2025), the court includes the screenshot of the "source code example in plaintiff's complaint." Similarly, the complaint in *Collins v. Pearson Educ., Inc.*, 721 F. Supp. 3d 274, 280 (S.D.N.Y. 2024) alleged "the specific titles and URLs of the videos and other services he requested or obtained," including screenshots of those specific URLs in his complaint. *See Collins v. Pearson Educ., Inc.*, 1:23-cv-02219, Dkt. 1 at ¶ 25 (S.D.N.Y. Mar. 15, 2023). Such allegations are absent here.

## III. CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court dismiss the Complaint in its entirety, with prejudice.

Dated: September 30, 2025

Respectfully submitted,

By: */s/ Mark David McPherson*

MARK DAVID McPHERSON
*mmcpherson@goodwinlaw.com*
**GOODWIN PROCTER LLP**
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Tel: +1 212 813 8800

LAUREN LaVARE
*llavare@goodwinlaw.com*
**GOODWIN PROCTER LLP**
525 Market Street, Floor 32
San Francisco, California 94105
Tel. +1 415 733 6000
Fax: +1 415 677 9041

Attorneys for Defendant Elsevier Inc.

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Northern District of California by using the CM/ECF system on September 30, 2025. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I certify under penalty of perjury that the foregoing is true and correct. Executed on September 30, 2025.

*/s/ Mark David McPherson*

MARK DAVID McPHERSON